SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JILL M. PIETRINI, Cal. Bar No. 138335
PAUL BOST, Cal. Bar No. 261531
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: 310.228.3700 / Facsimile: 310.228.3701
Email: JPietrini@sheppardmullin.com
       PBost@sheppardmullin.com

JOHN F. BURNS, Cal. Bar No. 290523
501 West Broadway, 19th Floor
San Diego, CA 92101
Telephone: 619.338.6588 / Facsimile: 619.515.4182
Email: JBurns@sheppardmullin.com

Attorneys for Defendants Kaiser Foundation
Health Plan, Inc. and Kaiser Foundation Hospitals

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHAN DEAN and LIZA DEAN, Individually and DBA SUREFILE FILING SYSTEMS,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and Does 1-50 Inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTER-CLAIMS. | Case No. 5:22-cv-00278-MCS-SHK<br><br>**REPLY IN SUPPORT OF DEFENDANTS KAISER FOUNDATION HEALTH PLAN, INC.'S AND KAISER FOUNDATION HOSPITALS' MOTION TO DISMISS**<br><br>Hearing<br>Date:       Monday March 28, 2022<br>Time:       9:00 a.m.<br>Courtroom:  7C |

## I. INTRODUCTION

Plaintiffs' **untimely**[1] opposition to Kaiser's motion to dismiss is most notable not for what it says, but for what it does not say. Plaintiffs do not address, much less rebut, the settled law that dooms their theory that they gained the right to use Kaiser's trademarks because the settlement agreement did not explicitly forbid it. Again, "[c]ourts will not add a term about which a contract is silent." *Dameron Hosp. Assn. v. AAA N. Cal., Nevada & Utah Ins. Exch.*, 229 Cal. App. 4th 549, 569 (2014). Since Plaintiffs' case is built on this untenable authorization-by-silence theory, the Court should dismiss the case for this reason alone. Rather than address this law, Plaintiffs make five meritless arguments, and request judicial notice of exhibits that only undermine their case.

*First*, Plaintiffs contend that the Court "probably" lacks subject matter jurisdiction over their causes of action. This is incorrect. Plaintiffs' causes of action arise under federal cybersquatting and trademark law, and Plaintiffs cannot escape federal jurisdiction by assigning state law labels to their causes of action.

*Second*, Plaintiffs argue that the court in the 2012 case resolved the trademark issues in their favor through its construction of the settlement agreement's release, and that this prevents Kaiser from pursuing any action against Plaintiffs. This is blatantly wrong. Cybersquatting and trademark rights were not at issue in the 2012 case, as the exhibits to Plaintiffs' opposition confirm. Additionally, Plaintiffs' argument is also legally implausible because under California law "a release does not apply to claims arising from subsequent conduct occurring after the execution of a release," like the infringing and cybersquatting conduct that gave rise to this case. *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1231 (C.D. Cal. 2007).

*Third*, Plaintiffs contend that declaratory relief is a valid cause of action. Courts have rejected this argument. In any event, the declaratory relief claim fails

---

[1] Plaintiffs' opposition to Kaiser's motion to dismiss was due on March 7, 2022 under Local Rule 7-9; Plaintiffs filed their opposition on March 8, 2022.

because the cause of action stems from Plaintiffs' meritless authorization-by-silence theory.

*Fourth*, Plaintiffs contend that the Court need not reach their first, third, and fourth causes of action because they can dismiss some, but not all, of their causes of action under Fed. R. Civ. P. 41(a). This is incorrect, and courts have repeatedly confirmed that their attempt to do so is a legal nullity.

*Fifth*, Plaintiffs contend that the Court should accept their legal conclusions and labels over the contents of judicially noticeable exhibits. This is wrong, too.

Plaintiffs cannot plead any right to use Kaiser trademarks to impersonate Kaiser while selling patients' private information. Plaintiffs' case therefore fails, and their opposition further establishes that the Court should dismiss their complaint with prejudice.

