SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JILL PIETRINI, Cal. Bar No. 138335
PAUL BOST, Cal. Bar No. 261531
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: 310.228.3700 / Facsimile: 310.228.3701
Email      JPietrini@sheppardmullin.com
             PBost@sheppardmullin.com

JOHN F. BURNS, Cal. Bar No. 290523
501 West Broadway, 19th Floor
San Diego, CA 92101
Telephone: 619.338.6588 / Facsimile: 619.515.4182
Email:     JBurns@sheppardmullin.com

Attorneys for Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephan Dean and Liza Dean, Individually and DBA SureFile Filing Systems,<br><br>         Plaintiffs,<br><br>  v.<br><br>Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Does 1-50 Inclusive,<br><br>         Defendants.<br><br>AND RELATED COUNTER-CLAIMS. | Case No. 5:22-cv-00278-MCS-SHK<br><br>**REPLY IN SUPPORT OF DEFENDANTS KAISER FOUNDATION HEALTH PLAN, INC.'S AND KAISER FOUNDATION HOSPITALS' SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROC. § 425.16**<br><br>Hearing:<br>Date:     March 28, 2022<br>Time:    9:00 a.m.<br>Courtroom: 7C |

## I. INTRODUCTION

Plaintiffs registered the Domain Name (<kphealthconnectusa.com>) and started a website on it where they used Kaiser trademarks to impersonate Kaiser while improperly selling patients' personal information. Kaiser therefore exercised its right to petition, and challenged Plaintiffs' infringing Domain Name under the UDRP. The National Arbitration Forum ("NAF") panel that adjudicated the UDRP action recognized Plaintiffs' conduct for what it was—an attempt to "extort[] a benefit from" Kaiser—and ordered that the Domain Name be transferred to Kaiser. Dkt. 11-2, Ex. E at 46, 47.

This is petitioning activity protected under California's Anti-SLAPP law. Indeed, Kaiser's petitioning of the UDRP is directly parallel to that in other cases in which courts struck down causes of action that challenged protected petitioning activity. Dkt. 11-1 at 8-12. Cases applying the *Noerr-Pennington* Doctrine—which is "analogous to" and "a cousin to" Anti-SLAPP law—confirm that Kaiser's actions before the UDRP are protected. *Every case* that has considered the question has concluded that the pursuit of an UDRP action is a protected activity under analogous *Noerr-Pennington* law. *Id.* at 9-10.

Plaintiffs, though, sued Kaiser for petitioning under the UDRP, and asserted breach of contract and interference with prospective business advantage causes of action—both subject to the California Anti-SLAPP statute. *Id.* at 7. Also, Plaintiffs cannot establish a probability of prevailing on the merits on either cause of action, and thus cannot escape Kaiser's Anti-SLAPP motion to strike. They fail under California law governing contract law, including the settled law that "[c]ourts will not add a term about which a contract is silent." *Dameron Hosp. Assn. v. AAA N. Cal., Nevada & Utah Ins. Exch.*, 229 Cal. App. 4th 549, 569 (2014). And they fail under settled California law governing interference because, among other things, Plaintiffs' proposed business of selling patient data is illegal, and it is not wrongful for Kaiser to protect its trademarks and patients.

Plaintiffs address none of this in their **<u>untimely</u>** opposition[1] to Kaiser's Anti-SLAPP motion. They do not address the law establishing that filing a UDRP action is protected petitioning activity. They do not address the law establishing that breach of contract and interference causes of action are subject to Anti-SLAPP law. And they do not address the law establishing that their breach of contract and interference causes of action are meritless. Rather than address the law establishing that Kaiser should prevail on its Anti-SLAPP motion, Plaintiffs make four frivolous arguments. This brief addresses them in turn.

### 1. Plaintiffs' Fed. R. Civ. P. 41 Filing Does Not Avoid Anti-SLAPP Law

After Kaiser devoted significant resources to rebut Plaintiffs' breach of contract and interference with prospective business advantage causes of action through their motions to dismiss and strike, Plaintiffs filed a notice under Fed. R. Civ. P. 41(a)(1)(A)(i) seeking to dismiss these causes of action (but not their declaratory relief cause of action). Dkt. 14. Plaintiffs' attempt to dismiss does not avoid the consequences of the Anti-SLAPP statute.

"[A] plaintiff may not use Rule 41(a)(1)(i) to dismiss, unilaterally, a single claim from a multi-claim complaint." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 (9th Cir. 1988). Indeed, Plaintiffs' use of Fed. R. Civ. P. 41 to obtain "piecemeal dismissals" is a "legal nullity." *Preiss v. S & R Prod. Co.*, No. 2:10-CV-01795-RLH, 2011 WL 4402952, at *4 (D. Nev. Sept. 20, 2011), *aff'd sub nom. Preiss v. Horn*, 533 F. App'x 715 (9th Cir. 2013). Plaintiffs filed the ineffectual dismissal in anticipation of Kaiser's motion to dismiss and Anti-SLAPP motion. Thus, the Court can construe Plaintiffs' Fed. R. Civ. P. 41 filing "as a non-opposition" to Kaiser's motions. *Strojnik v. Evans Hotels, LLC*, No. 19-CV-0650-BAS-BGS, 2019 WL 2918176, at *1 (S.D. Cal. July 8, 2019).