## II. THE MOTION TO DISMISS SHOULD BE GRANTED

### A. The Court has Subject Matter Jurisdiction Over this Case

Plaintiffs state that they are challenging the National Arbitration Forum's ("NAF") panel's decision finding that Plaintiffs had no right to register and use the <kphealthconnectusa.com> domain name, and they characterize their complaint as a challenge to the NAF panel's decision under UDRP ¶ 4.k.[2] Complaint (Dkt. 1-1), ¶ 32; Oppo. at 4, 14. Plaintiffs also state that they seek a declaration that they have the right to use Kaiser's trademarks. Complaint (Dkt. 1-1), ¶ 32; Oppo. at 4. These claims give rise to subject matter jurisdiction because they "arise under" federal law. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). Applied to trademark law,

---

[2] "… If an Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure." UDRP ¶ 4.k.

28 U.S.C. §1338 confers jurisdiction upon federal courts for actions "arising under any Act of Congress relating to … trademarks."

In 1999, Congress amended the Lanham Act of 1946 with the Anticybersquatting Consumer Protection Act ("ACPA"). Under the ACPA, "[a] domain name registrant whose domain name has been suspended, disabled, or transferred … may … file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful." 15 U.S.C. § 1114(2)(D)(v). A suit under Section 1114(2)(D)(v) is "precisely the mechanism designed by Congress" to challenge a decision under UDRP ¶ 4.k. *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 627 (4th Cir. 2003). Courts have *consistently* held that cases that challenge cybersquatting decisions under UDRP ¶ 4.k arise under federal law, and thus confer subject matter jurisdiction. *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 23 (1st Cir. 2001); *Mann v. AFN Invs., Ltd.*, No. 07CV0083BENCAB, 2007 WL 2177030, at *1 (S.D. Cal. July 27, 2007); *Rearden v. Rearden Com., Inc.*, 683 F.3d 1190, 1195, 1202 (9th Cir. 2012).

While Plaintiffs do not cite the ACPA or Section 1114(2)(D)(v), their failure to do so does not change the analysis. Plaintiffs cannot defeat removal by "artfully pleading" claims to omit federal questions from their causes of action. *Rivet v. Regions Bank,* 522 U.S. 470, 475 (1998). Thus, even when challenges under UDRP ¶ 4.k do not specifically assert a cause of action under § 1114(2)(D)(v), federal courts still find that they have subject matter jurisdiction. For example, in *Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*, the court had jurisdiction even though the complaint "d[id] not explicitly invoke" § 1114(2)(D)(v) because the complaint challenged a NAF panel decision. No. CV-12-01156-PHX-DJH, 2015 WL 12602438, at *7 (D. Ariz. May 15, 2015). *See also Del Monte Int'l GmbH v. Del Monte Corp.*, 995 F. Supp. 2d 1107, 1116 (C.D. Cal. 2014) (finding that "[w]hile Plaintiff style[d] [his] claim for relief as rising under the

Declaratory Judgment Act, functionally it [was] indistinguishable from a claim under 15 U.S.C. § 1114(2)(D)(v)," so the court had jurisdiction under the Lanham Act, which includes "actions involving the ACPA") (vacated on other grounds). Just as in these cases, Plaintiffs' challenge under UDRP ¶ 4.k arises under federal law because the federal ACPA is "precisely the mechanism" for bringing such challenges, and Plaintiffs cannot avoid federal court by using other labels.

While the ACPA is enough to confer subject matter jurisdiction over this case on its own, Plaintiffs' contention that they have a right to use Kaiser's trademarks supplies another basis for jurisdiction. *Brocato v. Angelo Brocato Ice Cream & Confectionery, Inc.* is illustrative. No. CIV.A. 03-1316, 2003 WL 21715022 (E.D. La. July 22, 2003). In *Brocato*, the district court held that a state declaratory judgment action seeking a declaration of rights in federally registered marks was properly removed to federal court because "federal Lanham Act claims do not become causes of action arising under state law merely because a declaratory plaintiff (who also happens to be the would-be Lanham Act defendant) uses a state law declaratory judgment action to get them before a court." *Id.* at *3. On this point, Plaintiffs filed their action *after* Kaiser sent them a cease and desist letter contending that their use of Kaiser trademarks was infringing. Dkt. 22, Ex. D. Courts hold that removal is appropriate when, as here, a trademark infringer brings a state court action after receiving a cease a desist letter. *Evans v. Trimont Land Co.*, No. CIV S-06-503 WMS PAN (JFM), 2006 WL 1377031, at *1 (E.D. Cal. May 18, 2006) (removal proper when the plaintiff brought lawsuit for a declaration that his use of mark was rightful, after the defendant sent a cease a desist letter contending that the use was infringing).[3] Plaintiffs' use of state court labels to intrude on