---

[1] Plaintiffs' opposition to Kaiser's Anti-SLAPP motion was due on March 7, 2022 under Local Rule 7-9; Plaintiffs filed their opposition on March 8, 2022.

This is illustrated by the analogous facts of *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044 (E.D. Cal. 2008). There, similar to here, the plaintiff attempted to dismiss one of his causes of action to avoid an Anti-SLAPP motion, but did not do so under Fed. R. Civ. P. 15(a). *Id.* at 1050. Relying on *Ethridge*, the court rejected this attempt to avoid consequences under the Anti-SLAPP statute, explaining "to dismiss the defamation claim from his multi-claim Complaint, Plaintiff must amend the Complaint under Rule 15." *Id.* As a result, the court held that the plaintiff "ha[d] not dismissed" the cause of action that was the subject of the Anti-SLAPP motion, and granted the motion. *Id.* at 1050, 1051.

The result in *Fabbrini* makes practical sense. The defendants in *Fabbrini*, like Kaiser, were forced to devote time and resources to address an improper defamation cause of action that would chill their petitioning rights. As in this case, that the plaintiff in *Fabbrini* recognized that his cause of action was improper and attempted to withdraw it did not change the harm already done, both in terms of potential chilling of petitioning rights, and of the time and resources the defendants were forced to dedicate to defeating the cause of action. Thus, as in *Fabbrini*, this Court should reject Plaintiffs' attempt to dismiss, and grant Kaiser's Anti-SLAPP motion.

### 2. The Challenged Causes of Action Sought Damages Based on Petitioning Activities

Ignoring that Kaiser's Anti-SLAPP motion is directed to their breach of contract and interference causes of action that they belatedly and ineffectively attempted to dismiss, Plaintiffs portray their lawsuit as merely a form of appeal of the NAF panel's decision. Dkt. No. 20 at 6. They then assert that their complaint is "not that [Kaiser] had no right to bring" the UDRP action, but instead that the NAF panel's "ruling was error." *Id.* Plaintiffs' characterization of their claims does not help them, and cannot be squared with what they have alleged in their complaint.

First, the challenged breach of contract and interference causes of action are both aimed at protected petitioning activities. In *Vivian v. Labrucherie*, similar to

Plaintiffs' breach of contract cause of action here, the plaintiff sought to impose liability for the defendants' petitioning activities before a court, which the plaintiff claimed constituted a breach of a settlement agreement between the parties. 214 Cal. App. 4th 267, 273 (2013). Rejecting the argument that the case was not subject to Anti-SLAPP laws because it was not "based on" petitioning activities, the court explained that the breach of contract cause of action there sought "damages for having allegedly breached the agreement." *Id.* at 274. Because the plaintiff sought to impose liability for having engaged in a protected petitioning activity, it fell within the scope of the Anti-SLAPP law. *Id.* The same is true with interference causes of action. *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1994) (describing interference with prospective economic advantage as a "favored cause[] of action in SLAPP suits") (disapproved on other grounds). Thus, these two causes of action in Plaintiffs' complaint trigger Anti-SLAPP law. Notably, Plaintiffs do not address, much less distinguish, either of these authorities in their opposition brief.

      Second, Plaintiffs' assert that their complaint is "not that [Kaiser] had no right to bring" the UDRP action, Dkt. No. 20 at 6, but this is simply untrue. Plaintiffs' breach of contract cause of action seeks more than $100,000 for "The actions of KAISER in bringing and pursuing the ICANN Dispute." Complaint (Dkt. 1-1), ¶¶ 27, 29. Plaintiffs' declaratory relief cause of action seeks a declaration that "KAISER has no right to continue to attack his use of a domain name that includes the word 'Kaiser' or the initials 'KP' or KAISER's logo." *Id.*, ¶ 32.c. And Plaintiffs' interference cause of action seeks punitive damages based on Kaiser's "institut[ing] and pursu[ing]" the UDRP action. *Id.*, ¶¶ 42, 47. In short, Plaintiffs' complaint is directed squarely at Kaiser's protected petitioning activities and Plaintiffs cannot avoid the motion to strike by recharacterizing their claims.