---

[3] Courts consider "summary judgment-type evidence" to determine whether subject matter jurisdiction exists. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). If the Court considers jurisdiction, it should also consider this evidence.

Kaiser's federally registered marks similarly does not destroy federal jurisdiction here.

In sum, Plaintiffs' contention that the Court "probably" lacks jurisdiction fails.

### B. The 2012 Action Does Not Help Plaintiffs' Case

Plaintiffs contend that the 2012 case dealt with Kaiser's trademark rights, and that the court's summary judgment order in that case held that Plaintiffs have a right to use Kaiser's name and logo. Opposition (Dkt. 19) at 11. The judicially noticeable documents from the 2012 case show that Plaintiffs' characterization is, at best, misguided, and, at worst, disingenuous. Indeed, the documents Plaintiffs filed with their opposition *confirm* that the 2012 lawsuit was about Plaintiffs' retention of patients' medical records, not trademarks or cybersquatting. Plaintiffs argue that Kaiser, in paragraphs 13, 15, and 16 of the complaint in the 2012 case, alleged that Plaintiffs were "precluded from using the Kaiser name and logo." *Id*. Neither of these paragraphs nor any allegations in that complaint related to the use of the Kaiser name and logo exist; rather the case was about Plaintiffs' retention and withholding of Kaiser's patient records. Dkt. 19-1, Ex. 3. As Kaiser's attorney explained to the court:

> MR. FREEMAN: **The basis for our lawsuit was the withholding of the electronic records, which Mr. Dean in correspondence threatened to disclose**, threatened – went to the press, made disclosures of the fact – "Hey, I have got this on my computer sitting in my garage. I'm leaving my garage door open. Aren't you lucky that nobody stole my computers and got this PHI."

Dkt. 19-1, Ex. 1, at 30:24-31:11 (emphasis added); *see also* Opposition, Ex. 3 (Kaiser's complaint in the 2012 case, stating the same basis for the case). Notably, the hearing transcript and the complaint from the 2012 case do **not** use the words "trademark," "cybersquatting," "name," "logo," or anything similar. This explains

Plaintiffs' vague citations to alleged "quote[s]" in those documents and failure to provide pin cites.  Opposition (Dkt. 19) at 11.  Thus, Plaintiffs' claim that the 2012 case dealt with Plaintiffs' use of Kaiser's trademarks is demonstrably false.

In fact, the court's construction of the settlement agreement in the 2012 case could not plausibly control the trademark and cybersquatting issues here because those issues did not arise until Plaintiffs began their infringing business many years later.  Complaint (Dkt. 1-1), ¶¶ 17, 18.  As the NAF panel emphasized in rejecting this same argument, Kaiser "could not possibly have made a claim of cybersquatting eleven years before it actually occurred." Dkt. 10-2, Ex. E at 47.  Because trademark rights were not at issue in the 2012 case, Plaintiffs' claim preclusion and issue preclusion arguments necessarily fail. *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1021 (9th Cir. 2019) ("[C]laim preclusion does not apply to claims that accrue after the filing of the operative complaint in the first suit.") (internal quotation marks omitted); *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) ("[I]ssue preclusion requires that an issue must have been actually and necessarily determined by a court of competent jurisdiction to be conclusive in a subsequent suit.") (internal quotation marks omitted).