      **3.    The 2012 Action Does Not Help Plaintiffs' Case**

      The judicially noticeable documents from the 2012 case show that the issue there was Plaintiffs' retention of patients' medical records, not trademarks or

cybersquatting.  *See* Dkt. 11-2, Ex. D at 34-38; Dkt. 21-1, Exs. 1 and 3.  Nowhere in the complaint, hearing transcript, or summary judgment order from the 2012 case does anyone use the words "trademark," "cybersquatting," or "logo," or anything else to suggest that the case has anything to do with trademark rights.  *Id.*  Plaintiffs nonetheless contend that the court's summary judgment order in the 2012 case helps them with the trademark and cybersquatting matters at issue here under "the principles of res judicata," which thereby purportedly voids Kaiser's Anti-SLAPP motion.  Dkt. 20 at 10-11.  Plaintiffs are wrong.

"[I]ssue preclusion requires that an issue must have been *actually* and *necessarily* determined by a court of competent jurisdiction to be conclusive in a subsequent suit."  *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (internal quotation marks omitted).  Similarly, "claim preclusion does not apply to claims that accrue after the filing of the operative complaint in the first suit."  *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1021 (9th Cir. 2019) (internal quotation marks omitted).  Indeed, "[a] claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim."  *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (reversing district court's application of claim preclusion).  Plaintiffs' own exhibits establish that the trademark and cybersquatting issues in this case were not "actually" or "necessarily" determined by the court in the 2012 case.  Nor did the trademark and cybersquatting-based claims even "accrue" before the 2012 case; those issues did not arise until Plaintiffs started their data broker business and purchased the <kphealthconnectusa.com> Domain Name to market it.  According to Plaintiffs' complaint, Plaintiffs started their business in September 2020 at the earliest.  Complaint (Dkt. 1-1), ¶ 17.  And Plaintiffs did not register the Domain Name until late August 2021.  Dkt. 11-2, Ex. E at 42.

Likewise, the settlement agreement at issue in the 2012 case does not provide the everlasting immunity Plaintiffs attribute to it because "a release does not apply to

claims arising from subsequent conduct occurring after the execution of a release." *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1231 (C.D. Cal. 2007); *see also Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJWX, 2016 WL 6602561, at *5 (C.D. Cal. Nov. 8, 2016) (rejecting argument that a settlement agreement's release of future claims barred claims that arose out of actions that post-dated the settlement, as an interpretation that is improperly "indefinite" and improper under Cal. Civ. Code §§ 1643, 1668).

The 2012 case is irrelevant to the trademark and cybersquatting issues at bar.

### 4. Plaintiffs Cannot Rely on Purported Negotiations to Add Terms

Plaintiffs spend several pages of their opposition discussing purported settlement negotiations in an effort to add to the settlement agreement trademark terms that are not there. Dkt. 20 at 11-12. This fails for several reasons. First, as Kaiser has discussed at length, and Plaintiffs have not refuted, "[c]ourts will not add a term about which a contract is silent." *Dameron Hosp. Assn. v. AAA N. Cal., Nevada & Utah Ins. Exch.*, 229 Cal. App. 4th 549, 569 (2014). Simply put, Plaintiffs cannot add terms to the settlement agreement that are not there. Dkt. 11-1 at 12-13. Second, as Plaintiffs themselves admit, the integration clause precludes their reliance on negotiations or any other parol evidence. Dkt. 17 at 13 ("Defendants argue that the Court may not look behind the settlement agreement, which is an integration…. Defendants are correct."). Under the integration clause and California's parol evidence rule, none of the negotiations that led up to the settlement agreement can be used to change the settlement agreement's terms or to add terms that are not there. Dkt. 11-1 at 13. Thus, just like Plaintiffs cannot mischaracterize the 2012 lawsuit to add settlement terms that are not there, they also cannot rely on purported negotiations to add to the settlement agreement's terms. Third, Plaintiffs argue that their refusal to agree to a term expressly prohibiting their use of Kaiser's trademarks constitutes Kaiser's *consent* to use of their trademarks. This is absurd. At most, by refusing the terms they claim Kaiser proposed, Plaintiffs avoided a claim for breach

of contract based on their use of Kaiser's trademarks, not liability for infringement of Kaiser's trademarks.  Plaintiffs cannot point to any language in the settlement agreement allowing them to use Kaiser's trademarks – because there is none. Furthermore, as explained above and in Kaiser's briefing supporting its co-pending motion to dismiss, Plaintiffs' use—either current or future—of Kaiser's trademarks was not at issue in the 2012 case.

## II.   CONCLUSION

For all of the foregoing reasons, the Court should grant Kaiser's motion to strike, and Kaiser should be awarded its attorney's fees and costs pursuant to Cal. Civ. Proc. Code § 425.16(c).

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:   March 14, 2022

By */s/ John Burns*
Jill Pietrini
Paul Bost
John Burns
Attorneys for Defendants
Kaiser Foundation Health Plan, Inc. and
Kaiser Foundation Hospitals

SMRH:4894-9238-2996.3