Nor could the settlement agreement release future claims for future conduct.  That is because "a release does not apply to claims arising from subsequent conduct occurring after the execution of a release." *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1231 (C.D. Cal. 2007); *Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 965 (9th Cir. 2001) (same).  This makes practical sense.  As one court put it in discussing an intellectual property case, such a release would be "void as against public policy" because it would allow a released party to "violate another's intellectual property rights with impunity in contravention of the clear and long standing public policies underlying the trademark, copyright and patent laws." *Lizalde v. Advanced Plan. Servs., Inc.*, 875 F. Supp. 2d 1150, 1159 (S.D. Cal. 2012) (internal quotation marks omitted); *see also Feller v. Transamerica Life Ins. Co.*,

6

Case No. 5:22-cv-00278-MCS-SHK
REPLY IN SUPPORT OF DEFENDANTS KAISER FOUNDATION HEALTH PLAN, INC.'S AND KAISER FOUNDATION HOSPITALS' MOTION TO DISMISS

No. 216CV01378CASAJWX, 2016 WL 6602561, at *5 (C.D. Cal. Nov. 8, 2016) (rejecting argument that a settlement agreement's release of future claims barred claims that arose out of actions that post-dated the settlement, as an interpretation that is improperly "indefinite" and improper under Cal. Civ. Code §§ 1643, 1668).

While the summary judgment order in the 2012 case held that the settlement agreement released *future* claims for *past conduct* (Plaintiffs' retention of patient information after the parties' contracts ended), consistent with California law, it did not hold that the agreement released *future* claims for *future conduct*, such as the trademark and cybersquatting issues here. Plaintiffs' suggestion that the order encompassed the trademark and cybersquatting issues is therefore wrong both factually and legally.

If anything, the transcript Plaintiffs filed helps Kaiser's case here, and emphasizes how outrageous Plaintiffs' current scheme is. As the transcript reflects, Plaintiffs falsely told the court in the 2012 case that they had *no* information relating to *any* Kaiser patient, a representation that is false as shown by the allegations in their complaint here.

> THE COURT: … You filed a declaration indicating that you had destroyed all of the personal information. Correct?
>
> MR. DEAN: Yes, Your Honor.
>
> THE COURT: What is it that you are preserving, then?
>
> MR. DEAN: Now?
>
> THE COURT: Yes.
>
> MR. DEAN: Nothing. That's -- I don't have anything.
>
> * * *
>
> THE COURT: … Sir, do you have any electronic information whatsoever of any Kaiser patient?
>
> MR. DEAN: No. Your Honor, no. Your Honor, they want to shake us and hang us upside down. We don't have anything.

7

Case No. 5:22-cv-00278-MCS-SHK
REPLY IN SUPPORT OF DEFENDANTS KAISER FOUNDATION HEALTH PLAN, INC.'S AND KAISER FOUNDATION HOSPITALS' MOTION TO DISMISS

> THE COURT: Okay. Mr. Dean, let me do it one at a time. Do you have any electronic data whatsoever that has any reference to any Kaiser patient?
>
> MR. DEAN: No.
>
> THE COURT: Next, do you have any hard copies of any written records which in any way relate or refer to any Kaiser patient?
>
> MR. DEAN: No.
>
> THE COURT: Are you preserving any data whatsoever that has anything to do with any Kaiser patient in any form whatsoever, whether hard copy, electronic, or otherwise?
>
> MR. DEAN: No.
>
> THE COURT: Okay. Ms. Dean, do you agree? Would your answers be the same?
>
> MS. DEAN: Yes, they would be absolutely the same.

Dkt. 19-1, Ex. 1, at 22:20-27, 24:4-23.

Compare this to Plaintiffs' complaint in this case, where they assert that they "continue[] to retain" personal identification information about Kaiser's patients. Complaint (Dkt. 1-1), ¶ 7. Notably, the court in the 2012 case was satisfied with Plaintiffs' representations that they had destroyed all patient information because they would open Plaintiffs to felony perjury charges if their representations to the court proved untrue:

> THE COURT: **And since then, under penalty of perjury, which is a felony in the state of California, he has represented that all such records have in fact been destroyed and he doesn't possess any.**
>
> Now, on the one hand, those comments to you certainly have some inferences that I understand your position and your interpretation.
>
> **Since then, having received a declaration under penalty of perjury, both Mr. and Mrs. Dean are running a substantial and significant risk regarding the signing of such a declaration if it's untrue.**

Dkt. 9-1, Ex. 1, at 30:24-31:11 (emphasis added). As their complaint here shows, Plaintiffs do not share the court's regard for the likelihood of felony perjury charges.

### C. Declaratory Relief is Not a Valid Cause of Action

"[D]eclaratory relief is a remedy, not a cause of action." *Lopez v. Wells Fargo Bank, N.A.*, 727 F. App'x 425, 426 (9th Cir. 2018). Plaintiffs contend that *Lopez* is distinguishable because in that case "all of the plaintiff's other claims were properly dismissed," but "[h]ere, there is only a single claim for declaratory judgment." Dkt. 19 at 8-9. This is nonsensical. Nothing in *Lopez* supports Plaintiffs' argument that declaratory relief cannot survive when asserted with other dismissed causes of action but can survive when stated alone. Regardless, Plaintiffs' declaratory relief fails either way because it depends on the false theory that they gained the right to use Kaiser's trademarks because the settlement agreement did not preclude them from doing so, which is why dismissal should be with prejudice.

### D. Plaintiffs Cannot Dismiss Some Claims Under Fed. R. Civ. P. 41

Plaintiffs filed a notice under Fed. R. Civ. P. 41(a)(1)(A)(i) seeking to dismiss their first, third, and fourth causes of action. Dkt. 14. But "a plaintiff may not use Rule 41(a)(1)(i) to dismiss, unilaterally, a single claim from a multi-claim complaint." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 (9th Cir. 1988). Indeed, Plaintiffs' use of Fed. R. Civ. P. 41 to obtain "piecemeal dismissals" is a "legal nullity." *Preiss v. S & R Prod. Co.*, No. 2:10-CV-01795-RLH, 2011 WL 4402952, at *4 (D. Nev. Sept. 20, 2011), *aff'd sub nom. Preiss v. Horn*, 533 F. App'x 715 (9th Cir. 2013); *see also Strojnik v. Evans Hotels, LLC*, No. 19-CV-0650-BAS-BGS, 2019 WL 2918176, at *1 (S.D. Cal. July 8, 2019) (plaintiff responded to a motion to dismiss by purporting to dismiss certain claims pursuant to Fed. R. Civ. P. 41(a)(1); "[b]ecause Rule 41(a)(1) 'does not allow for piecemeal dismissals,' [citation omitted], the Court construes Plaintiff's response as a non-opposition to dismissal"). Instead, "Federal Rule of Civil Procedure 15(a) is the appropriate mechanism" to dismiss individual claims. *Ethridge*, 861 F.2d at 1392. As in *Strojnik*, the Court should construe Plaintiffs' Fed. R. Civ. P. 41 filing "as a

non-opposition to dismissal." Plaintiffs should not be allowed to avoid dismissal *with* prejudice by attempting to withdraw some causes of action *without* prejudice.

### E. The Court Should Reject Plaintiffs' Conclusory Labels

Plaintiffs ask the Court to ignore the contents of the settlement agreement they attached to their complaint, and the judicially noticeable documents submitted by Kaiser, and instead accept Plaintiffs' conclusory assertions about the legal effect of the settlement agreement and the summary judgment order in the 2012 lawsuit. Opposition (Dkt. 19) at 10-11. Plaintiffs' request contradicts law. Plaintiffs' allegations about the contents of the summary judgment order and their conclusions about its legal effect do not control over what the document actually says. Instead, conclusory allegations and legal conclusions "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[t]he court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### III. CONCLUSION

Plaintiffs kept Kaiser patients' information – despite their representations to the contrary to the court in the 2012 case -- and are now trying to sell it on a website that uses Kaiser trademarks to impersonate Kaiser. Plaintiffs cannot plead any right to use Kaiser's trademarks or sell the patient data they pledged to protect. As a result, all of Plaintiffs' causes of action fail, and any attempt to amend would be futile. The Court should dismiss this frivolous case with prejudice.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: March 14, 2022

By */s/ John Burns*
Jill Pietrini
Paul Bost
John Burns
Attorneys for Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals

SMRH:4894-1813-0196.4