Stephan Dean
Liza Dean
37187 Bankside Dr. #2
Cathedral City, CA 92234
(323) 314-9692
Email: surefile@msn.com

Plaintiffs and Counterdefendants in pro se

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHAN DEAN AND LIZA DEAN INDIVIDUALLY AND DBA SUREFILE FILING SYSTEMS,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS; DOES 1-50 INCLUSIVE<br><br>Defendants. | Case No: 5:22-CV-00278-MCS-KK<br><br>**DECLARATION OF STEPHAN DEAN, PLAINTIFF AND COUNTERDEFENDANT, IN OPPOSITION TO KAISER, DEFENDANT AND COUNTERCLAIMANT, MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with Plaintiff's Opposition; Memorandum of Points and Authorities; Separate Statement of Disputed and Undisputed Material Facts; and [Proposed] Order filed concurrently.]<br><br>Hearing:<br>Date:      _August 1, 2022<br>Time:       9:00 AM<br>Courtroom: 7C |

I, Stephan Dean, declare:

1.      I am one of the Plaintiffs in this matter. The other Plaintiff is my wife, Liza Dean ("Liza"). I have personal and firsthand knowledge of all facts set forth in this declaration unless stated otherwise, and if called as a witness, I would and could testify competently thereto.

2.     In all references to "me," or "my" or "I" include Liza unless the context clearly refers just to me personally.

3.     I have been involved with doing business for Kaiser since I was 10 years old in my family's business.  Over the years I have done numerous jobs for Kaiser involving its members' Protected Health Information ("PHI") without any written contract or Business Associate Agreement, ("BAA").

4.     Ultimately, Kaiser and the Deans entered into two written agreements for scanning and storage of the records of Kaiser members, one for members in Moreno Valley and one for members in West Los Angeles. Pursuant to those agreements as well as the prior oral agreements, Kaiser transferred to us many thousands of records of its members. The only restriction on our use of the data was set forth in a BAA with Kaiser in 2009, which agreement was terminated and superseded in 2011 by a settlement agreement.

5.   In late 2010, I contacted Kaiser in-house lawyer Holly Burke to ask if Kaiser would pay us for the storage and delivery costs for the Moreno Valley records that we had been storing since approximately 2008, which totaled approximately $114,000. Ms. Burke and I began to negotiate that amount, but she demanded concessions that were unrelated to payment for those services. I then retained attorney Thomas Stefanelli to represent us in dealing with Kaiser. From that point forward, the negotiations were between Mr. Stefanelli and Ms. Burke, but I was kept abreast of the status and copies of the emails and communications between them were sent to me as they were sent or received by Mr. Stefanelli.

6.   The ultimate result of the negotiations was a settlement agreement that was signed on March 24, 2011. A true copy of that settlement agreement is attached hereto as Exhibit 1.

7.   In emails in February and March 2011 between Mr. Stefanelli and Ms. Burke, which I received at the time and read, Kaiser (Ms. Burke) stated that it would only pay us what was owed if we waived all claims against Kaiser and agreed we were

DECLARATION OF STEPHAN DEAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

restricted from using the Kaiser name and trademarks in our business. We agreed to

waive all claims, past, present, future, and unknown, but we refused to be restricted

from using the Kaiser name and trademarks.  I remained firm in my insistence that

we retain the right to use the Kaiser name and trademarks without any restrictions

unless Kaiser paid us considerably more money as part of the settlement.

8.   After months of negotiating for the use of Kaisers name and trademarks without

restrictions or the need for Kaiser's approval, I finally gave Kaiser two options-

either pay us $110,000, for which we would retain the right to use the Kaiser name

and trademarks, or pay us $200,000, for which we would give up that right and

agree not to use the Kaiser name and trademarks.

9.   In an email dated March 8, 2011, Ms. Burke correctly phrased the options as set

forth above. Kaiser chose the option to pay us only the $110,000, and the

prohibition against use of the Kaiser name and trademark was removed from

paragraph 13 by Ms. Burke. A true copy of the email with a redline version of that

draft of the agreement showing the omission of the restriction regarding Kaiser's

name and trademark at the end of paragraph 13 (it is the lined-out portion at the end

of that paragraph) is attached hereto as Exhibit 2.

10. At my request, Ms. Burke also added language to the agreement requiring both

me and Kaiser to comply with the requirements of Health Insurance Portability and

Accountability Act ("HIPAA") as well as the California Confidential Medical

Information Act ("CMIA") as initially required by the BAA. This reference was, as

it states, only to the PHI protection under HIPAA and the CMIA. The BAA itself

was terminated and superseded by the settlement agreement.

11. After the settlement agreement was signed on March 24, 2011 and we were

paid the settlement amount, I contacted Ms. Burke to find out what Kaiser intended

to do with the PHI we still retained (as reflected in paragraph 13 of the settlement

agreement).

DECLARATION OF STEPHAN DEAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

12. Kaiser retained outside counsel, Thomas Freeman of Marrions Inn, and Mr. Stefanelli continued to represent us. The negotiations focused on the Deans' two surviving rights which we still hold - the right to retain patient information with no restrictions on its use or disclosure and the right to use the Kaiser name and trademark without Kaiser's permission.  Kaiser offered us $250,000 to release those surviving rights as set forth in the proposed settlement offer sent by Mr. Freeman. A true copy of that proposal is attached hereto as Exhibit 3. The parties ultimately failed to agree on settlement.

13. On October 12, 2012, Kaiser filed a complaint against us in the Riverside County Superior Court, a true copy of which is attached as Exhibit 4. The complaint sought a permanent injunction against our having the PHI of Kaiser members (which was limited to those members as of 2010 since had nothing after that)**.** We represented ourselves in pro per and agreed to delete all of the PHI we had. Kaiser obtained a preliminary injunction against our use of the members' PHI, but there was no reference there or anywhere else at any time to any information other than PHI. We represented ourselves in that lawsuit, as we could not pay Mr. Stefanelli.

14. We made the above offer in order to finally put the dispute with Kaiser behind us, but Kaiser refused to agree to it and wanted physical possession of our devices so a forensic expert could properly remove the PHI.  Kaiser's forensic expert, Richard Albee, filed a declaration in support of the preliminary injunction motion and appeared at the hearing on the motion. A true copy of that declaration is attached hereto as Exhibit 5.

15. Kaiser asked the court in the lawsuit to order us to physically provide access to Kaiser so that Kaiser's forensic expert could "properly" remove the PHI (again, nothing was said about any non-PHI information on our computer). We refused to give Kaiser access to our property, as the settlement agreement required only that

DECLARATION OF STEPHAN DEAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

we preserve the PHI. The court granted the preliminary injunction but refused to give Kaiser access to our computers. The order is attached hereto as Exhibit 6.

16. In at least one of several sessions of my deposition taken by Mr. Freeman, I repeatedly testified that we deleted the PHI using the "delete" key on the computer, which was all we could do. Copies of pages 90, 107, and 141 of one of the deposition sessions from March 2013 are attached hereto as collectively as Exhibit 7 (I do not have a copy of the entire transcript). Kaiser accepted this and never raised the issue again during litigation.

17. I prepared and filed our own motion for summary judgment based on the releases by Kaiser in the settlement agreement of all its claims against us, then and in the future. Kaiser vigorously opposed the motion, but the court, after thoroughly analyzing the facts and legal issues involved, granted it. A true copy of the order granting the motion is attached hereto as Exhibit 8.

18. Attached hereto as Exhibit 9 is a true copy of the transcript of the hearing on July 31, 2013 of our motion for summary judgment in which the court clearly states the reasons why we were entitled to judgment against Kaiser as a matter of law. As reflected at page 4 of the transcript, Kaiser requested and was given leave to amend its complaint to allege fraud or mistake or any other claim it wished to assert, including the very claims it is making in its counterclaim. Kaiser, however, elected not to file an amended pleading, and on October 13, 2013, the Court dismissed the entire action with prejudice, making the judgment final. A true copy of the order dismissing the action with prejudice is attached hereto as Exhibit 10.

DECLARATION OF STEPHAN DEAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1    I certify under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct and that this declaration was executed by me

3    on July 11, 2022 at Cathedral City, California.

4

5

6                                         _____

7                                         Stephan Dean
                                          Plaintiff in Pro Per

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEPHAN DEAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 1

Final Agreement

## SETTLEMENT AGREEMENT AND RELEASE

Stephan C. Dean and Liza Dean, doing business as Sure File Systems ("Dean" or "Sure File"), with its principal place of business at 43-915 Camp Place, Indio, California 92203, on the one hand, and Kaiser Foundation Health Plan, Inc., a California nonprofit public benefit corporation ("KFHP") and Kaiser Foundation Hospitals, a California nonprofit public benefit corporation ("KFH"), each with its principal place of business at One Kaiser Plaza, Oakland, California 94612 (collectively referred to herein as "KP"), on the other hand, hereby enter into this Settlement Agreement And Release (the "Agreement"), effective as of March 24, 2011 ("Effective Date").

### RECITALS

WHEREAS, Stephan C. Dean and Liza Dean doing business as "Sure File Systems" have rendered services to KP and its affiliates, including without limitation, the preparation, sorting, scanning, indexing, quality control, transportation and storage of patient medical records (collectively, the "Services").

WHEREAS, Sure File and KP failed to fully memorialize their business relationship relating to the Services in a written agreement;

WHEREAS, Sure File asserts that it has yet to be fully compensated for Services performed and costs incurred in providing Services to KP and has alleged other claims against KP which KP has disputed (collectively, the "Dispute"); and

WHEREAS, the parties to this Agreement now desire to settle and compromise any claims they might possess against the other, settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein.

WHEREAS, It is expressly understood by all parties that this Agreement is being entered into to avoid the costs and burdens of protracted disagreement and/or litigation and that the parties by entering into or performing this Agreement make no statement, admission, or concession concerning the viability of any claims they have asserted or may have asserted against each other.

### AGREEMENT

In consideration for the promises and performances hereafter described, the parties agree as follows:

1.    Consideration and Performance.

A.    KP has agreed to pay Stephan C. Dean dba Sure File Systems the amount of $110,000 (the "Settlement Funds"). KP will make payment of the Settlement Funds via a check in immediately available funds made payable to Stephan C. Dean dba Sure File Systems, which will be available for pickup at KP's Walnut Center, CA facility two (2) business days following execution of this Agreement by the parties. At the request of Stephan Dean, KP shall send the check to Mr. Dean via FedEx or UPS overnight mail to the address specified in writing by Mr. Dean.

      B.    The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date.

      C.    Except as otherwise provided herein, KP and Sure File agree that no additional money shall be due from any party, for any reason whatsoever, for any obligation incurred by any party to any other party in connection with the Dispute.

2.    <u>Indemnification</u>.  KP will indemnify, defend and hold harmless Sure File, Stephan C. Dean, and Liza Dean, and their agents and employees, from third party claims, demands, or causes of action for damages or loss resulting from alleged harm to or loss of the medical records previously maintained by Sure File, or resulting from Sure File, Stephan C. Dean, and Liza Dean, and their agents and employees obtaining information regarding Kaiser patients. As used herein, the "third party" means any person or entity other than a party to this Agreement and such party's affiliates, as defined in paragraph 3 below.

3.    <u>Settlement and Releases</u>.  Further, effective upon signature of this Agreement and delivery of the Settlement Funds, KP, on the one hand, and Sure File, Stephan C. Dean, and Liza Dean, on the other hand, shall mutually remise, release, and forever discharge each other, including any and all persons, firms, partnerships, corporations, heirs, executors, contractors, subcontractors, suppliers, administrators, and their respective predecessors, successors, assigns and shareholders, and all of their past, present and future officers, directors, partners, agents, attorneys, parent companies, subsidiaries, related entities, affiliated companies, accountants, and employees and their respective successors, heirs, assigns, executors, and administrators thereof, and/or each of the aforesaid (collectively referred to herein as "affiliates"), from all claims, actions, causes of action of any nature and for all liabilities and obligations of every kind and character arising out of or relating to the Dispute and any and all claims that were or could have been asserted relating to and/or arising from any of the foregoing, regardless of whether such claims, actions or causes of action have arisen prior to the Effective Date or arise after the Effective Date. Without limiting the scope of the foregoing, this release extends to unknown claims, meaning claims the parties may not have any basis to know or suspect at this time or at any time in the past, with respect to the Dispute, and all parties certify their intent to release such claims and obligations that relate to the Dispute notwithstanding their present lack of knowledge.  Furthermore, each party confirms that it intends this Agreement to constitute a general release of all claims relating to the Dispute and each party hereby desires to and hereby does waive any rights or claims it would otherwise have under California Civil Code Section 1542, which reads as follows:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

4.    <u>Advice of Counsel</u>.  The parties understand and acknowledge the significance and consequences of signing this Agreement and have had a full opportunity to discuss, and/or have discussed, this Agreement with their attorneys.

5.    <u>Warranty of Voluntary Agreement</u>.    Each party warrants and represents that this Agreement is freely and voluntarily executed by such party, after having been apprised of all of the relevant information and data by its attorneys.    Each party executing this Agreement warrants and represents that it has not relied on any inducements, promises or representations made by any party or its representative, or any other person, except for those expressly set forth herein.

6.    <u>Warranty of Mutual Understanding</u>.    The parties hereto warrant and represent that they have read this Agreement and that they have had a full opportunity to have, and/or have had, the terms used herein and the consequences hereof explained to them by their respective attorneys; that each is legally competent to execute this Agreement and accept full responsibility therefor; and has the authority to do so.    It is expressly understood by the parties, and each of them, by reason of the consideration hereinabove mentioned, that the parties admit no liability of any sort and have made no representations as to any liabilities or obligations and have made no agreements or promises to do or admit to do any act or thing not set forth herein.

7.    <u>Warranty of Performance</u>.    Each party hereto agrees to promptly carry out and execute its responsibilities under the terms of this Agreement and to execute any and all documents which may be necessary from time to time in the future to implement the terms of this Agreement.

8.    <u>Warranty of Right and Authority</u>.    The parties each warrant no other person or entity has or had or claims to have had any interest in the claims, demands, causes of action, obligations, damages or liabilities described herein; that he, she or it has not pledged, sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, cause of action, obligation, damage or liability covered herein. The parties further warrant that the person(s) signing on their behalf is (are) duly authorized by appropriate corporate or other action to sign the agreement and bind their respective entities to it. Any breach of these warranties, or any of them, shall render the breaching party (ies) liable for any damages caused by the breach, including reasonable attorneys' fees expended as a result of the breach.

9.    <u>Binding Effect</u>.    This Agreement shall bind and inure to the benefit of all successors, assigns, spouses, children, and heirs of the parties.    Should any party cease to exist during the period of performance of this Agreement, the rights, duties, and obligations of the deceased party shall inure and bind its successors, assigns, and heirs.

10.    <u>Incorporation of Recitals</u>.    The Recitals set forth at the beginning of this Agreement are affirmed by the parties hereto, and are acknowledged by the parties to be true and correct and are hereby incorporated into the body of this Agreement as if fully set forth herein.

11.    <u>Modification Must Be In Writing</u>.    This Agreement may not be altered, amended, or modified, except in a writing that is executed by duly authorized representatives of all of the parties hereto.

12.    <u>Construction</u>.    Should any paragraph, clause or provision of this Agreement be construed to be against public policy or determined by a court of competent jurisdiction to be void, invalid or unenforceable, such construction and decision shall affect only those

13.     <u>Non-Disclosure</u>.  The nature and terms of this Agreement shall not be disclosed by any party hereto or its agents, attorneys, or any other representative, without the prior written consent of all of the other parties; provided, however, that any party may disclose the existence of this Agreement, and the nature and terms thereof, (i) to the attorneys, accountants, and financial and tax advisors of that party, (ii) as required or compelled by law, or (iii) to enforce the provisions of this Agreement. KP and Dean will continue take appropriate steps to preserve all confidential information in the medical records handled by Dean during the course of providing Services as required by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health Insurance Portability and Accountability Act ("HIPAA"), and the parties' Business Associate Agreement of June 24, 2009.

14.     <u>Governing Law</u>.  This Agreement shall be construed and governed by the laws of the State of California.

15.     <u>Notices</u>.  Notices under this Agreement shall all be in writing, effective upon receipt and shall be sent by any of the following methods (a) facsimile with return facsimile acknowledging receipt; (b) United States Postal Service certified or registered mail with return receipt showing receipt; or (c) courier delivery service with proof of delivery; or (d) personal delivery.  Either party hereunder may change the names and addresses for receipt of notices by notice given as provided for herein.

Notices to Sure File shall be sent as follows:

Stephan C. Dean,
dba Sure File Systems
43-915 Camp Place
Indio, California 92203
With a copy to:

Notices to KFHP or KFH shall be sent as follows:

Kaiser Foundation Health Plan, Inc.
Kaiser Foundation Hospitals
393 E. Walnut Street, 5th floor, (53R03)
Pasadena, CA 91188
Attn: Laurel Junk, VP Supply Chain

With a copy to:
Kaiser Foundation Health Plan, Inc.
1800 Harrison St, 8th Floor
Oakland, CA 94612
Attn: Holly Burke, Senior Counsel

16.  **Subject Headings**.  Subject headings used in this Agreement are for convenience only. The singular shall include the plural and the masculine shall include the feminine and neuter genders.

17.  **Counterparts**.  This Agreement may be executed in any number of counterparts and each counterpart signature shall, when taken with all other signatures, be treated as if executed upon one original of this Agreement.  A facsimile signature of any party shall be binding upon that party as if it were an original.

18.  **Entire Agreement**.  This Agreement states the entire agreement among the parties who have executed this Agreement and supersedes their prior agreements, negotiations or understandings.  Each of these parties acknowledges and agrees that no other party, nor agent, nor attorney of any of the parties made any promise, representation or warranty, express or implied, not set forth in this Agreement.  Each party signing this Agreement acknowledges that such party has not executed this Agreement on reliance on any promise, representation, conduct or warranty of any other party not expressly set forth in this Agreement.

IT IS SO AGREED.

Dated: March ___, 2011                 Stephan C. Dean, dba Sure File Systems

By:_____
PRINT NAME:_____

                                        LIZA DEAN
Dated: March ___, 2011

By:_____
PRINT NAME:_____

Dated: March **24**, 2011              KAISER FOUNDATION HEALTH PLAN, INC.
                                        KAISER FOUNDATION HOSPITALS
By: _____
PRINT NAME: Laurel L. Junk
TITLE: Vice President, Supply Chain

EXHIBIT 2

## Fw: Action: Claim of Surefile - Need Confirmation of Existing Situation Exhibit 7

From:  Liza Dean (lizadean65@yahoo.com)

To:    lizadean65@yahoo.com

Date:  Thursday, May 26, 2022, 09:52 AM PDT

--- On **Tue, 3/8/11, Holly.B.Burke@kp.org** *<Holly.B.Burke@kp.org>* wrote:

From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
Subject: Action: Claim of Surefile - Need Confirmation of Existing Situation
To: lawstef7771@yahoo.com
Date: Tuesday, March 8, 2011, 6:06 PM

Hi Tom,

I'm really sorry to hear about your Dad.

Thanks for getting back to me. I wanted to get confirmation on the current Dean offer. I want to minimize any confusion at this important point.

I wondered if you could confirm my understanding. As I understand the new offer, we have two options.

1. Option 1: $110K to settle with the previous language re: confidentiality. Please see Option 1 document, which is Version 9 (without additional confidentiality and publicity restrictions). I want to confirm if the document as marked was the acceptable version to go with Option 1. We would need to update the dates in this version.

2. Option 2: $200k with updated language re confidentiality, publicity and disparagement. Please see Option 2 document, which is Version 9 that I sent to you in mid-Jan.  We would need to update the $ amounts and dates in this version.


**Option 1 Document:**


**Option 2 Document:**



Can you let me know if this is correct?

Thanks much,
Holly

5/26/22, 9:52 AM                  Yahoo Mail - Fw: Action: Claim of Surefile - Need Confirmation of Existing Situation Exhibit 7



**KAISER PERMANENTE**

**HOLLY BURKE**
SENIOR COUNSEL
LEGAL DEPARTMENT

1800 HARRISON ST.
18TH FLOOR
OAKLAND, CA 94612

OFFICE – (510) 625 – 5679 TIE: 8-428-5679
FAX – (510) 625-2882
EMAIL – Holly.B.Burke@kp.org

**NOTICE TO RECIPIENT:** If you are not the intended recipient of this e-mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this e-mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-mail and any attachments without reading, forwarding or saving them. Thank you.

---

Thomas Stefanelli <lawstef7771@yahoo.com>              To Holly B Burke/PO/KAIPERM@KAIPERM
03/08/2011 04:02 PM                                    cc
                                                       Subject Claim of Surefile

Hi Holly:

Sorry I am so slow to get back to you. As you know, I have been dealing with some personal issues regarding my father that have necessitated me traveling to Canada.

For your information, I have spent a great deal of time working on my client, trying to get him to agree to settle this matter and sign the Release that you have proposed. Although he is ready to settle, as you know, the terms of the Release have been a sticking point. He is now prepared to reach a settlement and sign the last Release that you submitted to us, but he wants additional consideration. He is prepared to sign that Release in return for a payment by Kaiser in the amount of $200,000, as long as payment can be arranged within the next few days, by the end of this week.

I know that at the start of the negotiations you asked for a firm number that my client would accept to waive all claims against Kaiser. That number was $110,000. My client did not contemplate the language that you require in the Release. That is the reason for the increase in the settlement demand.

I look forward to hearing from you.

Tom Stefanelli

12.    Construction.    Should any paragraph, clause or provision of this Agreement be construed to be against public policy or determined by a court of competent jurisdiction to be void, invalid or unenforceable, such construction and decision shall affect only those paragraphs, clauses or provisions so construed or interpreted, and shall in no way affect the remaining paragraphs, clauses or provisions of this agreement, which shall remain in force.

13.    Non-Disclosure.    The nature and terms of this Agreement ~~and the Services provided~~ shall not be disclosed by any party hereto or its agents, attorneys, or any other representative, without the prior written consent of all of the other parties. ~~KP and Dean agree that each party will not disparage the other nor shall any party confirm or deny any facts concerning the other party other than the fact that the parties had business a business relationship together, the duration and type of Services provided and that as a matter of business no additional information can be given. Provided, however :~~ provided, however, that provided that any party may disclose the existence of this Agreement, ~~Services provided~~ and the nature and terms thereof, (i) to the attorneys, accountants, and financial and tax advisors of that party, (ii) as required or compelled by law, or (iii) to enforce the provisions of this Agreement. KP and Dean will continue take appropriate steps to preserve all confidential information in the medical records handled by Dean during the course of providing Services as required by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health Insurance Portability and Accountability Act ("HIPAA"), and the parties' Business Associate Agreement of June 24, 2009. ~~Except as set forth above, without the prior written consent of KP, surefile shall not use in advertising or publicity the trade names, service marks or logo of KP, the Kaiser Permanente Medical Care Program or any affiliates.~~

14.    Governing Law.    This Agreement shall be construed and governed by the laws of the State of California.

15.    Notices.    Notices under this Agreement shall all be in writing, effective upon receipt and shall be sent by any of the following methods (a) facsimile with return facsimile acknowledging receipt; (b) United States Postal Service certified or registered mail with return receipt showing receipt; or (c) courier delivery service with proof of delivery; or (d) personal delivery.   Either party hereunder may change the names and addresses for receipt of notices by notice given as provided for herein.

Notices to Sure File shall be sent as follows:

Stephan C. Dean,
dba Sure File Systems
43-915 Camp Place
Indio, California 92203
With a copy to:

Notices to KFHP or KFH shall be sent as follows:

Kaiser Foundation Health Plan, Inc.
Kaiser Foundation Hospitals
393 E. Walnut Street, 5th floor, (53R03)
Pasadena, CA 91188

EXHIBIT 3

CONFIDENTIAL SETTLEMENT AGREEMENT
AND GENERAL RELEASE OF ALL CLAIMS

This Confidential Settlement Agreement and General Release of All Claims ("Agreement") is entered into as September 24, 2012 ("Effective Date") by and between Stephen C. Dean and Liza Dean doing business as Sure File Systems (hereinafter collectively referred to as "DEAN") on the one hand and Kaiser Foundation Health Plan, Inc. (hereinafter referred to as "HP") and Kaiser Foundation Hospitals (hereinafter referred to as "KFH") on the other. KFH and HP are collectively referred to as "KAISER". DEAN and KAISER are collectively referred to hereafter as "the Parties" and each as a "Party." The Parties execute this Agreement with reference to the following facts:

RECITALS

A.      DEAN previously entered into agreements with KAISER under which DEAN provided medical records management services to KAISER, the Southern California Permanente Medical Group and affiliates (HP, KFH and the Southern California Medical Group are collectively hereinafter referred to as "Kaiser Permanente"), including sorting, scanning, deactivation and storage of medical records of patients. From time to time Dean and representatives of Kaiser Permanente communicated by email regarding the services and the medical records. DEAN claims that he has retained on his computers, servers, in his email accounts, or otherwise, electronic patient files or emails that may include confidential and protected information about the patients, as defined by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health Insurance Portability and Accountability Act ("HIPAA"), or the Parties' Business Associate Agreement signed by Stephan C. Dean on June 24, 2009 (hereafter referred to as "Kaiser PHI").

B.      This Agreement is being put in place specifically to resolve fully and finally DEAN'S complaints that Stephen C. Dean and Liza Dean still have Kaiser PHI in their possession DEAN contends that the Transfer Agreement dated July 2010 and the Settlement Agreement and Release dated March 24, 2011 and the Parties' Business Associate Agreement signed by Stephan C. Dean on June 24, 2009 did not resolve the return and/or destruction of the Kaiser PHI.

C.      Without any admission of wrongdoing or liability by any Party, it is the intention and agreement of the Parties to settle and dispose of, fully and completely, all claims by DEAN relating to the possession and use of Kaiser PHI, any claims related to medical records management services DEAN provided to Kaiser Permanente and its affiliates, any claims related to payment for the medical record management services and any and all other claims DEAN may have against Kaiser Permanente and the Releasees described in Paragraph 2 below.

NOW THEREFORE, in consideration for the execution of this Agreement, and the performance of the terms and conditions herein, the Parties agree as follows:

1.      <u>Settlement Payment</u>.  Subject to the conditions precedent set forth in this Agreement, KAISER shall pay DEAN the total amount of Two Hundred Fifty Thousand Dollars

($250,000.00) in one payment by check payable to "Stephen C. Dean and Liza Dean doing business as Sure File Systems." . The settlement payment will be delivered to DEAN'S counsel (Thomas M. Stefanelli at The Law Offices of Thomas M. Stefanelli, Esq., 777 E. Tahquitz Canyon Way, Suite 200-157 Palm Springs, CA 92262.) within five (5) business days after KAISER obtains all of the following: (a) DEAN'S counsel has provided KAISER'S counsel with an executed original of this Agreement with notarized signatures of Stephen C. Dean and Liza Dean and an IRS Form W 9 executed by Stephen C. Dean and Liza Dean; (b) Stephen C. Dean and Liza Dean have delivered to KAISER'S counsel (Thomas M. Freeman at Marion's Inn LLP, 1611 Telegraph Avenue, Suite 707, Oakland, CA, 94612) all computers, hard drives, servers or other hardware equipment on which Stephen C. Dean and Liza Dean believe any Kaiser PHI is saved or may have been received and saved in the past; (c) Stephen C. Dean and Liza Dean have deleted all Kaiser PHI from all their email accounts; and (d) DEAN'S counsel has provided KAISER'S counsel with an executed and notarized affidavit from Stephen C. Dean and Liza Dean in the form attached hereto as Exhibit A.

        2.     <u>General Release</u>.  Stephan C. Dean and Liza Dean and anyone and any entity claiming through either of them, including but not limited to, their heirs, successors, assigns, and agents, hereby release and forever discharge KAISER and any of the organizations participating in the Kaiser Permanente Medical Care Program ("the Program") (including, but not limited to Permanente Medical Groups in the regions where the Program does business), and each such entity's respective affiliates, subsidiaries, parent companies, related companies, partners, officers, directors, servants, agents, employees, former employees, representatives, and attorneys, past or present, and all persons acting under, by, through, or in concert with any of them (collectively, the "Releasees") from any and all claims, counterclaims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, grievances, obligations, debts, expenses, damages, losses, injuries, judgments, orders, attorney's fees, costs, expenses, and liabilities of whatever kind or nature in law, equity or otherwise, whether known or unknown, (collectively, the "Claims" or "Claim"), which Stephan C. Dean or Liza Dean now owns or holds or has at any time owned or held against the Releasees, including but not limited to (a) any and all Claims relating to any Kaiser PHI in the possession, custody or control of DEAN, or to which Stephan C. Dean or Liza Dean otherwise has access in computers, hard drives, thumb drives, email accounts or otherwise,  in whatever form or format, specifically including but not limited to any emails or other digital data received from any of the Releasees; (b) any and all Claims arising out of or in any way related to the medical records management services DEAN provided to Kaiser Permanente and its affiliates, the payment for the record management services and the termination of the medical records management services DEAN provided to Kaiser Permanente and its affiliates; (c) any and all Claims arising out of or in any way connected with any act or omission by any of the Releasees up to and including the Effective Date of this Agreement; and (d) any and all Claims for attorneys' fees, expenses and costs.

        3.     <u>Release of Unknown Claims</u>.  This is a full and final-release covering all unsuspected, unknown, undisclosed and unanticipated claims which may have arisen, or may arise, from any act or omission of the Releasees prior to the Effective Date of this Agreement, and which arise out of or are related, directly or indirectly, to the dealings between DEAN and Kaiser Permanente or any matters referenced in paragraph 2 above. Therefore, Stephan C. Dean and Liza Dean both waive any and all rights or benefits which either of them may now have, or

in the future may have, under the terms of Section 1542 of the California Civil Code, which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to existing his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Stephan C. Dean and Liza Dean acknowledge they have read this Agreement, including the waiver of California Civil Code Section 1542, that they have been provided the opportunity to consult with counsel about the Agreement and specifically about the waiver of Section 1542, they understand the Agreement and the Section 1542 waiver, and so freely and knowingly enter into this Agreement. Stephan C. Dean and Liza Dean acknowledge that they may hereafter discover facts different from or in addition to those each knows or now believes to be true with respect to the matters released or described in this Agreement, and he agrees the releases and agreements contained herein shall be and will remain effective in all respects notwithstanding any later discovery of any such different or additional facts. Stephan C. Dean and Liza Dean hereby assume any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies described herein or with regard to any facts which are now unknown to them relating thereto.

4.    <u>Warranty by Stephan C. Dean and Liza Dean of No Assignment</u>.  Stephan C. Dean and Liza Dean declare that they have made no assignment and will make no assignment of any Claim released herein.

5.    <u>Stephan C. Dean's and Liza Dean's Continuing Duty To Cooperate and Assist Kaiser Permanente</u>.  As further consideration for the settlement payment from KAISER described in paragraph 1 above, Stephan C. Dean and Liza Dean will access all email accounts in their care custody or control in which they believe any Kaiser PHI may be stored or be accessible and permanently delete and remove any Kaiser PHI. To the extent Stephan C. Dean or Liza Dean subsequently finds any written or digital Kaiser PHI, Stephan C. Dean and Liza Dean will immediately notify counsel for KAISER, permanently delete, remove or destroy the Kaiser PHI, or deliver it to KAISER'S counsel at no cost to any Kaiser Permanente entity or any other third party.

6.    <u>Confidentiality</u>.  Stephan C. Dean and Liza Dean, on behalf of each of them and their legal counsel, agree that they shall not disclose, publicize or allow or cause to be publicized or disclosed (i) any facts and circumstances relating to the services which DEAN provided to Kaiser Permanente and its affiliates;  (ii) facts and circumstances relating DEAN'S claims that he has retained on his computers, servers, in his email accounts, or otherwise, electronic patient files or emails that may include Kaiser PHI  about the patients (iii) any Kaiser PHI; or (iv) any of the terms and conditions of this Agreement, including without limitation any of the settlement discussions or communications arising prior this Agreement, to any person or entity, including, but not limited to, any current, former or future employee of SCPMG or the Program, or to any member of the print, electronic or other media.  The sole exceptions to the obligations under this Paragraph are (a) a disclosure required by law (such as to a governmental

and/or regulatory agency or tribunal as required), (b) to enforce any obligations under this Agreement, or (c) a disclosure to DEAN'S attorneys and/or financial advisors, who will be advised of the confidential nature of this Agreement and must agree to be bound by its terms. If anyone asks Stephan C. Dean or Liza Dean or their legal counsel regarding DEAN'S relationship with any Kaiser Permanente entity, or any facts and circumstances relating to the medical records management services which DEAN provided to Kaiser Permanente and its affiliates, or any other information that Stephan C. Dean and Liza Dean agree to keep confidential as set forth in this paragraph, Stephan C. Dean and Liza Dean or their legal counsel may say only that "during the period October, 2008 to July, 2010 Stephan C. Dean and Liza Dean, doing business as Sure File Systems, provided medical records management services to certain Kaiser Permanente facilities in Southern California.." If Stephan C. Dean or Liza Dean or their legal counsel are required or compelled by law to make any disclosure to anyone beyond the foregoing, Stephan C. Dean and Liza Dean or their legal counsel will provide immediate written notice to KAISER'S counsel before making any such disclosure.  If Stephan C. Dean or Liza Dean or their legal counsel receive an inquiry about any alleged dispute with KFHP or any other entity of the Program, they are authorized to say nothing other than "it has been resolved" or similar words to that effect without disclosing any information relating to the terms and conditions of this Agreement.

DEAN agrees that this confidentiality provision is an express and absolute condition of this Agreement, is bargained for consideration for this Agreement and is not a mere recital, and that any violation of the terms and conditions of this confidentiality provision shall constitute a material breach of this Agreement.  **In the event that Stephan C. Dean or Liza Dean or any other individual acting on their behalf breaches the aforementioned obligation of confidentiality, DEAN agrees that damages for the breach of such obligation would be and are difficult to ascertain.  DEAN therefore agrees to pay KAISER $25,000.00 per breach as liquidated damages, representing a sum that DEAN agrees is reasonable in light of the circumstances existing at the time of this settlement.**

       7.    <u>Non-Disparagement</u>.  As further consideration for the settlement payment from KAISER described in paragraph 1 above, Stephan C. Dean and Liza Dean shall not make any disparaging comment and/or statement about any of the Releasees in paragraph 2.

       8.    <u>No Contractual Relationship</u>.  In consideration of the promises made by KAISER in this Agreement Stephan C. Dean and Liza Dean agree and acknowledge: (i) that DEAN'S contractual relationship with KAISER has been severed other than as set forth in this Agreement; (ii) that Stephan C. Dean and Liza Dean have no intention to apply and will not knowingly apply for, seek, or accept employment or a contract with any Kaiser Permanente entity or any affiliates; (iii) that Kaiser Permanente and its affiliates  have no obligation to employ DEAN or contract with DEAN now or in the future as an employee, a contractor, or in any other capacity, and  if either Stephan C. Dean or Liza Dean does seek or obtain employment or a contract after the date of execution of this Agreement, this Agreement shall constitute sufficient cause for refusal to hire or contract and/or for the termination of any such employment or contract.

9.     Employment Inquiries.  In consideration of the promises made by KAISER in this Agreement, Stephan C. Dean and Liza Dean agree that they will not direct any employment inquiries or requests for references to Kaiser Permanente or its affiliates beyond the statement in Exhibit B.  In response to any and all employment verification/reference requests, KAISER will not make any comments regarding DEAN'S relationship with any Kaiser Permanente entity or its affiliates beyond the statement in Exhibit B, except as otherwise required or compelled by a lawful subpoena or order.

10.     CIRCULAR 230 DISCLAIMER.  EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY"; AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES ORTHEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR SHALL ANY COMMUNIGATION·OR DISCLOSURE·CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN INDEPENDENT LEGAL AND TAX ADVISERS FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

11.     No Admissions.  Neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed as an admission of liability or wrongdoing on the part of any of the Parties or the Releasees; nor shall this Agreement or the aforementioned consideration be admissible as evidence in any proceeding other than for the enforcement of this Agreement.

12.     Warranty of No Lien Claims.  Stephan C. Dean and Liza Dean and their undersigned attorney hereby represent and warrant that no other attorneys have asserted any claim, lien or right to receive some or all of the settlement payments described in paragraph 1 above as compensation for services rendered to DEAN in connection with any of the claims released by this Agreement. Stephan C. Dean and Liza Dean further represent and warrant that that they are not aware of and have not informed KAISER of any reason that KAISER needs to

pay a third party rather than the Deans and that payment to Stephan C. Dean and Liza Dean as described in paragraph 1 of this Agreement does not violate any liens or government orders.

13.    Free Consent.  The Parties have full authority to enter into this Agreement and to be bound by it. The Parties are voluntarily entering into this Agreement free of any duress or coercion. The Parties were advised to and have had the opportunity to consult legal counsel of their own choosing with respect to the execution and legal effect of this Agreement.

14.    Complete Agreement.  The Parties agree that this Agreement constitutes the full and entire understanding of the Parties with regard to the subject matter herein, and that the Parties cannot modify and/or alter this Agreement in any respect except in a written instrument signed the Parties. This Agreement contains all terms and conditions pertaining to the settlement between the Parties and no promise or representation not contained in this Agreement has been made to the Parties by the other.

15.    Attorneys Fees and Costs.  The Parties agree that they shall bear their own costs and attorneys' fees incurred in connection with this dispute.

16.    Severability.  In the event that any provision of this Agreement is held to be void, null or unenforceable, the remaining portions shall remain in full force and effect.   Any uncertainty or ambiguity in the Agreement shall not be construed for or against any Party based on the attribution of drafting to any Party.

17.    Counterparts.  This Agreement may be executed by the Parties in any number of counterparts, which are defined as duplicate originals, all of which taken together shall be construed as one document. A signature by facsimile on this Agreement shall be as legally binding as an original signature.  Stephan C. Dean and Liza Dean agree to provide their original notarized signatures of the Agreement to counsel for KAISER and DEAN.

18.    Agreement as a Defense/Enforcement.  The Parties agree that this Agreement is admissible for the purposes of proving up and or enforcing the terms of the Parties' Agreement, as set forth herein, pursuant to California Evidence Code Section 1123 and California Civil Code Section 664.6. The parties specifically understand and agree that this Agreement may be used by KAISER in support of a TRO, preliminary or permanent injunction, or any procedure permitted by law.

19.    Recitals.  The recitals are hereby incorporated into this Agreement by this reference.

20.    Governing Law.  This Agreement shall be construed and governed by the laws of the State of California.

21.    Mutual Drafting.  Stephan C. Dean and Liza Dean and KAISER, having mutually drafted this Agreement, agree that neither Stephan C. Dean and Liza Dean nor KAISER shall be deemed to have been the primary author of this Agreement or any portion thereof. Stephan C. Dean and Liza Dean and KAISER therefore agree that section 1654 of the California

Civil Code, and other legal principles or laws that call for the construction of ambiguous or uncertain terms against the drafting party shall not be applicable or invocable for any purpose whatsoever.

I HAVE READ THE FOREGOING CONFIDENTIALSETTLEMENT-AGREEMENT AND GENERAL RELEASE AND I ACCEPT AND AGREE TO THE PROVISIONS CONTAINED THEREIN AND HEREBY EXECUTE IT VOLUNTARILY AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

PLEASE READ CAREFULLY. THIS AGREEMENT CONTAINS A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

Dated: _____        _____

                                                      Stephen C. Dean

NOTARY SEAL




Dated: _____        By: _____

                                                      Liza Dean

NOTARY SEAL

Kaiser Foundation Health Plan, Inc.
Kaiser Foundation Hospitals


Dated: _____       By: _____

XXXXXXXXXXXXX


Approved as to form.


The Law Offices of Thomas M. Stefanelli


Dated: _____       By: _____

Thomas M. Stefanelli
Attorneys for Stephen C. Dean and Liza Dean doing
business as Sure File Systems


Marion's Inn LLP


Dated: _____       By: _____

Thomas M. Freeman
Attorneys for Kaiser Foundation Health Plan, Inc.
and Kaiser Foundation Hospitals

EXHIBIT A
AFFIDAVIT OF STEPHAN C. DEAN
AND
AFFIDAVIT OF LIZA DEAN

EXHIBIT A TO CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL
RELEASE OF ALL CLAIMS


AFFIDAVIT OF STEPHAN C. DEAN


I, Stephan C. Dean declare:

1.      I am a resident of Indio, Riverside County, California at_____.  I have personal knowledge of the matters set forth in this Affidavit.  I make this Affidavit in consideration for a confidential settlement payment from Kaiser Foundation Health Plan, Inc. ("HP") and Kaiser Foundation Hospitals (KFH") (KFH and HP are collectively referred to herein as "KAISER") and the Settlement Agreement of September 24, 2012.

2.      My wife Liza Dean and I, doing business as Sure File Systems, (hereinafter collectively referred to in the singular as "DEAN ") previously entered into agreements with KFH and HP under which DEAN provided medical records management services to HP, KFH, the Southern California Permanente Medical Group and affiliates (HP, KFH and the Southern California Medical Group and their affiliates are collectively hereinafter referred to as "Kaiser Permanente"), including sorting, scanning, deactivation and storage of medical records of patients. From time to time DEAN and representatives of Kaiser Permanente communicated by email regarding the services and the medical records.

3.      My wife Liza Dean and I have retained on computers, hard drives, servers, and other hardware equipment and in our email accounts electronic patient files and emails that include confidential and protected information about the patients, as defined by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health Insurance Portability and Accountability Act ("HIPAA"), or the Business Associate Agreement between HP and Stephan Dean that I signed on June 24, 2009 (hereafter referred to as "Kaiser PHI").  I certify and affirm that to the best of my knowledge and belief there has been no unauthorized disclosure of the Kaiser PHI in my care, custody and control to any person or entity.

4       In consideration for a confidential settlement payment from KAISER, as further described in the Settlement Agreement of September 24, 2012, I certify and affirm that I have delivered to counsel for KAISER all computers, hard drives, servers or other hardware equipment in my care, custody or control on which I believe any Kaiser PHI is saved or may have been received and saved in the past.  I further certify and affirm that to the best of my knowledge there is no Kaiser PHI remaining on any computer, hard drive, server or other hardware equipment in my care, custody or control.

5.       In consideration for a confidential settlement payment from KAISER, as further described in the Settlement Agreement of September 24, 2012, I certify and affirm that using my web browser I have accessed all my email accounts and I have deleted all Kaiser PHI from the "in box," all folders and the trash in all my email accounts.  I further certify and affirm that to the

EXHIBIT A TO CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS

best of my knowledge there is no Kaiser PHI remaining in any of my email accounts that is accessible to me using my web browser or in any other location except in the hardware that I have provided to counsel for KAISER.

6.      In consideration for a confidential settlement payment from KAISER, as further described in the Settlement Agreement of September 24, 2012, I hereby certify and affirm that if I find any additional Kaiser PHI in any form, whether in hardcopy or digital format, I will immediately notify counsel for KAISER and I either will destroy, delete or remove the Kaiser PHI that is accessible to me or return it to counsel for KAISER immediately without further consideration.

I declare under penalty of perjury under the laws of the State of California that the foregoing in true and correct.  Executed on September __, 2012 at Indio, California.


_____

Stephan C.  Dean


NOTARY SEAL

EXHIBIT A TO CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL
RELEASE OF ALL CLAIMS

AFFIDAVIT OF LIZA DEAN

I, Liza Dean declare:

1.       I am a resident of Indio, Riverside County, California at_____.  I
have personal knowledge of the matters set forth in this Affidavit.  I make this Affidavit in
consideration for a confidential settlement payment from Kaiser Foundation Health Plan, Inc.
("HP") and Kaiser Foundation Hospitals ("KFH") (KFH and HP are collectively referred to
herein as "KAISER") and the Settlement Agreement of September 24, 2012.

2.       My husband Stephan C. Dean and I, doing business as Sure File Systems,
(hereinafter collectively referred to in the singular as "DEAN ") previously entered into
agreements with KFH and HP under which DEAN provided medical records management
services to HP, KFH, the Southern California Permanente Medical Group and affiliates (HP,
KFH and the Southern California Medical Group and their affiliates are collectively hereinafter
referred to as "Kaiser Permanente"), including sorting, scanning, deactivation and storage of
medical records of patients. From time to time DEAN and representatives of Kaiser Permanente
communicated by email regarding the services and the medical records.

3.       My husband Stephan Dean and have retained on computers, hard drives, servers,
and other hardware equipment and in our email accounts electronic patient files and emails that
include confidential and protected information about the patients, as defined by the
Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., the federal Health Insurance
Portability and Accountability Act ("HIPAA"), or the Business Associate Agreement between
HP and Stephan Dean that he signed on June 24, 2009 (hereafter referred to as "Kaiser PHI").  I
certify and affirm that to the best of my knowledge and belief there has been no unauthorized
disclosure of the Kaiser PHI in my care, custody and control to any person or entity.

4       In consideration for a confidential settlement payment from KAISER, as further
described in the Settlement Agreement of September 24, 2012, I certify and affirm that I have
delivered to counsel for KAISER all computers, hard drives, servers or other hardware
equipment in my care, custody or control on which I believe any Kaiser PHI is saved or may
have been received and saved in the past.  I further certify and affirm that to the best of my
knowledge there is no Kaiser PHI remaining on any computer, hard drive, server or other
hardware equipment in my care, custody or control.

5.       In consideration for a confidential settlement payment from KAISER, as further
described in the Settlement Agreement of September 24, 2012, I certify and affirm that using my
web browser I have accessed all my email accounts and I have deleted all Kaiser PHI from the
"in box," all folders and the trash in all my email accounts.  I further certify and affirm that to the
best of my knowledge there is no Kaiser PHI remaining in any of my email accounts that is
accessible to me using my web browser or in any other location except in the hardware that I
have provided to counsel for KAISER.

EXHIBIT A TO CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS

6.    In consideration for a confidential settlement payment from KAISER, as further described in the Settlement Agreement of September 24, 2012, I hereby certify and affirm that if I find any additional Kaiser PHI in any form, whether in hardcopy or digital format, I will immediately notify counsel for KAISER and I either will destroy, delete or remove the Kaiser PHI that is accessible to me or return it to counsel for KAISER immediately without further consideration.

I declare under penalty of perjury under the laws of the State of California that the foregoing in true and correct.  Executed on September __, 2012 at Indio, California.

_____
Liza Dean

NOTARY SEAL

# EXHIBIT 4

*Liza Dean 05*

1   THOMAS M. FREEMAN, Cal. Bar No. 109309
    SARAH EDWARDS, Cal. Bar No. 268679
2   MARIONS INN LLP
    1611 Telegraph Ave., Suite 707
3   Oakland, CA 94612
    Telephone: (510) 451-6770 *510 541-8910*
4   Facsimile: (510) 451-1711
    Email: tmf@marionsinn.com
5   Email: se@marionsinn.com

6

7   Attorneys for Plaintiffs
    KAISER FOUNDATION HEALTH PLAN, INC. and
8   KAISER FOUNDATION HOSPITALS

9               SUPERIOR COURT OF CALIFORNIA

10              COUNTY OF RIVERSIDE - INDIO BRANCH

11

12  KAISER FOUNDATION HEALTH PLAN, INC.    )  No.
13  and KAISER FOUNDATION HOSPITALS        )     INC  1207224
                                           )
14              Plaintiffs,                )  COMPLAINT FOR INJUNCTION AND
                                           )  DAMAGES
15         v.                              )
                                           )  1. BREACH OF CONTRACT
16  STEPHAN CHRISTOPHER DEAN, LIZA DEAN,   )
    DBA SUREFILE FILING SYSTEMS, and       )  2. CLAIM AND DELIVERY
17  DOES 1-10, Inclusive                   )
                                           )  3. CONVERSION/TRESPASS TO
18              Defendants.                )  CHATTEL
                                           )
19                                         )  4. UNFAIR BUSINESS PRACTICES
                                              (Bus. & Prof. Code § 17200 et seq.)
20

21

22                          BY FAX

23

24

25

26

27

28

─────────────────────────────────────────
                    COMPLAINT

1    Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively
2    "KAISER" or "plaintiffs") complain against defendants Stephan Christopher Dean, Liza Dean, and
3    Surefile Filing Systems (collectively "DEAN" or "defendants") as follows:

                                        **GENERAL ALLEGATIONS**

5        1.      Plaintiff Kaiser Foundation Health Plan, Inc. ("KFHP") is a non-profit California
6    corporation and health maintenance organization ("HMO") regulated as a health care service plan
7    under the Knox-Keene Health Care Service Plan Act, Health & Safety Code § 1340 et seq. Its
8    principal place of business is in Oakland, Alameda County, California. KFHP contracts with
9    employer groups, individuals, and others to arrange for health care to its members through the Kaiser
10   Permanente network of health-care providers, including Kaiser Foundation Hospitals ("KFH") for
11   facilities and Southern California Permanente Medical Group ("SCPMG") for professional services
12   in Southern California.

13       2.      Plaintiff Kaiser Foundation Hospitals ("KFH") is a California non-profit corporation
14   that is licensed to own and operate hospitals and other medical centers in California. Its principal
15   place of business is in Oakland, Alameda County, California. Plaintiffs KFH and KFHP will be
16   referred to here collectively as "KAISER" or "Plaintiffs".

17       3.      KAISER is informed and believes, and on that basis alleges, that defendants Stephan
18   Christopher Dean and Liza Dean ("the Deans") are residents of Indio, Riverside County, and that the
19   Deans have in the past and continue to do business as Surefile Filing Systems ("Surefile"), a sole
20   proprietorship. The Deans and Surefire are referred to here collectively as "DEAN" or "defendants."

21       4.      KAISER is not presently aware of the true names and capacities of the defendants
22   named in this complaint by the fictitious names of Does 1-10. KAISER will seek leave to amend
23   this complaint upon ascertaining the true names and capacities of those defendants.

24       5.      Plaintiffs allege on information and belief that each defendant is jointly liable for each
25   of the wrongful acts and omissions alleged herein because each defendant acted as the principal,
26   agent, joint venturer, co-conspirator, or alter ego of each of the other defendants.

27       6.      Defendants and KFH entered into an agreement in 2008 under which Defendants
28   agreed, among other things, to remove, prepare, organize, index, deactivate, transport, store, and

                                                 1
                                            COMPLAINT

1  retrieve upon request medical records for the Kaiser Permanente Moreno Valley medical center.  In
2  order to perform services for KAISER, defendants agreed to comply with the terms of the Business
3  Associate Agreement ("BAA") used by KAISER with all vendors.

4         7.    Patient medical records, and communications about such records that include
5  confidential "protected health information" ("Protected Information"), as that term is defined under
6  the Standards for Privacy of Individually Identifiable Health Information, codified at 45 Code of
7  Federal Regulations ("CFR") parts 160 and 164, Subparts A and E, are afforded substantial
8  protections under the Health Insurance Portability and Accountability Act of 1996, P.L. 104-191
9  ("HIPAA") and state law, including the Confidentiality of Medical Records Act, Cal. Civ. Code § 56
10  et seq.  KAISER seeks to respect and maintain these protections for its members and patients through
11  its contracts and BAA with vendors, including defendants.

12         8.    Effective as of June 15, 2009, DEAN and KFHP entered into a written Business
13  Associate Agreement ("BAA"), in which defendants agreed to allow KFHP access to any of
14  plaintiffs' records they maintained for KAISER and to otherwise comply with the obligations of
15  HIPAA.  Under the terms of the BAA defendants specifically agreed that "[u]pon termination of the
16  business relationship between the parties and/or BAA for any reason, [defendants] shall, at [KFHP's ]
17  direction, return or destroy all Protected Information that [defendants] or its agents or subcontractors
18  still maintain in any form , and shall retain no copies of such Protected Information.  Upon [KFHP's]
19  request, [defendants] shall certify in writing that such return or destruction has occurred."

20         9.    Defendants and KFH entered into a written confidential Scanning Service Agreement
21  effective as of November 17, 2009 ("Moreno Valley Agreement").  Defendants agreed, among other
22  things, to remove, prepare, deactivate, transport, store, and retrieve upon request medical records for
23  the Kaiser Permanente Moreno Valley medical center.  Defendants further agreed to comply with the
24  existing BAA with KFHP.

25        10.    Defendants and KFH entered into a confidential Service Agreement - Medical Record
26  Storage and Deactivation effective as of March 12, 2010 ("West Los Angeles Agreement").
27  Defendants agreed, among other things, to remove, prepare, deactivate, transport, store, and retrieve
28  upon request medical charts for the Kaiser Permanente West Los Angeles medical center.

---

2

COMPLAINT

1  Defendants further agreed to comply with the existing BAA with KFHP.

2       11.    KAISER patients and members have medical needs to access their medical records,

3  and KAISER needs the medical records from time to time for purposes of litigation or

4  administrative proceedings. Patients have a legal right under HIPAA to access their protected

5  health information. (45 C.F.R. § 164.524.) KAISER also needs to assure that the medical records

6  with Protected Information and confidential communications with Protected Information, including

7  email exchanged between defendants and plaintiffs, are properly maintained, including by requiring

8  defendants by contract to safeguard the records from unauthorized disclosure pursuant to the terms

9  of a BAA and other agreements, verify their financial ability to protect the records and to maintain

10  insurance, and return or destroy all Protected Information at the request of KAISER.

11      12.    All medical records provided to defendants and confidential communications with

12  Protected Information exchanged between representatives of KAISER and defendants, including

13  email about the records, are the sole property of KAISER and held for the benefit of KAISER

14  members and patients under the terms of the Moreno Valley Agreement, the West Los Angeles

15  Agreement and the BAA signed by defendants. Defendants have no interest in those medical

16  records or the confidential communications with KAISER about the records, and under the terms of

17  the BAA signed by defendants, defendants have no right to refuse access to those records and any

18  confidential communications with Protected Information or to refuse requests from KAISER to

19  return or destroy those records and confidential communications with Protected Information,

20  including email, or to refuse to certify to KAISER that all Protected Information has been returned

21  or destroyed.

22      13.    In or around 2010, a dispute arose between KAISER and DEAN regarding DEAN'S

23  performance of the Moreno Valley Agreement and West Los Angeles Agreement. Beginning in the

24  spring of 2010, defendants interfered with plaintiffs' access to its patients' medical records and

25  failed to verify that they had insurance or the financial ability to protect the records. Defendants

26  refused to allow plaintiffs access to its medical records, interfered with or refused to comply with

27  patients' medical records requests, interfered with or refused to comply with subpoenas for medical

28  records, refused to verify insurance coverage, and refused to verify its financial ability to perform

1  its contractual obligations.  Defendants also refused to turn over the medical records to KAISER
2  upon its requests.

3      14.    As a result of defendants' wrongful conduct, on or about July 6, 2010, plaintiffs
4  notified defendants that: defendants were in breach of their agreements; that defendants should (i)
5  comply with patient requests for medical records, (ii) permit KAISER access to their warehouse to
6  inspect the records, (iii) verify their insurance and financial ability to perform, and (iv) arrange for
7  transfer of the records, premises; and (v) that plaintiffs elected to terminate the West Los Angeles
8  Agreement for convenience.

9      15.    As a result of the foregoing dispute, KFH and defendants negotiated a transfer
10  agreement ("Sure File Transfer Agreement") to effect the transfer of possession from defendants to
11  KFH of all of the medical records and confidential Protected Information of KAISER patients and
12  members.  The Sure File Transfer Agreement was signed by Stephan Dean on or about July 23,
13  2010, and terminated the on-going business relationship between defendants and KAISER.
14  Pursuant to the terms of the Sure File Transfer Agreement, DEAN specifically agreed to take
15  appropriate steps to preserve all confidential information maintained in those records as required by
16  the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 *et seq.*, the federal Health
17  Insurance Portability and Accountability Act ("HIPAA") and the parties' BAA.

18      16.    Following the execution of the Sure File Transfer Agreement, in March 2011 the
19  defendants and plaintiffs negotiated a confidential settlement agreement to resolve all the
20  outstanding issues between them.  Plaintiffs will make the confidential settlement agreement
21  available to the Court, if necessary, under seal.

22      17.    Pursuant to the agreements between plaintiffs and defendants described above,
23  defendants were obligated to maintain the confidential Protected Information of KAISER members
24  and patients in confidence; defendants were obligated not to transmit or communicate to any other
25  party the confidential Protected Information of KAISER members and patients; defendants were
26  obligated to return to plaintiffs or destroy all the confidential Protected Information of KAISER
27  members and patients; and defendants were obligated upon request to certify to plaintiffs the return
28  or destroy all confidential Protected Information in any form of KAISER members and patients.

4
COMPLAINT

18.     Since the execution of the confidential settlement agreement in March 2011, defendants have notified KAISER that they are in possession of email or other records of KAISER that they allege contain Protected Information. Defendants have also publicized through the press the fact theat they retain possession of Protected Information of KAISER patients and members. Defendants have done so for the sole purpose of trying to extract additional payments from KAISER. Despite requests from KFHP that defendants return or destroy the Protected Information and certify the return and destruction of the Protected Information, or provide access to the Protected Information so that plaintiffs may recover or destroy the Protected Information, defendants have refused to return or destroy the Protected Information, defendants have refused to certify to KAISER the return or destruction of the Protected Information. Defendants have refused to provide access to the Protected Information so that plaintiffs may recover or destroy the Protected Information. Defendants have also refused to follow instructions from KAISER to remove and destroy any Protected Information in an electronic format.

19.     In breach of their agreements with KAISER, defendants also have engaged in conduct that demonstrates their intention or willingness to risk a security breach and the unauthorized disclosure of the confidential Protected Information if plaintiffs refuse to accede to their unwarranted demands for payment of additional compensation to obtain the return of, destruction of or access to the confidential Protected Information improperly retained by defendants. For example, after representing to plaintiffs that email with confidential Protected Information was stored on the hard drives of computers in the garage of their home Stephan Dean and Liza Dean risked the theft or removal of the computers and the unauthorized disclosure of the confidential Protected Information by leaving the door to their garage open.

20.     The unauthorized disclosure by defendants of confidential Protected Information of KAISER patients and members remaining in the possession of defendants would result in financial harm to plaintiffs and irreparable harm to their reputation and also result in potential harm to the members and patients of KAISER.

5
COMPLAINT

**FIRST CAUSE OF ACTION**
**BREACH OF WRITTEN CONTRACT**
(Against Each Defendant)

21.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 20 above.

22.    The BAA specifies that defendants may only use or disclose confidential Protected Information "to perform functions, activities, or services for, or on behalf of, [Plaintiffs]." Because the contractual relationship between defendants and plaintiffs have been concluded and terminated defendants have no further authorized use of the Protected Information "to perform functions, activities, or services for, or on behalf of, [Plaintiffs]." Furthermore, the BAA specifies that by maintaining or using Protected Information for their own purposes, defendants violated the BAA

23.    Defendants have breached their contractual obligations under the BAA by, among other things, (i) retaining confidential Protected Information of KAISER patients or members on their computers, hard drives, servers, or in their email accounts, or otherwise; (ii) refusing to return, or destroy or allow plaintiffs access to their computers, hard drives, servers, or email accounts, to remove or destroy all the confidential Protected Information of KAISER patients or members, including but not limited to confidential unencrypted email communications between defendants and Plaintiffs that include confidential Protected Information of KAISER members and patients, or to confirm the removal of all Protected Information of KAISER patients or members, from defendants' computers, hard drives, servers or email accounts; (iii) refusing to certify to KFHP the return or destruction of all the confidential Protected Information of KAISER patients or members; (iv) to risk the unauthorized disclosure of confidential Protected Information of KAISER members and patients in defendants' possession, custody or control by their failure to maintain the confidential Protected Information in a secure place and manner; and (v) threatening to use and transmit confidential Protected Information in the medical records and/or confidential email communications between defendants and Plaintiffs that include confidential Protected Information of KAISER members, to contact KAISER members or patients.

24.    Defendants have also breached the Moreno Valley Agreement and the West Los Angeles Agreement by recording and retaining confidential Protected Information in violation of

1    the terms of the BAA which are incorporated into and made a part of the Moreno Valley Agreement

2    and the West Los Angeles Agreement.

3         25.    Plaintiffs have performed all obligations due to defendants, except such obligations

4    as are excused or waived.

5         26.    As a proximate result of defendants' conduct, plaintiffs have sustained damage or

6    loss in an amount to be proved at trial. Furthermore, unless enjoined defendants' continued

7    possession of the Protected Information threatens further harm to KAISER, as well potentially the

8    privacy interests of KAISER'S members and patients. Plaintiffs lack an adequate remedy at law

9    and will suffer irreparable harm unless defendants are enjoined from their continued use and

10   possession of the Protected Information of KAISER'S members and patients and to engage in the

11   aforesaid trespasses and interference with plaintiffs' property. An action for damages is inadequate

12   because it is extremely difficult to place a monetary value on this continuing invasion of plaintiffs'

13   property rights and the continued possession of the Protected Information by defendants. Even if

14   the harm could be measured in monetary terms, plaintiffs would be required to incur the

15   inconvenience and expense of multiple legal actions to collect damages resulting from defendants'

16   actions as they continue to occur in the future. Plaintiffs are accordingly entitled to both

17   preliminary and permanent injunctions enjoining defendants from further possession and use of

18   plaintiffs' property.

19        27.    Therefore plaintiffs seek preliminary and permanent injunctions enjoining defendants

20   and their employees and anyone acting on their behalf (i) from retaining any "Document," as

21   defined by Californian Evidence Code Section 250, specifically including but not limited to,

22   KAISER medical records and charts and email, with confidential Protected Information relating to

23   any member or patient of KAISER; (ii) from using any confidential Protected Information in any

24   "Document," as defined by Californian Evidence Code Section 250, provided to defendants by

25   KAISER; and (iii) from disclosing to any third-party any Protected Information from any

26   "Document," as defined by Californian Evidence Code Section 250, provided to defendants by

27   KAISER

28        28.    Plaintiffs also seek preliminary and permanent injunctions requiring defendants and

<div align="center">7</div>
<div align="center">COMPLAINT</div>

1   their employees and anyone acting on their behalf (i) to refrain from using any confidential
2   Protected Information from any "Document," as defined by Californian Evidence Code Section 250,
3   provided to defendants and confidential Protected Information in any email exchanged between
4   defendants and plaintiffs to contact KAISER members or patients; (ii)  to refrain from disclosing to
5   any third-party any Protected Information from any "Document," as defined by Californian
6   Evidence Code Section 250, provided to defendants and confidential email exchanged between
7   defendants and plaintiffs; (iii) to return, delete or destroy any "Document," as defined by
8   Californian Evidence Code Section 250, specifically including , but not limited to email with
9   confidential Protected Information of KAISER members and patients that defendants maintain or to
10  which they have access or care custody or control; (iv) to certify in writing under penalty of perjury
11  that defendants have returned, deleted or  or destroyed all of the records and email with confidential
12  Protected Information of KAISER members and patients that defendants maintain or to which they
13  have access or care, custody or control; (v) to provide access to all defendants' computers, servers,
14  hard drives and email accounts for inspection by a forensic consultant appointed by the Court at
15  plaintiffs' expense to confirm the removal, deletion or destruction of all of the records and
16  confidential email with Protected Information of KAISER members and patients; and (vi) to
17  promptly notify counsel for plaintiffs of the discovery of any additional Protected Information of
18  KAISER members and patients that defendants maintain or to which they have access or care,
19  custody or control; following completion of (i) - (v) above, and thereafter to comply with the
20  requirements of (i) - (v) above.

21

22                                    SECOND CAUSE OF ACTION
                                         CLAIM AND DELIVERY
23                                      (Against Each Defendant)

24          29.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 28
25  above.

26          30.     Despite receipt of a demand for return or destruction of the confidential Protected
27  Information concerning KAISER members and patients, defendants have refused, and continue to
28  refuse to return or destroy the Protected Information to plaintiffs and provide certification of the

                                                    8
                                                COMPLAINT

1  return or destruction of the Protected Information to plaintiffs.

2       31.    Defendants have no right to refuse to return or destroy the confidential Protected

3  Information concerning KAISER members and patients and provide certification of the return or

4  destruction of the Protected Information to plaintiffs, the owners of the records with the Protected

5  Information.

6       32.    Plaintiffs are entitled to a writ of possession to recover their personal property.

7

8                          **THIRD CAUSE OF ACTION**
9                    **CONVERSION/TRESPASS TO CHATTEL**
                         **(Against Each Defendant)**

10      33.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 32

11 above.

12      34.    Despite receipt of a demand for the return or destruction of the confidential Protected

13 Information concerning KAISER members and patients, defendants have refused, and continue to

14 refuse, to return or destroy the records and any email with confidential Protected Information and

15 certify to plaintiffs the return or destruction of the confidential Protected Information concerning

16 KAISER members and patients.

17      35.    By so doing, defendants have converted and trespassed on plaintiffs' rights in the

18 records and any email with confidential Protected Information derived from the records of and email

19 of plaintiffs without legal right or justification.

20      36.    Plaintiffs are entitled to an injunction as prayed below and to damages in an amount

21 to be proved at trial.

22

23                          **FOURTH CAUSE OF ACTION**
24               **VIOLATION OF UNFAIR COMPETITION LAW**
                         **(Against Each Defendant)**

25      37.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 36

26 above.

27      38.    California Business & Professions Code § 17200 et seq. (the "UCL") prohibit unfair

28 competition. In this context, "unfair competition shall mean and include  any unlawful, unfair or

                                      9
                                 COMPLAINT

1  fraudulent business act or practice .... " Cal. Bus. & Prof. Code § 17200.

2      39.     The "unlawful" prong of the UCL permits a plaintiff to obtain relief from anything

3  that can properly be called a business practice and that at the same time is forbidden by law,

4  regardless of whether the underlying law provides for a private right of action.

5      40.     Defendants, by their conduct and practices alleged herein, have committed and

6  continue to commit violations of the Health Insurance Portability Act of 1996, P.L. 104-191

7  ("HIPAA") and the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq.  Defendants

8  are therefore in violation of the "unlawful" prong of the UCL.

9      41.     The "unfair" prong of the UCL is intentionally broad, thus allowing courts

10  maximum discretion to prohibit new schemes to defraud. Outside of the competitor context, courts

11  have enunciated differing tests for unfairness under the UCL. One  test is that the harm to the victim

12  outweighs the justification of the alleged wrongdoer. A  different test is that the defendant's acts

13  offend a public policy that is tethered to some statutory provision. Still another test is that the

14  defendant's acts constitute sharp  practices.

15      42.     Defendants, by their conduct and practices alleged herein, have engaged  and

16  continue to engage in conduct and practices that cause considerable harm and  injury in fact to

17  plaintiffs, and defendants have no justification whatsoever other than reducing defendants' attempt

18  to extort additional compensation from defendants, which is neither a reasonable nor legitimate

19  justification. Defendants' conduct and practices offend a public policy of providing confidentiality

20  and protection to the confidential personal health information of health plan members and medical

21  patients, which policy is tethered to the Health Insurance Portability Act of 1996, P.L. 104-191

22  ("HIPAA"), the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq.. and the

23  California Constitution. Defendants' modus operandi constitutes a sharp practice because defendants

24  understand that KAISER desires to protect the confidentiality of Protected Information of KAISER

25  members and medical patients and avoid the unauthorized disclosure of such Protected Information.

26  Defendants are therefore in violation of the "unfair" prong of the UCL.

27      44.     Plaintiffs have suffered injury in fact and have incurred unnecessary expenses,

28  including legal fees, as a result of defendants' violations of the UCL.

---

<div align="center">10</div>
<div align="center">COMPLAINT</div>

1     45.    Plaintiffs reasonably believe that defendants' wrongful practices alleged herein are

2 ongoing and continue to be a threat to plaintiffs.

3     46.    Plaintiffs are therefore entitled to restitution and disgorgement in amounts to

4 be proved at trial, as well as injunctive relief to obtain the return, or deletion or destruction of the

5 confidential protected information of KAISER members or medical patients and other relief as

6 pleaded in the Prayer for Relief.

7                 **PRAYER FOR RELIEF**

8    WHEREFORE plaintiffs pray for judgment against defendants as follows:

9       a.    For damages in an amount according to proof;

10      b.    For prejudgment interest as allowed by law;

11      c.    For specific performance of defendants' obligations under the

12 Business Associate Agreement effective June 15, 2009 to return or destroy all Protected

13 Information, retain no copies of any Protected Information, and upon plaintiffs' request to certify in

14 writing that such return or destruction has occurred;

15      d.    For preliminary and permanent injunctions enjoining defendants and

16 their employees and anyone acting on their behalf (i) from retaining any "Document," as defined by

17 Californian Evidence Code Section 250, specifically including but not limited to, KAISER medical

18 records and charts and email, with confidential Protected Information relating to any member or

19 patient of KAISER; (ii) from using any confidential Protected Information in any "Document," as

20 defined by Californian Evidence Code Section 250, provided to defendants by KAISER; and (iii)

21 from disclosing to any third-party any Protected Information from any "Document," as defined by

22 Californian Evidence Code Section 250, provided to defendants by KAISER

23      e.    For preliminary and permanent injunctions requiring defendants and

24 their employees and anyone acting on their behalf (i) to refrain from using any confidential

25 Protected Information from any "Document," as defined by Californian Evidence Code Section 250,

26 provided to defendants and confidential Protected Information in any email exchanged between

27 defendants and plaintiffs to contact KAISER members or patients; (ii) to refrain from disclosing to

28 any third-party any Protected Information from any "Document," as defined by Californian

1  Evidence Code Section 250, provided to defendants and confidential email exchanged between

2  defendants and plaintiffs; (iii) to return, delete or destroy any "Document," as defined by

3  Californian Evidence Code Section 250, specifically including , but not limited to email with

4  confidential Protected Information of KAISER members and patients that defendants maintain or to

5  which they have access or care custody or control; (iv) to certify in writing under penalty of perjury

6  that defendants have returned, deleted or  or destroyed all of the records and email with confidential

7  Protected Information of KAISER members and patients that defendants maintain or to which they

8  have access or care, custody or control; (v) to provide access to all defendants' computers, servers,

9  hard drives and email accounts for inspection by a forensic consultant appointed by the Court at

10  plaintiffs' expense to confirm the removal, deletion or destruction of all of the records and

11  confidential email with Protected Information of KAISER members and patients; and (vi) to

12  promptly notify counsel for plaintiffs of the discovery of any additional Protected Information of

13  KAISER members and patients that defendants maintain or to which they have access or care,

14  custody or control; following completion of (i) - (v) above, and thereafter to comply with the

15  requirements of (i) - (v) above.

16           f.      For a writ of possession transferring all the Documents with

17  confidential Protected Information of any KAISER member or patient in the possession, custody or

18  control of defendants to plaintiffs;

19              g.      For KAISER's cost of suit; and

20              h.      For such other and further relief as the Court should find to be just

21  and proper.

22      Respectfully submitted,

23  Dated: October 11, 2012

                     MARION'S INN LLP
                     THOMAS M. FREEMAN
                     SARAH EDWARDS

24

25

26                       By

27                                 Sarah Edwards

28                       Attorneys for Plaintiffs Kaiser Foundation Hospitals
                     and Kaiser Foundation Health Plan, Inc.

# EXHIBIT 5

1    THOMAS M. FREEMAN, Cal. Bar No. 109309
     SARAH EDWARDS, Cal. Bar No. 268679
2    MARION'S INN LLP
     1611 Telegraph Avenue, Suite 707
3    Oakland, California 94612-2145
     Telephone:  (510) 451-6770
4    Facsimile:  (510) 451-1711
     Email: tmf@marionsinn.com
5    Email: se@marionsinn.com

6    Attorneys for Plaintiff Kaiser Foundation
     Health Plan, Inc. and Kaiser Foundation Hospitals
7
                    SUPERIOR COURT OF CALIFORNIA
8
                 COUNTY OF RIVERSIDE - INDIO BRANCH
9

10   KAISER FOUNDATION HEALTH PLAN, INC. )    No. INC 1207224
     and KAISER FOUNDATION HOSPITALS,     )
11                                         )    Assigned to Hon. Harold W. Hopp
                  Plaintiffs,              )
12                                         )    DECLARATION OF RICHARD L.
            v.                             )    ALBEE
13                                         )
     STEPHAN CHRISTOPHER DEAN, LIZA        )    Date:   January 10, 2013
14   DEAN, DBA SUREFILE FILING SYSTEMS,    )    Time:  8:30 a.m.
     and DOES 1-10, inclusive,             )    Dept.:  2G
15                                         )
                  Defendants.              )    Complaint filed: October 12, 2012
16   _____)    Trial date:  Not set

17

18

19

20

21

22

23

24

25

26

27

28

_____
DECLARATION OF RICHARD ALBEE                              Case No.  INC 1207224

## DECLARATION OF RICHARD L. ALBEE

I, RICHARD L. ALBEE, a Principal of DataChasers® Inc., declare:

1. I am the Founder and President of DataChasers® Incorporated, a forensic computer evidence discovery company, which provides computer hard drive imaging; restores hidden, deleted and/or lost files, images and data; establishes the dates that files are created, modified and deleted; tracks Internet history; recovers e-mail; investigates cases pertinent to intellectual property, trade secret, copyright, family law, fraud, employment disputes, un/authorized computer use, analysis of the computer use, and other computer related cases; supplies special master services, expert witness testimony and litigation support; maintains a full-service state-of-the-art computer laboratory; and provides related services.

2. I am an honorably retired police lieutenant with twenty-nine years of service, including four years as the operations lieutenant of the detective division, where I supervised all major crime investigations including the computer forensics and fraud investigations.

3. I have a Masters degree in Public Administration from the University of Southern California (USC), am a graduate of the Command College, Peace Officers Standards of Training (P.O.S.T.), I have a Bachelor of Science degree in Police Science and Administration (CSULA), an Associate of Arts degree in Police Science, I hold approximately eight (8) professional certifications specific to computer forensics, and I have a professional affiliation/membership in twelve (12) professional organizations.

4. I am a Certified Forensic Computer Examiner (CFCE) through the International Association of Computer Investigative Specialists (IACIS), which is the premier training organization for law enforcement worldwide. I have authored/published dozens of articles related to computers and computer forensics, and have spoken at more than forty prestigious training conferences both here and abroad, and I have been consulted by best-selling authors for technical advice.

1

5.  I have qualified and testified as an expert witness approximately forty-two (42) times in the area of computer forensics, and have served in the capacity of special master on many occasions as well as being a special master in Federal Court.

6.  DataChasers, via my direct work product and/or under my direction/control/ supervision has been consulted in literally hundreds of cases involving many hundreds, if not thousands, of hard drives. DataChasers' clients include major national corporations, many of which are in the technology industry. The items requested for examination and/or information may include, but not be limited to files (e.g., Word documents, Excel spreadsheets, and similar type files), graphics (e.g., pictures), e-mails, etc., the date codes associated with those files (e.g., when the files were created, modified, and last accessed), and the path of the files (where the files are located on the hard drive).

7.  An investigator, including a forensic computer examiner in California, performing any investigation for the purpose of obtaining information with reference to those tasks defined in the CA Business and Professions Code section 7521 (which include the investigation of crimes, …damage or injury to persons or property, securing evidence to be used before any court, board, officer, or investigating committee, etc.) is required to be a California licensed private investigator.  I am a California licensed private investigator (license number PI-20551) as defined in CA B&P Code section 7520, and the qualified manager and owner of DataChasers, Inc.

8.  All of DataChasers technicians are trained and well-certified in the forensic examination of computers for the purpose of recovering data pertinent to the litigation process, including deleted data associated with but not be limited to files (e.g., Word documents, Excel spreadsheets, and similar type files), graphics (e.g., pictures), e-mails, etc., and rendering expert opinion on how the computer was used.

9.  Attached hereto is a true and accurate copy of my complete resume.

2

10. DataChasers® Inc. has been retained by Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively "Kaiser") through their attorneys at Marion's Inn LLP in this action.

11. I have personal knowledge of the matters set forth in this Declaration and if called upon as a witness I would and could competently testify to them.

12. I understand that the computer(s) owned by Defendants are at issue, as well as the data that may be stored on their computer(s) or on ancillary items/devices and email with personal health information or other confidential personal information that may have been sent to Defendants or received by Defendants from individuals at Kaiser.

13. I have been told and believe that Defendants have objected to production of their computer(s) and ancillary items/devices and email accounts on the grounds of invasion of their privacy and destruction or harm to their personal files

14. This is not a reasonable objection by virtue of DataChasers' reputation and experience, process, validation of data, authenticity of data, and authority (please see below).

15. **REPUTATION AND EXPERIENCE:** DataChasers is in its second decade of professional operation. Through those years DataChasers has imaged many hundreds of hard drives, possibly thousands, without the corruption of data on a single device.

16. **PROCESS**: DataChasers prescribes to industry standard practices in the use of both software and hardware. Specifically, hardware physical write-blockers, which prevent the corruption of data on the source hard drive; and software imaging programs designed for the protection of forensic data.

17. **VALIDATION**: All imaged data is validated as an accurate bit-stream image through MD5 *hash* algorithm validation. A hash value is a mathematical algorithm that creates a type of data signature for the comparison of multiple pieces of media (hard drives, files, etc.). To a certainty of $2^{128}$ (several times greater than the certainty of DNA), two pieces of media with the same hash value must be totally and completely identical.

3

18. **AUTHENTICITY OF DATA**: The industry standard for the examination of ESI (Electronically Stored Information) is to examine a forensically sound image of the original media. It is impossible to validate the authenticity of the ESI once that original data has been altered. Further, without specific knowledge and control, it is not possible for a forensic computer examiner to later testify as to the authenticity of the data that was examined.

19. For an examination of the data on this/these computer/s to be reasonably successful, it requires that the items to be examined be (1) the original, unaltered media, or (2) an exact forensic copy, known as a bit-stream image, of the data, regardless of the type of media upon which the data resides.

20. The type of media and the items to be imaged and produced as described above include, but are not limited to any and all computers, media, machines, devices and equipment, which shall include all hard drives, hardware, directories and files, including Recovery Bin or Recycle Bin information, all data files, all servers, all logs, all audit trails, all access records, all access control lists, all backup software, all encryption software, all passwords and all encoding and decoding information.

21. The items to be imaged and produced as described above shall also include any and all media storage items, whether installed within the computer or otherwise, and thus described as "removable" media, which includes but are not limited to any and all media storage devices; e.g., external hard drives, floppy discs, zip discs, CD discs, DVD discs, flash memory devices (commonly called "thumb drives"), etc.

22. Such computers, media, machines, devices and equipment are to be subjected to a full forensic computer examination, full forensic image of hard drives and memory, clone-copying, full investigation of trace artifacts, latent evidence, comparative analysis of the data, date codes, links and related corroborative evidence within the computer/s, media, machines, devices and equipment.

23. The examination of all items will be conducted at the facilities of DataChasers® Inc. located in Riverside, California. Additionally, DataChasers® Inc. will also be allowed to make

a full and complete backup for examination purposes and archiving of all computers, media, machines, devices, and equipment.

24. It is always preferable do all processing and examinations in our lab rather than at a remote facility. The reasons for this are: (1) The efficiency of the examination process may be compromised by attempting a full forensic examination at a remote facility, and (2) the cost is always significantly increased by operating at a remote facility. These issues are addressed separately below.

25. The efficiency of the examination process attempted at a remote facility is at risk at all stages of the process for several reasons. (1) The transportation of equipment, much of it delicate computer equipment, lends an inherent risk to damage, and therefore rendering a needed piece of equipment useless at the scene of the examination. (2) Not all possible eventualities can be anticipated for working in the field, away from a fully equipped lab; therefore, if unanticipated equipment or software demands are encountered it is always more difficult, if not impossible, to remedy the situation in an unfamiliar environment. (3) Security is always an issue; the security of the evidence, the security of the equipment, and often the security of the examiners if not actually in a secure environment. And (4) we have received numerous pieces of evidence by couriers such as FedEx or private courier, and in the several years of operation have never encountered a problem.

26. The cost factor is always significantly increased by operating away from our familiar facilities. (1) Travel expenses (including travel time, mileage, often air fare, lodging, per diem, and transportation rentals, etc.) must be added to the cost of the engagement. (2) The entire process takes more time, and thus is more costly to the client. There is also setup time, and probably break down time each day, which is not encountered when working in our own lab, as equipment is rarely left unsecured. The overall time consideration is a big factor; it just takes longer to do the same job when we're not in our own facilities.

27. For the purpose of production of these items, all computers, media, machines, devices, and equipment shall be preserved for production in such a manner as to retain all

5

computer evidence, and protect any/all media from deletion, alteration, or corruption until after said examination.

28. One of the problems I frequently face is distinguishing between relevant data stored on computer systems that are the subject of search, and irrelevant data that may or may not be privileged. I can avoid the production of irrelevant or confidential data by several methods: (1) avoiding the review of files obviously not relevant; (2) confining search criteria to the scope of the defined search; (3) performing keyword searches, designed to capture only relevant data.

29. Further, DataChasers® is familiar with working, and has previously worked, under strict parameters for discovery, both with and without formal disclosure or protective orders. In the course of these examinations I have not, nor would I ever, intentionally violate the terms of an Order or agreement.

30. In this case if we are permitted to conduct an inspection of Defendants' computer(s) and ancillary devices and email accounts our search would focus on (1) any email, including attachments, sent to or received from anyone at Kaiser with an email hash tag containing either kp.org, kfh.org, kpic.org, tpmg. org or scpmg.org; and (2) any files that contain any email, including attachments, sent to or received from anyone at Kaiser with an email hash tag containing either kp.org, kfh.org, kpic.org, tpmg. org or scpmg.org; and (3) any files that contain the following keywords: Kaiser, Permanente, MRN, or SSN.

31. If permitted by an Order of this Court we would be prepared to delete any email or file that we identified. To assure that the email was properly and completely removed from the Defendants' email account we would take the steps necessary to confirm deletion.

32. These steps would largely be determined upon the manner in which the email had been stored, the email protocol used (e.g., Outlook) and may include but not limited to: (1) examination of known email accounts; (2) the location/s on the computer in which email is commonly held; and (3) possibly rebuilding the defendant's hard drive, loading only his programs and personal data, and thus omitting any possibility of him retaining confidential data.

33. To assure that the file was properly and completely removed from the Defendants'
computer(s) and/or ancillary devices(s) we may take additional steps, depending on the efforts
described in the above paragraph, and what efforts are taken. These steps may include, but not
be limited to: (1) deleting and reinstalling email programs; (2) wiping slack and unallocated
space on the hard drive; and (3) keyword search for known and suspected email protocols.

34. I have spoken to Tom Freeman, counsel for Kaiser in this case. He has assured me
of his willingness to work in good faith to prevent the production to him of any private
information contained on Defendants' computer(s), ancillary devices or email accounts.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct and that this Declaration was executed on this ___4th___ day of
___January___, 20 15 at Riverside, California.

Richard L. Albee

**NOTARY:**
State of California, County of _____ ,

On (date)_____, before me, _____ ,

personally appeared _____, who
proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the
within instrument and acknowledged to me that he/she executed the same in his/her authorized
capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which
the person acted, executed the instrument.

                        I certify under PENALTY OF PERJURY under the laws
                        of the State of California that the foregoing paragraph is
                        true and correct.

                        WITNESS my hand and official seal.

Place Notary Seal Above.

                Signature: _____
                         Signature of Notary Public

# Abbreviated Curriculum Vitae

# Richard Albee

**EDUCATION:**

- Masters degree, Public Administration, University of Southern California; September 1980
- Bachelor of Science degree, Police Science and Administration, California State University Los Angeles, December 1974
- Command College, Peace Officers Standards of Training (P.O.S.T.) Class VIII; June 1989.

**BACKGROUND AND EXPERIENCE:**

- Former police lieutenant, including four years as the Operations Lieutenant of the detective division supervising all major crime investigations and computer-crime related investigations;
- Expert witness, experienced in the litigation process and Special Master to Federal Court;
- Personally examined or supervised the examination of several hundred hard drives and investigations, including every level and scope of examination, for all types of cases (Please see website: www.DataChasers.com);
- Consulted to numerous public and private organizations, including Fortune 500 companies, on computer-case management and strategy;
- Recipient of the police department's highest accolade, The Medal of Valor, as well as the State of California Attorney General's Certificate for Valor.
- Teaching experience includes several semesters at Riverside City College (police science and supervision), Riverside Sheriff Academy instructor; firearms instructor and range master; IACIS coach/trainer, and attorney mandatory continuing education classes/seminars sanctioned by California State Bar.

**CERTIFICATIONS/QUALIFICATIONS:**

- International Association of Computer Investigative Specialists (IACIS) Certified Forensic Computer Examiner (CFCE) (recertification is tri-yearly and is current)
- EnCE EnCase Certified Examiner (2007, recertification is bi-yearly and is current)
- IACIS Forensic Computer Examiner Program Coach/Trainer 2004/2005
- IACIS Certified Electronic Evidence Collection Specialist; April 1999
- IACIS Advanced Seizure and Processing of DOS & Windows OS Certificate; May 1999
- IACIS Advanced Forensic Network Essentials Certificate; May 2001
- IACIS Advanced Unix Training Certificate; May 2003
- HTCN Advanced Certification, Computer Crime Investigator (recertification is yearly and is current)
- HTCN Advanced Certification, Computer Forensic Technician (recertification is yearly and is current)
- ACFS Certified Fraud Specialist; January 2004 and is current
- Discover-E electronic discovery software training certificate, July 2007.
- California Licensed Private Investigator, License # 20551, 1998 to current.
- Certified Editor, University of Wisconsin, English C350-A52: Manuscript Editing, 1996
- Full Time Life, Teaching Credential, State of California No. 224222

**Richard L. Albee CV**                                                                                          **Page 2 of 2**

**PRESENTATIONS AND PUBLISHED ARTICLES:**
- Fifty-six (56) symposium and conference presentations on a variety of subjects including Prosecution and Defense strategies, and a variety of subjects regarding computer forensics.
- Twenty-three (23) published articles including Prosecution and Defense strategies, and a variety of subjects regarding computer forensics.
- List available upon request.

**PROFESSIONAL CERTIFICATES AND AWARDS:**
- Riverside Police Department's Medal of Valor First Recipient, November 1974
- Attorney General, State of CA, Certificate for Valor, 1976
- Peace Officers Standards of Training (P.O.S.T.) Management Certificate
- Listed in Strathmore's Who's Who of America Small Business 2005-2006
- Full Time Life, California Teaching Credential #224222
- KNX News radio Police Officer of the Year, 1974
- California Highway Patrol's 10851 Award, First Recipient, 1978
- Carol Gift Page, Literary Achievement Award, September 1996

**EXPERT WITNESS TESTIMONY:**
- Approximate forty-two (43) trial and deposition testimonies at all levels.
- Complete list with citations and references available upon request.

**PROFESSIONAL AFFILIATIONS/MEMBERSHIPS:**
- ACFS (Association of Certified Fraud Specialists
- ASIS (American Society for Industrial Security)
- BAR ASSOCIATION, Riverside and Los Angeles Counties, California
- CALI (California Association of Licensed Investigators)
- CAOC (Consumer Attorneys of California)
- FEWA (Forensic Expert Witness Association; and Board Member 2001-2009)
- FCA (Forensic Consultants Association), San Diego
- HTCC (High Technology Crime Consortium, 2000-2007)
- HTCIA (High Technology Crime Investigation Association, 2000-2006)
- HTCN (High Technology Crime Network)
- IACIS (International Association of Computer Investigative Specialists)
- NACDL (National Association of Criminal Defense Lawyers)
- PICA (Professional Investigators of California)
- PIHRA (Professionals In Human Resources Association)
- SCFIA (Southern California Fraud Investigators Association), et al.

(Rev. 5/25/2012)

# EXHIBIT 6

1   THOMAS M. FREEMAN, Cal. Bar No. 109309
    SARAH EDWARDS, Cal. Bar No. 268679
2   MARION'S INN LLP
    1611 Telegraph Avenue, Suite 707
3   Oakland, California 94612-2145
    Telephone: (510) 451-6770
4   Facsimile: (510) 451-1711

5   Attorneys for Plaintiff Kaiser Foundation
    Health Plan, Inc. and Kaiser Foundation Hospitals

6

```
F I L E D
SUPERIOR COURT OF CALIFORNIA
    COUNTY OF RIVERSIDE

      JAN 1 0 2013

      A. GARCIA
```

7             SUPERIOR COURT OF CALIFORNIA

8         COUNTY OF RIVERSIDE - INDIO BRANCH

9

10   KAISER FOUNDATION HEALTH PLAN, INC. )  No. INC 1207224
    and KAISER FOUNDATION HOSPITALS,   )

11            Plaintiffs,            )  Assigned to Hon. Harold W. Hopp

12       v.                )  [PROPOSED] PRELIMINARY
                          )  INJUNCTION

13   STEPHAN CHRISTOPHER DEAN, LIZA   )
    DEAN, DBA SUREFILE FILING SYSTEMS,   )  Date:  November 13, 2012

14   and DOES 1-10, inclusive,         )  Time:  8:30 a.m.
                          )  Dept.: 2G

15            Defendants.         )  Complaint filed: October 12, 2012
                          )  Trial date: Not set

16   _____)

17

18

19        The motion of Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation

20   Hospitals (collectively "plaintiffs" or "Kaiser") for a preliminary injunction against defendants

21   Stephan Christopher Dean and Liza Dean DBA Sure File Systems, (collectively "defendants" or

22   "Dean") was set regularly for hearing on October 17, 2012 in Department 2G of this Court.

23        Having reviewed Kaiser's application, the points and authorities, and the evidence

24   submitted, and having heard the parties' oral arguments, and good cause appearing therefore:

25        IT IS HEREBY ORDERED, that Kaiser's motion for a preliminary injunction is

26   GRANTED.

27        IT IS HEREBY ORDERED that Stephan Christopher Dean and Liza Dean DBA Surefile

28   Filing Systems (collectively "Dean" or "defendants"), their employees and agents, and any other

                            1

1 | persons acting with Dean or on Dean's behalf, are RESTRAINED and ENJOINED:

2 |     (i) from retaining any "Document," as defined by Californian Evidence Code Section

3 | 250, specifically including but not limited to, KAISER medical records and charts and email,

4 | with confidential protected individual health information ("Protected Information") (as that term

5 | is defined under the Standards for Privacy of Individually Identifiable Health Information,

6 | codified at 45 C.F.R. parts 160 and subparts A and E of part 164, and as defined by the

7 | Confidentiality of Medical Information Act, Cal. Civ. Code § 56 et seq. at §56.05(g)) relating to

8 | any member or patient of Kaiser;

9 |     (ii) from using any confidential Protected Information in any "Document," as defined by

10 | Californian Evidence Code Section 250, provided to defendants by Kaiser, or exchanged

11 | between defendants and Kaiser; and

12 |     (iii) from disclosing to any third-party any Protected Information from any "Document,"

13 | as defined by Californian Evidence Code Section 250, provided to defendants by Kaiser, or

14 | exchanged between defendants and Kaiser.

15 |     IT IS FURTHER ORDERED, that defendants:

16 |     (iv) refrain from using any confidential Protected Information from any "Document," as

17 | defined by Californian Evidence Code Section 250, provided to defendants and confidential

18 | Protected Information in any email exchanged between defendants and plaintiffs, to contact

19 | Kaiser members or patients;

20 |     (v) refrain from disclosing to any third-party any Protected Information from any

21 | "Document," as defined by Californian Evidence Code Section 250, provided to defendants and

22 | email exchanged between defendants and plaintiffs;

23 |     (vi) return, delete or destroy any "Document," as defined by Californian Evidence Code

24 | Section 250, specifically including , but not limited to email with confidential Protected

25 | Information of Kaiser members and patients that defendants maintain or to which they have

26 | access or care custody or control;

27 |     (vii) certify in writing under penalty of perjury that defendants have returned, deleted or

28 | or destroyed all of the records and email with confidential Protected Information of Kaiser

2

1    members and patients that defendants maintain or to which they have access or care, custody or

2    control; and

3          (viii) provide access to all defendants' computers, servers, hard drives and email accounts

4    for inspection by a forensic consultant appointed by the Court at plaintiffs' expense to confirm

5    the removal, deletion or destruction of all of the records and confidential email with Protected

6    Information of Kaiser members and patients.

7          IT IS SO ORDERED.    Bond of $7500.

8

9    Dated: 1/10/13

10                                         Judge of the Superior Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         3

[PROPOSED] PRELIMINARY INJUNCTION                    Case No. INC 1207224

EXHIBIT 7

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2             FOR THE COUNTY OF RIVERSIDE

3                  - - -

4  KAISER FOUNDATION HEALTH PLAN,  )
   INC., and KAISER FOUNDATION    )
5  HOSPITALS,                 )
                           )
6             Plaintiffs,     )
                           ) CASE NO.
7       vs.                ) INC 1207224
                           )
8  STEPHAN CHRISTOPHER DEAN, LIZA  )
   DEAN, dba SUREFILE FILING SYSTEMS,)
9  And DOES 1-10, inclusive,     )
                           )
10           Defendants.     )
       _____)

11

12

13

14

15

16     Deposition of STEPHAN CHRISTOPHER DEAN, taken

17  on behalf of Plaintiff, at Comfort Suites, 39585

18  Washington Street, The Oasis Meeting Room, Palm

19  Desert, California, commencing at 9:25 a.m.,

20  Wednesday, March 6, 2013, before Karen I.

21  Pearson-Bell, RPR, CSR No. 3557.

22

23

24

25

1      Q.   Okay.

2      A.   We tried to separate them, but --

3      Q.   Okay.  So would it be accurate to say that,

4  to the best of your understanding, if you had an                11:45

5  e-mail that you received from Kaiser that requested

6  or included protected information, that e-mail

7  would be accessible in a -- either in your in-box

8  or in a folder entitled Kaiser Orders?

9      A.   I don't know.                                           11:45

10     Q.   What other matter do you think you may have

11  saved that e-mail in?

12     A.   I don't know.

13     Q.   Okay.  You can't think of any other --

14     A.   No.  I am not qualified to answer that               11:46

15  question.

16     Q.   Why not?

17     A.   Because I don't know half of what you are

18  talking about right now.  I am not a computer

19  expert.  I am doing my best to describe to you what         11:46

20  I know, but that's about all I can do.

21     Q.   Well, if you wanted to find an e-mail from

22  Kaiser that had requested certain information, how

23  would you go about finding it?

24     A.   Well, at this juncture I don't have                   11:46

25  anything because we deleted everything.  So are you

90

1    agreements and what agreement is controlling or not

2    controlling.  So let me just ask you more directly.

3         Under the terms of the BAA, Kaiser has the

4    right, under its terms, upon termination of the          12:13

5    business relationship, to request the return or

6    deletion of protected information.  You would agree

7    with that; correct?

8         A.   I agree with that if it's feasible.

9         Q.   Okay.  And assuming that that agreement was    12:13

10   effective, is there any reason why it is, in your

11   view, not feasible to return or destroy protected

12   information that you received from Kaiser?

13        A.   Well, I have already done everything that

14   I can.  I have deleted all protected information       12:13

15   from Kaiser.  So what more do you want me to --

16   What else would be required?

17        Q.   I am not asking you to do anything more.

18   I'm just asking you to acknowledge that you agree

19   that under that agreement --  Let me rephrase that.     12:14

20        I am asking you whether, under the terms

21   of the BAA, there is any reason why it is not

22   feasible for you to return or destroy protected

23   information that you received from Kaiser.

24        A.   I think that's for a court to decide.         12:14

25        Q.   Okay.  I am not asking you a legal question

107

1    order signed by the Court on January 10th, 2013.

2        You have seen this before; right?

3    A.    Yes.

4    Q.    Since January 10th, 2013, have you                    02:21

5    disclosed to anyone protected information that you

6    received from Kaiser?

7    A.    Can you repeat that again, please?

8        MR. FREEMAN:  Please read it back.

9        (The pending question was read.)                        02:21

10       THE WITNESS:  No.

11   BY MR. FREEMAN:

12   Q.    Since January 10th, 2013, have you used, in

13   any manner whatsoever, protected information that

14   was provided to you by Kaiser?                              02:21

15   A.    No.

16   Q.    Do you still possess in any form, whether

17   hard copy, electronic or digital, any protected

18   information that you received from Kaiser?

19   A.    I don't know.                                         02:21

20   Q.    Why are you uncertain about that?

21   A.    I have deleted all information that I had.

22   Any protected health information that we retained

23   was completely deleted on December 31st, 2012.

24   Q.    Why do you believe you may still possess in           02:22

25   any form, whether hard copy, electronic or digital

141

EXHIBIT 8

1  THOMAS M. FREEMAN, Cal. Bar No. 109309
   SARAH EDWARDS, Cal. Bar No. 268679
2  MARION'S INN LLP
   1611 Telegraph Avenue, Suite 707
3  Oakland, California 94612-2145
   Telephone:  (510) 451-6770
4  Facsimile:  (510) 451-1711
   Email: tmf@marionsinn.com
5  Email: se@marionsinn.com

6  Attorneys for Plaintiffs Kaiser Foundation
   Health Plan, Inc. and Kaiser Foundation Hospitals
7

8

9              SUPERIOR COURT OF CALIFORNIA

10          COUNTY OF RIVERSIDE - PALM SPRINGS

11

12  KAISER FOUNDATION HEALTH PLAN, INC. )   No. INC 1207224
    and KAISER FOUNDATION HOSPITALS,       )
13                                          )   Assigned to Hon. David M. Chapman
                   Plaintiffs,              )
14                                          )   Dept. PS-2
             v.                             )
15                                          )   ORDER GRANTING DEFENDANTS'
    STEPHAN CHRISTOPHER DEAN, LIZA          )   MOTION FOR SUMMARY JUDGMENT
16  DEAN, DBA SUREFILE FILING SYSTEMS,      )
    and DOES 1-10, inclusive,               )   Complaint filed: October 12, 2012
17                                          )   Trial Date: TBA
                   Defendants.              )
18  _____)

19

20

21         Defendants' Stephan Dean and Liza Dean dba SureFile filing Systems motion for

22  summary judgment came on for hearing on July 31, 2013.  Defendants appeared *in propia*

23  *persona* and Thomas M. Freeman, Marion's Inn LLP, appeared on behalf of plaintiffs' and

24  responding parties Kaiser foundation Health Plan, Inc. and Kaiser Foundation Hospitals.

25         After review and consideration of the papers submitted by the parties and argument of the

26  parties the Court finds and rules as follows:

27         This complaint for (1) breach 01 contract, (2) claim and delivery, (3) conversion and (4)

28  unfair business practices is based upon allegations that plaintiffs, Kaiser Foundation Health Plan

                                      1

1  (KFHP) and Kaiser Foundation Hospital (Kaiser), and defendants entered into several associated

2  agreements (Business Associate Agreement ("BAA") Moreno Valley Agreement (MVA), West

3  Los Angeles Agreement (WLAA)) in which defendants agreed to scan, organize and store

4  medical records and protected patient information for Kaiser's patients and to allow KFHP

5  access to any records maintained for Kaiser; that in 2010 a dispute arose between Kaiser and

6  defendants regarding defendants' performance of the MVA and WLAA after defendants

7  allegedly interfered with plaintiffs' access to its records and failed to verify that they had

8  adequate insurance or the financial ability to pay to protect the records; that in on07/0610

9  plaintiffs notified defendants that they were in breach; that as a result of this dispute, on

10  07/23/10, KFHP and defendants entered into a Sure File Transfer Agreement (SFTA) in which

11  the parties agreed to terminate their business relationship and to affect the transfer of possession

12  of the records and patient information to plaintiffs; that in 03/11 plaintiffs and defendants

13  "negotiated a confidential settlement agreement to resolve all the outstanding issues between

14  them"; that since the execution of the settlement agreement defendants have notified Kaiser that

15  they are in possession

16  of records of Kaiser which defendants claim contain protected patient information; and that

17  defendants breached the BAA, MVA, WLAA and SFTA by retaining patient records, refusing to

18  return or destroy or allow plaintiffs access to those records, refusing to certify that the return or

19  destruction of those records, risking the unauthorized disclosure of those records and threatening

20  to use those records.

21       GROUNDS FOR MOTION: The motion is based upon the grounds that there is no

22  triable issue of fact that this action is barred by the settlement agreement and release.

23       Plaintiffs allege that the parties "negotiated a confidential settlement agreement to resolve

24  all the outstanding issues between them." Comp. ¶ 16. That settlement agreement states "the

25  parties ... now desire to settle and compromise any claims they might possess against the other,

26  settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein."

27  Comp.¶ 16.

28       There is no triable issue of fact that the parties settled all disputes arising out of the

2

1  subject agreements. The settlement agreement states "the parties ... now desire to settle and

2  compromise any claims they might possess against the other, settle the dispute and otherwise

3  resolve any outstanding issues as more fully set forth herein." Camp. ¶ 16. Despite the broad

4  scope of the settlement, plaintiffs argue that the settlement agreement applies only to claims for

5  non-payment made by defendants. In support of this argument defendants' counsel testifies that

6  the BAA remained in effect after the settlement agreement was executed as is shown by

7  paragraph 13 of the settlement agreement, which states in pertinent part that the parties "will

8  continue to take appropriate steps to preserve all confidential information in the medical records

9  handled by Dean during the course of providing Services as required by... the parties

10  Business Associates Agreement. .. " See Freeman Decl., ¶ 7.

11      Alternatively, plaintiffs argue that they were mista ken in that they never contemplated

12  that defendants had retained any records and that because defendants did retain records, the

13  settlement agreement was procured by fraud. It is noted that plaintiffs  have not brought an

14  action fraud or to enforce the settlement agreement.

15      On its face the settlement agreement is not confined to claims of non-payment made by

16  plaintiffs. Any argument that the BAA rema ined in effect is contradicted by the pleadings.

17      As a result of the foregoing dispute, KFH and defendants negotiated a transfer agreement

18  ("Sure File Transfer Agreement") to effect the transfer of possession from defendants to K.FH of

19  all of the medical records and confidential Protected Information of KAISER patients and

20  members. The Sure File Transfer Agreement was signed by Stephan Dean on or about July 23,

21  2010, and *terminated the ongoing business relationship between defendants* and KAISER.

22  Pursuant to the terms of the Sure File Transfer Agreement, DEAN specifically agreed to take

23  appropriate steps to preserve all confidential information maintained in those records as required

24  by the Confidentiality of Medical Records Act, Cal. Civil Code section 56 et seq., the federal

25  Health Insurance Portability and Accountability Act ("HIPAA") and the parties' BAA.

26      Following the execution of the Sure File Transfer Agreement, in March 2011 the

27  defendants and plaintiffs negotiated a confidentia I settlement agreement to resolve all the

28  outstanding issues between them ... ¶¶ 15,16.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT          Case No. 1207224

///

Plaintiffs now argue (1) that the settlement agreement applies only to claims for nonpayment made by defendants; (2) that plaintiffs were mistaken in that never contemplated that defendants had retained any records and (3) that because defendants did retain records, the settlement agreement was procured by fraud.

These arguments fail because the settlement agreement makes clear that it is not confined to claims of non-payment made by plaintiffs.

Either party may rely on admissions of fact contained in the opposing party's pleadings as evidence. "An admission in the pleadings is not treated procedurally as evidence; i.e., the pleading need not (and should not) be offered in evidence, but may be commented on in argument and relied on as part of the case. And it is fundamentally different from evidence. It is a waiver of proof of a fact by conceding its truth, and it has the effect of removing the matter from the issues. Under the doctrine of 'conclusiveness of pleadings: a pleader is bound by well pleaded material allegations or by failure to deny well pleaded material allegations." 4 Wilkin, *Cal. Procedure* (5th ed. 2008) Plead, § 452 *Valerio v. Andrew Youngquist Const.* (2002) 103 Cal.App.4th 1264, 1271.

The complaint alleges in great detail the history of their contracts with defendants, the resulting dispute re their lack of access to and defendants wrongful retention of medical records and the resolution of that dispute through a settlement agreement. Those allegations are supported by the various agreements entered into between the parties, culminating in the termination of their business and the intended final transfer of document and protected patient information through the SFTA and resolution of all disputes through the settlement agreement.

As to the claims that the settlement agreement may have been entered into through mistake or fraud, neither is alleged. The pleadings serve as the "outer measure of materiality" in a summary judgment motion, and the motion may not be granted or denied on issues not raised by the pleadings. *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258; *Nieto v. Blue Shield of Calif. Life & Health lns. Co.* (2010) 181 Cal.App.4th 60, 73–"the pleadings determine the scope of relevant issues on a summary judgment motion." If plaintiffs wanted to avoid the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT          Case No. 1207224

application of the settlement agreement, they need to plead that theory.

ACCORDINGLY, IT IS HEREBY ORDERED that Defendants' Motion is GRANTED.

IT IS FURTHER ORDERED that Defendants' oral request at the hearing to lift  the Preliminary Injunction issued by this Court on January 10, 2013 is DENIED.  The Preliminary Injunction shall remain in effect pending further order of this Court.

IT IS FURTHER ORDERED that Plaintiffs' oral request at the hearing for leave to file an amended complaint is GRANTED.  Plaintiffs' shall have until September 20, 2013 to file an amended pleading.

Dated: August ___, 2013                    _____

                                                    Hon. David M. Chapman
                                                    Judge of the Superior Court

Approved as to form:


_____

        Stephan C. Dean


_____

        Liza Dean

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT                    Case No. 1207224

# EXHIBIT 9

SUPERIOR COURT - STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

KAISER FOUNDATION HEALTH PLAN, INC.,   )
and KAISER FOUNDATION HOSPITALS,      )
                                   )
             Plaintiffs,   )
                                   )
        vs.                  )Case No. INC1207224
                                   )
STEPHAN CHRISTOPHER DEAN, LIZA       )
DEAN, DBA SUREFILE FILING SYSTEMS,   )
and DOES 1-10, Inclusive,           )
                                   )
             Defendants.   )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

HEARING RE MOTION FOR SUMMARY JUDGMENT

BEFORE THE HONORABLE DAVID M. CHAPMAN

July 31, 2013

APPEARANCES:

For the Plaintiffs:          THOMAS M. FREEMAN
                         MARION'S INN LLP
                         1611 Telegraph Avenue, Suite 707
                         Oakland, California  94612-2145

For the Defendants:          STEPHAN CHRISTOPHER DEAN
                         LIZA DEAN
                         In Propria Persona
                         44700 Ronald Street
                         Indio, California  92201

Reported By:                TERRI L. DICKNEIDER, CSR NO. 5031

**CERTIFIED COPY**

```
 1                PALM SPRINGS, CALIFORNIA; JULY 31, 2013

 2                 BEFORE THE HONORABLE DAVID M. CHAPMAN

 3          THE COURT:  Next, calling the matter of Kaiser

 4   Foundation versus Dean.  Thank you for your patience this

 5   morning, Counsel.

 6          MR. FREEMAN:  Thank you for hearing us, Your Honor.

 7          THE COURT:  My pleasure.  Could we have your

 8   appearances for the record?

 9          MR. FREEMAN:  Thomas Freeman for plaintiff, Kaiser

10   Foundation Health Plan, and opposing party.

11          MR. DEAN:  Good morning, Your Honor.  Stephan Dean,

12   defendant.

13          MS. DEAN:  Good morning, Your Honor.  Liza Dean,

14   defendant.

15          THE COURT:  Won't you please make yourselves

16   comfortable.  Please have a seat.

17          This matter is here for a motion for summary judgment.

18   The court issued its tentative ruling yesterday.  That was

19   posted.  Mr. Freeman, on behalf of Kaiser, has requested oral

20   argument.

21          And, as you can see, I spent a good deal of time

22   wrestling with these issues, and I must tell you that this was

23   not an easy call.  And a large part of the court's tentative

24   ruling -- and I underscore that that is only a tentative

25   ruling -- was based upon the four corners of plaintiffs'

26   complaint, particularly in -- I believe it was paragraph 16 of

27   the complaint, in which there were allegations raised

28   specifically providing that following the execution of the
```

1  Surefile Transfer Agreement in March of 2011, the defendants and

2  plaintiffs negotiated a confidential settlement agreement to

3  resolve all of the outstanding issues between them.  And there

4  was an offer at that time for -- from the plaintiffs to make

5  that settlement agreement available to the court, although the

6  court has read and reviewed that settlement agreement in that it

7  was an exhibit to the moving papers.

8          So with that foundation, Mr. Freeman, you are free to

9  make any comments or arguments that you would like.

10         MR. FREEMAN:  Yes, Your Honor.  The -- I appreciate the

11 court taking the time to review the plaintiffs' motion and the

12 papers submitted in opposition, and it's clear from the

13 tentative that the court did spend a considerable amount of time

14 looking at the matter.  However, I want to raise three issues

15 regarding the tentative, Your Honor, to address some facts which

16 the court may have overlooked or perhaps misconstrued, because

17 the relationship between the parties and the -- that led up to

18 the settlement agreement, and certainly the intent of Kaiser in

19 executing that settlement agreement, need to be clearly

20 understood.

21         Second --

22         THE COURT:  Okay.  I want to make sure I get the

23 issues.  One is the intent.

24         MR. FREEMAN:  Correct.

25         THE COURT:  Okay.

26         MR. FREEMAN:  And I'm going to -- I'm going to return

27 to the facts leading up to the execution of that agreement and

28 why we believe it should not be construed in the manner urged by

1    defendants and reflected in the tentative.

2          The second issue that I want to at least raise, because

3    it is not specifically addressed in the tentative, is that there

4    are in the plaintiffs' complaint four causes of action.  The

5    first is for breach of contract.  There are three other causes

6    of action.

7          THE COURT:  May I stop you right there?

8          MR. FREEMAN:  Yes.

9          THE COURT:  Was it your intent in your breach of

10   contract action to allege and/or plead a cause of action

11   claiming that there was a breach of the settlement agreement as

12   opposed to a breach of the business associate agreement?

13         MR. FREEMAN:  No.

14         THE COURT:  Thank you.

15         MR. FREEMAN:  Amongst the other causes of action

16   alleged, there are two common counts which are not addressed

17   with any specificity by the plaintiffs' moving papers, other

18   than their argument that all causes of action are subsumed by

19   the settlement agreement.  I'll address that in more detail in a

20   moment.

21         The third cause -- the third issue that I want to

22   raise, which is one that is -- is in fact raised by the

23   tentative, is a request by plaintiff for leave to amend its

24   complaint to allege alternative theories of mistake of fact or

25   concealment of material facts which induced Kaiser to enter into

26   the settlement agreement.  If in fact -- and I'll address that.

27   I hope to turn you around --

28         THE COURT:  That's a fallback position.

1    MR. FREEMAN:  That is the fallback position.  But as

2    the court -- the court cited in its tentative the *Laabs*

3    decision, at 163 Cal.App.4th 1242.  And at page 1248 of that

4    decision, the court cites the *Kirby versus Albert D. Seeno*

5    *Construction Company* case, which makes the point and the holding

6    in -- in the *Kirby* case is that on a motion for summary

7    judgment, if the plaintiff wishes to expand the issues

8    presented, we may and must at this hearing request leave to

9    amend.

10   THE COURT:  Okay.

11   MR. FREEMAN:  So I don't want there to be any ambiguity

12   about the fact that we -- if the court stands by its

13   interpretation of the settlement agreement as subsuming the

14   allegations alleged, we seek leave to amend to allege either

15   mistake of fact or concealment of material facts, a fraud claim.

16   THE COURT:  But not leave to amend on an allegation of

17   a breach of the settlement agreement?

18   MR. FREEMAN:  Well, it may be with respect to the

19   settlement agreement, Your Honor.

20   THE COURT:  Okay.

21   MR. FREEMAN:  And I'll circle back to that in a moment,

22   because as -- if you look at the declaration of Ms. Burke, she

23   really recites both the facts as Kaiser understood them in

24   entering into the settlement agreement because she is the party

25   who negotiated it with -- with the Deans' counsel --

26   THE COURT:  Would you bear with me?

27   MR. FREEMAN:  Sure.

28   THE COURT:  Please forgive me.  I want to go get

1    another -- I thought I brought them out with me.  But I have got

2    another note regarding Ms. Burke's declaration.  If you will

3    bear with me, I'll be right back.

4            MR. FREEMAN:  Sure.

5                        (Pause.)

6            THE COURT:  Thank you.  You may proceed, sir.

7            MR. FREEMAN:  Okay.  The -- I think if -- if I turn to

8    Ms. Burke's declaration, I can provide the factual background

9    and predicate to what Kaiser believes is a reasonable

10   interpretation of the settlement agreement consistent with the

11   allegations in plaintiffs' complaint.  The Deans had a

12   relationship with Kaiser whereby they provided services for a

13   number of years, beginning directly in 19- -- in 2008.  Some of

14   the services provided by the Deans were documented by written

15   agreements.  Other -- including invoices for payment.  Some of

16   the services were documented by services agreements, more

17   complete agreements, which both parties executed.  Some of the

18   services were not reflected in written agreements.  The Deans

19   rendered the services.

20           What is important to understand is that the services

21   that the Deans rendered beginning in late 2008, continuing into

22   2009, first and foremost involved the transfer of physical

23   medical record folder files from the Moreno Valley Community

24   Hospital, which Kaiser had acquired.  Those records at the time

25   Kaiser acquired the hospital were stored in a trailer out in

26   back of the hospital, in a very insecure situation.  Kaiser

27   didn't have the ability or facilities to store those records.

28   They needed to catalog the records before they were taken

1  offline by Moreno Valley Hospital.  And so the Deans were

2  retained to catalog those records, and they initially did that

3  work on site, but then transported the records to their facility

4  in Indio, where basically they cataloged the records with the

5  name of the patient, the medical record number, date of birth,

6  date of service, sometimes the Social Security number, although

7  that was rare.  So -- and then it was contemplated those records

8  would be returned to Kaiser; however, there was delay in doing

9  that.

10       The Deans continued to provide other services to

11  Kaiser, including the West L.A. deactivation project in early --

12  late 2009, early 2010.  And those were records, again, which

13  were being cataloged so that the physical files could be put

14  into permanent storage.

15       During the course of providing those services, the

16  Deans delivered to Kaiser CDs with the cataloging of those

17  records.  Some of the records were taken off -- taken off site

18  from the Deans and returned to Kaiser and put into storage.

19  Others remained there in storage in their warehouse.

20       After the completion of the deactivation project for

21  West L.A, there was a dispute that arose between the Deans and

22  Kaiser over the compensation that the Deans were entitled to.

23  That dispute culminated in the summer of 2010 in Kaiser formally

24  terminating its agreements with the Deans, the West L.A.

25  agreement and a November 2009 agreement, and the preparation of

26  the transfer agreement.  The intent of the transfer agreement,

27  which Ms. Burke describes in her declaration and which she

28  helped shepherd through, was intended to facilitate the return

1   to Kaiser of these medical record folders which were in this

2   warehouse in Indio.

3        There was no understanding at that time on Kaiser's

4   part that the Deans, in addition to those records, had on their

5   computers records of e-mails exchanged between an employee at

6   Kaiser and the Deans regarding any of those medical records.  We

7   now know, we now have learned since the execution of the

8   settlement agreement, that during the time the Deans had these

9   medical records in their custody, they periodically received

10  requests from Kaiser for the return of the files.

11       Kaiser knew that was happening because Kaiser would

12  receive a subpoena from somebody saying, "Hey, we need the

13  medical records of John Smith."  Kaiser would look in its files,

14  it wouldn't have it, they would call up the Deans, "Hey, we need

15  the folder for John Smith in response to the subpoena," and the

16  file would be returned to Kaiser, or somebody from Kaiser would

17  pick it up; or a patient would come in for treatment, and the

18  medical record folder would have to be retrieved.

19       So those -- periodically there were these requests

20  transmitted to the Deans for the return of these medical record

21  folders.  However, what was unknown to Kaiser and only came to

22  light in August of 2011, when Mr. Dean provided me with copies

23  of three e-mails, was the fact that at least one employee -- I

24  don't know if there are more.  The Deans have since told us they

25  have destroyed all the PHIs, so they don't have any record, but

26  we know there were at least three e-mails that were sent to the

27  Deans by a Kaiser employee that listed confidential personal

28  health information, unencrypted.

1          That was done contrary to Kaiser's policies and

2    procedures, contrary to the training that Kaiser employees

3    received, and there would have been no reason for Kaiser to know

4    or believe that such a communication had in fact occurred, nor

5    that the Deans had retained those e-mails with the personal

6    health information, which included dates of birth, Social

7    Security numbers, medical record numbers, at the time either the

8    transfer agreement was entered into in June or July of 2011, nor

9    at the time of the settlement agreement.

10         So what I -- and that's -- there is no dispute about

11   that from the Deans in terms of their disclosure of it, Kaiser's

12   knowledge of it.  It was never communicated.  The transfer

13   agreement by its terms refers only to the return of the medical

14   records.

15         And -- and in addition to that, and this leads to the

16   settlement agreement, at the time that the transfer agreement

17   was undertaken, Kaiser agreed to make a down payment, so to

18   speak, to the Deans for the services that they have rendered.

19   But it was specifically acknowledged in the transfer agreement,

20   in paragraph 4, that Dean reserves the right to pursue Kaiser

21   for cost of storage, maintenance, and delivery of the Moreno

22   Valley, Riverside County, records.

23         So it was understood there would be a further

24   negotiation and reconciliation of that claim.  That's what the

25   settlement agreement was intended to do.

26         THE COURT:  But it's not what it says.

27         MR. FREEMAN:  Well, it is, in that -- and this is where

28   I would, I guess, take issue with the court's interpretation --

1    THE COURT:  Did it define the dispute?

2    MR. FREEMAN:  It does.

3    THE COURT:  And would you read that to the court, and

4    for the record, as to how it defines the dispute.

5    MR. FREEMAN:  So in the recitals, it says:  "Whereas,

6    Surefile asserts that it has yet to be fully compensated for

7    services performed and costs incurred in providing services to

8    KP, and has alleged other claims against KP -- "

9    THE COURT:  Stop right there.  "Other claims against

10   KP."  Do they identify what those other claims are?

11   MR. FREEMAN:  They do not define them in the settlement

12   agreement.

13   THE COURT:  And in addition to the dispute that you

14   identified in that language, the settlement agreement goes on to

15   purport to settle any and all claims that one has against the

16   other, both past, present, and future.  In fact, known and

17   unknown claims.

18   MR. FREEMAN:  It does.  And -- and I'll concede that

19   perhaps some of that language is not as precise, which we would

20   now hope it would have been.  But in references to the release,

21   well, in -- in -- in references to the dispute, in the agreement

22   portion of the settlement agreement, in paragraphs B and C, all

23   of the references are with respect to the dispute.  And

24   paragraph B, for example, says:  "The settlement funds shall be

25   in full and final settlement and compromise of any claims they

26   might possess against the other, including without limitation

27   the dispute and any counterclaims and allegations related to or

28   in connection with the dispute at all times prior to and after

1    the effective date."

2         Paragraph C also says:  "Except as otherwise provided

3    herein, KP and Surefile agree that no additional money shall be

4    due from any party, for any reason whatsoever, for any

5    obligation incurred by any party to any other party in

6    connection with the dispute."  "The dispute" being Deans' claims

7    for compensation as reflected in the transfer agreement.

8         THE COURT:  And if the language within that release

9    only said "the dispute," then I think that gives you more solid

10   foundation for your argument.  But the settlement agreement then

11   goes on much more than just settling the dispute.  It purports

12   to not only settle the dispute, but "any and all claims," past,

13   present or future, known or unknown.  And there is a waiver of

14   the Civil Code section.  Is there not?

15        MR. FREEMAN:  There -- there is a -- a waiver of 1542.

16   However, in the settlement paragraph, settlement and release

17   paragraph number 3, again, all of the references to the release

18   are keyed off of liabilities and obligations, liabilities and

19   obligations arising out of or relating to the dispute.

20        THE COURT:  Then why do you --

21        MR. FREEMAN:  That point is made four times in that

22   paragraph, where it says "with respect to the dispute," "that

23   relate to the dispute," "relating to the dispute."

24        THE COURT:  Then why do you include language in your

25   release -- if you did not intend to release all other claims,

26   why is that language within the release?  If you only intended

27   to settle, to use your words, "the dispute," why did you include

28   in your release a release of all other claims, known or unknown?

1  Why is that language there if it doesn't purport to do exactly

2  what it says?

3         MR. FREEMAN:  Because it was within the contemplation

4  of the parties at the time that the claims that were being

5  released all related to Deans' claims for compensation for

6  services rendered with respect to his handling of records for

7  Kaiser.

8         THE COURT:  But you concede, do you not, that your

9  release that you drafted does not purport to limit the release

10 in exchange for just "the dispute," as you have defined it,

11 relating to compensation.  That's not what the document says.

12        MR. FREEMAN:  It does include those other words.

13        THE COURT:  It does.  And so -- but there is a

14 paragraph in the release that has to do with the business

15 association agreement, and I believe you might want to check

16 around paragraph 7, where it talks about preserving the

17 confidentiality.  And it makes specific reference to the

18 business association agreement, does it not?

19        MR. FREEMAN:  It does.  In paragraph 13.

20        THE COURT:  Paragraph 13.  And what does it say about

21 the business association agreement in paragraph 13 of the

22 release agreement?  Because in your opposition to this motion,

23 you assert that the business association agreement survived this

24 settlement agreement of all other claims, known and unknown.

25 Correct?

26        MR. FREEMAN:  Correct.

27        THE COURT:  Now, in reading that paragraph, what does

28 it say about specifically the business association agreement?

1    Does it say all terms and conditions of the business association

2    agreement are preserved and survive this purported settlement,

3    or does it attempt to carve out only a portion of the business

4    association agreement as it related to the subject of

5    confidentiality?

6         MR. FREEMAN:  Well, I will tell you that Ms. Burke

7    understood that the settlement agreement did not and was not

8    intended to supersede the BAA.

9         THE COURT:  I read her declaration, but what does your

10   settlement agreement say --

11        MR. FREEMAN:  The --

12        THE COURT:  -- as it relates to the BAA?

13        MR. FREEMAN:  Paragraph 13, I'll read the whole thing.

14        THE COURT:  Thank you.  Slowly for my -- for my court

15   reporter, please.

16        MR. FREEMAN:  Sure.  And if I read it too fast at any

17   point, she should stop me.

18        THE REPORTER:  Thank you.

19        MR. FREEMAN:  Paragraph 13, which is headed

20   "Non-disclosure," states:  "The nature and terms of this

21   agreement shall not be disclosed by any party hereto or its

22   agents, attorneys, or other representative, without the prior

23   written consent of the other parties, semicolon, provided,

24   however, that any party may disclose the existence of this

25   agreement, and the nature and terms thereof, subparagraph little

26   i, to the attorneys, accountants, and financial and tax advisors

27   of that party, sub double little i, as required or compelled by

28   law, or sub three little i, to enforce the provisions of this

1  agreement.  Period.  KP and Dean will continue to take

2  appropriate steps to preserve all confidential information in

3  the medical records handled by Dean during the course of

4  providing services as required by the Confidentiality of Medical

5  Records Act, Cal. Civil Code section 56, et seq., the federal

6  Health Insurance Portability and Accountability Act, paren,

7  HIPAA, H-I-P-A-A, close paren, and the parties' business

8  associate agreement of June 24, 2009."

9         THE COURT:  Okay.  So, now, my question to you:  In the

10 settlement agreement, contrary to Ms. Burke's understanding as

11 set forth in her declaration, is it your position that the

12 language that you have just quoted in fact allows full and

13 complete enforcement of the BAA, or does that portion of the

14 settlement agreement carve out only a portion of the obligations

15 under the BAA, to wit, protect the confidentiality of those

16 records?

17        And the reason that becomes important is, under the

18 BAA, specifically paragraph 2.8 of the business association

19 agreement, there is an obligation on behalf of the Deans to make

20 the protected information in the designated records available to

21 KP for inspection within ten days.  The question for the court,

22 then, is:  Does paragraph 2.8 of the BAA survive the global

23 settlement agreement?  And, if so, then the Deans have an

24 obligation upon ten days -- or they have the obligation to make

25 available for inspection within ten days the protected health

26 information.

27        So my question to you is:  Do you believe that

28 paragraph in the settlement agreement, in fact, exempts and

1    provides that the entire BAA survives, or is it only a portion

2    of the BAA that survives relating to the confidentiality of the

3    protected health information?

4           MR. FREEMAN:  Paragraph 13, I believe, Your Honor,

5    based on the terms that we are talking about here, I think

6    certainly reflects an intent for this specific provision of

7    access in the BAA to survive.  No question.

8           THE COURT:  The -- no question, the issue as -- at

9    least in this court's opinion, that paragraph of the settlement

10   agreement absolutely provides that the confidentiality aspects

11   of the business associate agreement survives the settlement

12   agreement.  And so my question for you -- and, more importantly,

13   it may not be you, but was it Ms. Burke who drafted the

14   settlement agreement? -- if it was her intent that the entire

15   business association agreement, all terms and conditions and

16   obligations thereunder, be exempt from the settlement agreement,

17   why didn't she say so?

18          It would have been very easy for her to say in that

19   settlement agreement not that just the confidentiality under the

20   BAA would survive, although she doesn't use the word "survive,"

21   but I -- I adopt your argument that it was her intent.  Why

22   wouldn't she have said not only the confidentiality sections of

23   the BAA survive, but all obligations contained within the BAA

24   and that entire agreement survives what purports to be the

25   global settlement in which she said, "I am giving up, the Deans

26   are giving up, and both sides are mutually agreeing that all

27   claims, past, present, future, known or unknown, except

28   paragraph 13, is being settled in exchange for that $100,000" or

1  whatever that figure was that was part of the settlement

2  agreement?

3        MR. FREEMAN:  The answer is because she was acting

4  under a mistake of fact.  She understood that at the time this

5  agreement was entered into, the settlement agreement, that the

6  Deans had in fact, pursuant to the transfer agreement, returned

7  to Kaiser all of the records that they had in their possession.

8  There was no inkling on anybody's part at Kaiser that the Deans

9  were still in possession of electronic medical records.

10       THE COURT:  And what -- what impact do you think

11 Mr. Dean's letter has on that position, when he said

12 essentially, "I agree that the settlement agreement only had to

13 do with compensation and nothing else"?

14       MR. FREEMAN:  I think it's an admission that -- that he

15 didn't -- that he had withheld that information, that the BAA

16 was still applicable and that he was obligated by it to provide

17 that information to Kaiser.  If Kaiser had been aware at the

18 time of the settlement agreement or after the transfer

19 agreement, if it had learned from Mr. Dean, as it did a year

20 later, "Hey, I have got medical -- I have got these e-mails, and

21 I want you to pay me more money for them before I give them

22 back," if that issue had been raised, there is no question that

23 Ms. Burke would not have released the Deans from the BAA.

24       Under the terms of the BAA, it's clearly -- it was

25 clearly intent -- clearly the intent of the parties that that --

26 that the obligations of the Deans under the BAA would survive,

27 even the termination of their business relationship.  In

28 paragraph 4.4 of the BAA, it says the obligations of the

1  business associate, that is the Deans, under this article 4,

2  shall survive the termination of the business relationship

3  between the parties and/or the BAA.

4        Under the BAA, in paragraph 4.3, "Effects of

5  Termination:  Upon termination of the business relationship,

6  business associates shall, at Kaiser's direction, return or

7  destroy all protected information that the business association

8  or its agents still maintain in any form and shall retain no

9  copies of such business -- of such protected information."

10       THE COURT:  I agree.  If you were here, if this was

11 a -- if this was a lawsuit about whether they breached the BAA,

12 I think so far there is evidence that has been submitted, both

13 in support of and in opposition to the Deans' motion for summary

14 judgment, that suggests that they may have breached that

15 agreement by maintaining information that they did not have a

16 right to continue to possess.  But that's not what we are here

17 about today.

18       The question becomes:  Did Kaiser give up all of those

19 rights that they otherwise may have had to assert a breach of

20 the BAA by entering into a settlement agreement which purports

21 to give up all claims, past, present, and future, with the

22 exception of what is carved out under paragraph 13 of the

23 settlement agreement?

24       And the next question that is unanswered is:  Does

25 Kaiser have a right to assert, does Kaiser have a right to

26 assert, under paragraph 13 of the settlement agreement, a

27 violation of HIPAA on behalf of their clients?  Or former

28 patients.  Not clients, but patients.

```
 1            MR. FREEMAN:  Well, that certainly is what Kaiser is
 2   trying to do here.  That's the whole genesis of this dispute,
 3   is --
 4            THE COURT:  But that wasn't an allegation within your
 5   complaint.  Was it?
 6            MR. FREEMAN:  It was not.  But it can be easily
 7   remedied if we are given leave to amend.
 8            THE COURT:  Okay, but I --
 9            MR. FREEMAN:  And we request that.
10            THE COURT:  But I don't want to usurp the three issues
11   that you wanted to address, and one is intent.
12            MR. FREEMAN:  Right.  But let me just make one other
13   point on that.  And it is to point out that I think there is --
14   that the Deans themselves have admitted that their obligations
15   under the BAA survived.  In Mr. Dean's letter to me of
16   August 8th, 2011, which is exhibit L, he says, "This letter is
17   to confirm that your files, in compliance with the three
18   agreements mentioned in your letter" -- that is my letter to
19   him -- "the BAA dated June 24th, 2009, the transfer agreement of
20   July 2010, and the settlement agreement dated March 24, 2011."
21            So we --
22            THE COURT:  I'm sorry.  I apologize.
23            MR. FREEMAN:  No, that's all right.
24            THE COURT:  I'm trying to get this thing so I can read
25   it.  Go right ahead.
26            MR. FREEMAN:  My point is that Mr. Dean, we would
27   contend, understood that he was obligated under the -- that the
28   BAA survive.  That it was not, as he now argues, terminated by
```

1    the settlement agreement.

2            MR. DEAN:  Your Honor, I -- I have heard him.  We have

3    something to say.

4            THE COURT:  You will get a chance in a minute.

5            MR. DEAN:  Oh, I'm sorry.  Sure.

6            THE COURT:  Please continue.

7            MR. FREEMAN:  Let me just briefly finish, then, Your

8    Honor, because I think I have actually made my other two points.

9            The -- the common counts for claim and delivery and

10   conversion and trespass with respect to the records, we -- we

11   think arose after the agreement, after Kaiser learned that Dean

12   retained possession of the electronic medical records.  The

13   e-mails that had the PHI, that -- there is no question those

14   records were Kaiser's property.  Kaiser was entitled to the

15   return of them, separate and apart from the BAA, separate and

16   apart from any of the other agreements Kaiser had.  The

17   essential point is that the Deans had no right to retain those

18   records.  And when Kaiser asked that they be returned, the Deans

19   refused without payment of additional compensation for those

20   records.

21           And then the third point, Your Honor, is if the court,

22   as we have discussed, is going to adopt its tentative relative

23   to the interpretation of the settlement agreement and its

24   effect, then we would request leave to amend the complaint to

25   seek enforcement of the terms of the settlement agreement and

26   specifically the obligations under the BAA for the Deans to

27   provide access to those records and their breach of that

28   provision by their failure to do so, as well as alternative

1    theories based on mistake of fact and concealment of material

2    facts at the time the settlement agreement was entered into.

3            THE COURT:  Thank you.  Kaiser's -- Kaiser's request

4    for judicial notice and opposition to the defendant's motion for

5    summary judgment is granted.  And we are going to take a morning

6    break.  We will stand in recess of 15 minutes, and then the

7    Deans will have a chance to respond.

8            MR. FREEMAN:  Thank you, Your Honor.

9                        (Recess.)

10           THE COURT:  Back on the record in the matter of Kaiser

11   versus Dean.

12           Mr. Dean, you may proceed, sir.

13           MR. DEAN:  Yes, Your Honor.  Thank you for taking the

14   time to look into this.  We really appreciate it.

15           We agree with your tentative ruling.  Mr. Freeman has

16   brought out a point that allegedly Kaiser's counsel at that

17   time, Holly Burke, claims that she was unaware that we still

18   were retaining PHI in our custody or control.  At the time that

19   this agreement was drafted, I was represented by counsel, Tom

20   Stefanelli.  Mr. Stefanelli clearly told me that this agreement

21   released all claims and causes of action, not just related to

22   the dispute, but to any claims involving our business

23   relationship as defined in the recitals of the settlement

24   agreement.

25           THE COURT:  Why did you send a written notification

26   after the date of the settlement in which you asserted that the

27   settlement only resolved issues regarding compensation?

28           MR. DEAN:  Because there were other issues that were

```
 1   involved.  One was the reporting of the HIPAA violations, and
 2   the state violations of confidentiality.  And I contacted Holly
 3   Burke in August of 2011, and that's what I called her about.  I
 4   also at that time, a little over two years ago now, contacted
 5   the California Department of Public Health and notified them of
 6   the situation that we had this PHI and that we were keeping it
 7   as evidence, and they were well aware of that and the reasons
 8   why we had it.  There was no doubt that we had the stuff.
 9        I -- I feel that this agreement that we have, this
10   settlement agreement, was very clear that it only pertained to
11   us not -- one, not disclosing it to unauthorized third parties;
12   and, two, to protect it.  But the protections in this agreement
13   are more than just the BAA.  If you look at paragraph 13, it
14   required us to also --
15        THE COURT:  Let me -- excuse me.  I apologize.  I want
16   to make sure -- I want to get to paragraph 13, if you can just
17   bear with me.
18        MR. DEAN:  Yes.
19        THE COURT:  Okay.  I'm there.
20        MR. DEAN:  Okay.  Here, I'm just going to read from the
21   part and -- part of this paragraph 13.  Under "Non-disclosure,"
22   it starts at the word "KP."  It says:  "KP and Dean will
23   continue" -- and they left the word "to" out of there, but I'm
24   sure that's what everybody meant -- "to take appropriate
25   steps" -- first of all, "to preserve," which my definition of
26   that is to maintain or retain.  And then it says, "all
27   confidential information in the medical records" -- now, that
28   was referring to patient health information -- "handled by Dean
```

1  in the course of providing services" -- now, the "services" is

2  described in the recitals, of all the things that we were doing

3  with the medical records and the patient information, and all

4  that was part of our business relationship as described in the

5  recitals.

6       Then it continues on to say "as required by."  Now,

7  first, "Confidentiality of Medical Records Act, Civil Code 56,"

8  Civil Code 56 is -- really deals with who you can disclose

9  patient information to without a written authorization.  It's

10 very, very concise.  Then it goes on to say "the Federal Health

11 Insurance Portability and Accountability Act."  That's HIPAA.

12 HIPAA also defines who you can disclose it to, but also the

13 protections that are required and how you are supposed to

14 preserve it.

15      Then, the third thing is "the parties' business

16 associate agreement."  Now, counsel has said "business associate

17 agreement," "business associate agreement."  They keep referring

18 to that.  There is more to this than that.  This clearly shows

19 that the -- the reason why this is in here is that we were to

20 continue to protect it and preserve it and keep it confidential.

21      Our feeling is this agreement, we are married.  And

22 it's binding.  And we both agree, per the March 2011 settlement

23 agreement, paragraph 18, it says:  "This agreement states the

24 entire agreement among the parties who have executed this

25 agreement and supersedes their prior agreements, negotiations or

26 understandings."  So our feeling was that this controls.  The

27 BAA was incorporated into the agreement as well as the CMIA and

28 HIPAA, to require us to protect it and not disclose it unless it

1    was disclosed to an authorized third party or we had a patient's

2    written authorization.

3            The settlement agreement, the first page of it, under

4    "Recitals," this is very important, it says:  "Whereas, Surefile

5    and KP failed to fully memorialize their business relationship

6    relating to the services in a written agreement."  This

7    settlement and release agreement was what we were to follow.  It

8    is the agreement that we are bound by now, and we have followed

9    the instructions of the agreement.

10           We were represented by counsel, as well as Kaiser's own

11   in-house counsel, Holly Burke, drafted this agreement.  These

12   were two licensed attorneys that knew exactly what they were

13   doing.  I was told very clearly that this agreement is what

14   binds us together, and the literal words of the agreement

15   require us to preserve the information that we retain or got

16   during services.  We were to follow the status quo from when we

17   have signed the transfer agreement in 2010.  And that's exactly

18   what the words say.

19           I'm done, sir.

20           THE COURT:  Thanks.  I have a question for you.  You

21   filed a declaration indicating that you had destroyed all of the

22   personal information.  Correct?

23           MR. DEAN:  Yes, Your Honor.

24           THE COURT:  What is it that you are preserving, then?

25           MR. DEAN:  Now?

26           THE COURT:  Yes.

27           MR. DEAN:  Nothing.  That's -- I don't have anything.

28           THE COURT:  Okay.  Let's -- okay.

```
 1            MR. DEAN:  I'm sorry.

 2            THE COURT:  Mr. Freeman.  What is it that you want from

 3   these folks?

 4            MR. FREEMAN:  We want an entry of a permanent

 5   injunction that would prevent them from maintaining or using any

 6   personal health information.  If they have nothing, then the

 7   permanent injunction would just assure that nothing was ever

 8   used.

 9            THE COURT:  Wasn't there an injunction that was issued

10   in this case by my predecessor, and is that still in effect?

11            MR. FREEMAN:  It is.

12            THE COURT:  And was it ever converted from a

13   preliminary injunction to a permanent injunction?

14            MR. FREEMAN:  It was not.

15            THE COURT:  But it still continues in force and effect

16   today?

17            MR. FREEMAN:  It does.  And just to be clear on that

18   point, Your Honor, because this has been a source of discussion

19   between the Deans and Kaiser since January of this year, when

20   the preliminary injunction was entered, just to back up, the

21   Deans told Kaiser they had the electronic records with personal

22   health information.  They refused to return them.  We negotiated

23   over -- to attempt to get access to those so that they could be

24   deleted from their computers, they could be deleted from their

25   e-mail accounts, et cetera.

26            THE COURT:  Since that discussion, did his declaration

27   follow that, saying that it had all been destroyed, or was his

28   declaration before?
```

MR. FREEMAN: It did.

THE COURT: Okay. Let me just stop.

MR. FREEMAN: And --

THE COURT: Okay. Let me just stop you, sir.

Sir, do you have any electronic information whatsoever of any Kaiser patient?

MR. DEAN: No. Your Honor, no. Your Honor, they want to shake us and hang us upside down. We don't have anything.

THE COURT: Okay. Mr. Dean, let me do it one at a time. Do you have any electronic data whatsoever that has any reference to any Kaiser patient?

MR. DEAN: No.

THE COURT: Next, do you have any hard copies of any written records which in any way relate or refer to any Kaiser patient?

MR. DEAN: No.

THE COURT: Are you preserving any data whatsoever that has anything to do with any Kaiser patient in any form whatsoever, whether hard copy, electronic, or otherwise?

MR. DEAN: No.

THE COURT: Okay. Ms. Dean, do you agree? Would your answers be the same?

MS. DEAN: Yes, they would be absolutely the same.

THE COURT: All right. You may continue. I interrupted you.

MR. FREEMAN: So -- so at the time this complaint was filed in October of 2012, we knew the Deans had possession of the PHI based on what they had provided to us. They had refused

1  a request to return it.  They had refused to allow us to access

2  their devices or e-mail accounts to delete it.

3      We filed the complaint.  We got the TRO.  We -- between

4  the time the TRO was entered and the time of the hearing on the

5  preliminary injunction in January of 2010, the Deans submitted

6  declarations saying, "We have deleted everything.  We have

7  deleted all the PHI."  Notwithstanding that, the court entered

8  the preliminary injunction.

9      Subsequent to the entry of the preliminary injunction,

10 we received from the Deans in May of this year three medical

11 record folders and a CD that contained a list of hundreds, maybe

12 thousands, of medical records that they had cataloged.  They,

13 upon -- they notified me of that.  I asked them to return it.

14 They did return it.  And we got rid of it.

15     The reason -- the reason we seek the entry of a

16 permanent injunction is simply to assure that in the event that

17 the Deans discover PHI on their computers, on their phones, in

18 their e-mail accounts, if muddling around in their warehouse

19 they find additional records, they are under an obligation to

20 return that to us without us having to worry about whether those

21 records will be disclosed, used, or any other way --

22     THE COURT:  All right.  Let me stop you.

23     This is not -- you have an opportunity to be heard, and

24 so I'm not asking for a commitment if you have any objection

25 whatsoever, but I do have a question for you.  And the question

26 would be:  Do you have an objection to the preliminary

27 injunction that has previously been ordered simply becoming a

28 permanent order such that should you find any such documents you

1  inadvertently didn't find or see or return earlier, you have an

2  affirmative obligation to return them?  Do you have an objection

3  to the preliminary injunction becoming a permanent injunction?

4          MR. DEAN:  Yes, we do, Your Honor.

5          THE COURT:  Okay.  All right.

6          Anything further?

7          MR. FREEMAN:  Your Honor, just given the discussion

8  that we have had here today, if the court intends to adopt its

9  tentative, we would, as I have previously discussed, request

10 leave to amend based on the *Kirby versus -- Kirby* decision and

11 the case of *Mediterranean Construction Company versus State Farm*

12 *Fire & Casualty Company*.

13         THE COURT:  Okay.  Let's discuss that for a minute.  I

14 know that's your fallback position.  And my question to you is:

15 Why wouldn't paragraph 3 of the settlement agreement preclude

16 you from being successful on an amended complaint, specifically

17 as follows:  Under paragraph 3 of the settlement agreement, it

18 indicates about a third -- about a halfway down that paragraph,

19 it starts with -- let's just pick up from the word "thereof,"

20 comma, "and/or each of the aforesaid, collectively referred to

21 herein as 'affiliates,' from all claims, actions, causes of

22 action of any nature and for all liabilities and obligations of

23 every kind and character arising out of or relating to the

24 dispute and any and all claims that were or could have been

25 asserted relating to and/or arising from any of the foregoing,

26 regardless of whether such claims, actions or causes of action

27 have arisen prior to the effective date or arise after the

28 effective date."

1    How is it that any purported amended complaint that you

2    could allege would wind up not being covered by this language

3    that Ms. Burke drafted in the settlement agreement?  And the

4    reason I ask you that is the court is not obligated to grant

5    your motion to amend the pleadings if you cannot legally plead a

6    cause of action that otherwise is not defeated by this

7    settlement agreement under paragraph 3, although I understand

8    the court's obligation to liberally allow pleadings or amendment

9    to the pleadings.  But I just want to ask you.  I don't want you

10   to go through an exercise in futility.  How do you plead around

11   that?

12       MR. FREEMAN:  Based on fraud.

13       THE COURT:  How?

14       MR. FREEMAN:  Your Honor, as I have tried to explain,

15   the parties, at least Kaiser, understood what it had negotiated

16   at the time it entered into the transfer agreement was the

17   return of all of the medical records that the Deans had in their

18   possession.  They were unaware of the Deans' concealment of the

19   fact that they retained electronic records of Kaiser that had

20   personal health information.

21       THE COURT:  Okay.  But then we -- then you are

22   triggered by a fully integrated document.  Are you going to

23   introduce parol evidence to try and defeat paragraph 18, which

24   fully integrates into this settlement agreement all prior

25   agreements, negotiations or understandings?

26       MR. FREEMAN:  Yes.  Your Honor, what it comes down to

27   is the fact that Ms. Burke negotiated this agreement

28   understanding that the dispute that was being resolved was the

1    compensation for the Deans' services.

2         THE COURT:  Despite language to the contrary.  So she's

3    going to submit a declaration to the court saying that "I

4    drafted this release agreement, I chose the words within this

5    release agreement, I made it all-encompassing, but, oh, by the

6    way, I did not intend it to be a fully and completely integrated

7    release agreement, releasing all known and unknown claims" and

8    then specifically making reference to 1534?  She's going to say

9    that?  I mean, she essentially already has.

10        MR. FREEMAN:  She has said that, Your Honor.  And the

11   fact of the matter is that the Deans obviously intentionally

12   withheld that information.  The ink literally on this agreement

13   wasn't dry before Mr. Dean turned around and said, "Hey, I have

14   got more records, and I want $60,000 to return them."

15        THE COURT:  You have not persuaded me that my tentative

16   ruling should be overturned.  I think the language within the

17   settlement agreement establishes as a matter of law that there

18   was a release of all of the claims that are alleged in the

19   plaintiffs' complaint.  And so the tentative order of the court

20   shall become the order as it relates to the motion for summary

21   judgment, and the plaintiff is required to give notice.

22        However, I will grant your oral motion to amend the

23   complaint.  Now, I am doing so only because I think that under

24   the cases that say that I am to liberally construe a party's

25   right to amend the complaint, that I am going to do so.  But I

26   must tell you that it is a close call because paragraph 3 of

27   this complaint may well, unless you can give me authority to the

28   contrary, defeat those other causes of action.

1    I am not ruling on this at this time because I have

2    candidly not done the research, nor have I seen the points and

3    authorities.  But -- so what do you propose the order to be?

4    The motion for summary judgment on these causes of action are

5    granted, consistent with the tentative ruling.  And you are

6    permitted leave to amend.  The order is you file your amended

7    complaint within 30 days from today.

8          Anything on behalf of the Deans?

9          MR. DEAN:  Yes, Your Honor.  We -- you had said to do a

10   proposed order, basically what you said.  But we have also asked

11   in the order that the motion for -- that the preliminary

12   injunction be vacated because we don't have anything.

13   Therefore, there is no -- I guess as a matter of law, how can

14   you tell me to protect something I don't have?  We have had

15   depositions with Mr. Freeman; two of them.  We have told him

16   we -- we had a declaration.

17         And, Your Honor, this situation where I found three

18   records and a disc, I thought he would pat me on the back, thank

19   you, because, Your Honor, the preliminary injunction tells me to

20   return, delete or destroy.  I could have just destroyed it and

21   said nothing.  There is no conspiracy here.  They want my

22   property.  They want my computers.  I want my friend's '68

23   Camaro in his garage, but he won't take a thousand dollars for

24   it.

25         We have an agreement that we are bound together.  If he

26   wants to keep this litigation -- we are not lawyers, but we are

27   getting a little tired of it because we haven't done anything

28   wrong.  We have abided by the agreement.  It's very evident.

1    They are just bullies, and they are using their money to force

2    us to take -- we have lost a half a million dollars.  We have

3    lost our life savings over this fiasco because we said it was

4    wrong to maintain all those patient records without a written

5    agreement and insurance.  They finally gave us one based on the

6    fact that my wife was Hispanic, and that's a fact, in the

7    documents.

8              THE COURT:  You know, I always encourage the parties --

9    you know, sometimes competitive spirits can be aroused on both

10   sides, and I always encourage parties in a good-faith,

11   professional approach to see if they can't resolve their

12   differences.  And so although I am compelled, Mr. Freeman, to, I

13   think, give you leave to amend, I would encourage you to look

14   closely at this settlement agreement and whether or not you can

15   legitimately bring a cause of action for fraud.

16             I mean, inadvertent discovery of records and then

17   giving those to you doesn't seem to suggest a fraudulent intent,

18   but again I'm not ruling on that or I'm not passing judgment on

19   that, and I'm not making any factual determination because I

20   don't know what happened.

21             MR. FREEMAN:  That wasn't the basis for our lawsuit

22   either, Your Honor.

23             THE COURT:  All right.

24             MR. FREEMAN:  The basis for our lawsuit was the

25   withholding of the electronic records, which Mr. Dean in

26   correspondence threatened to disclose, threatened -- went to the

27   press, made disclosures of the fact -- "Hey, I have got this on

28   my computer sitting in my garage.  I'm leaving my garage door

1   open.  Aren't you lucky that nobody stole my computers and got

2   this PHI."

3   　　　　　THE COURT:  And since then, under penalty of perjury,

4   which is a felony in the state of California, he has represented

5   that all such records have in fact been destroyed and he doesn't

6   possess any.  Now, on the one hand, those comments to you

7   certainly have some inferences that I understand your position

8   and your interpretation.  Since then, having received a

9   declaration under penalty of perjury, both Mr. and Mrs. Dean are

10  running a substantial and significant risk regarding the signing

11  of such a declaration if it's untrue.

12  　　　　　But be that as it may, unless there is something

13  further, I think I have given this serious and thorough

14  consideration.  And I very much appreciate both Kaiser's

15  position and the Deans' position, and I'm hopeful that you folks

16  can resolve it, otherwise I will for you.

17  　　　　　MR. FREEMAN:  One final housekeeping matter, Your

18  Honor.  The trial date in this matter is set for September 9th,

19  and I assume that's vacated.

20  　　　　　THE COURT:  That trial date is vacated.

21  　　　　　MR. FREEMAN:  I would also ask the court to indulge me

22  in a brief off-the-record discussion once we have concluded the

23  hearing.

24  　　　　　THE COURT:  Sure.  Is that okay with the Deans?

25  　　　　　MR. DEAN:  He wants to ex parte, they call it, right?

26  　　　　　THE COURT:  No.  No.  He wants an off-the-record

27  discussion.  And I don't know if that's to your benefit or not,

28  but I would not have such a discussion outside your presence.

1    MR. DEAN:  Well, Your Honor, one thing before -- I'm

2    glad to accommodate that.  I guess you are the one that does.

3    Would you please sign this?  This is what you asked me as far as

4    your tentative ruling and also --

5    THE COURT:  I will look at it, but let me tell you --

6    and I'm -- I want to commend you, sir.  I think you have done a

7    fine job, not being a lawyer.

8    MR. DEAN:  Thank you.

9    THE COURT:  No, I can't sign this because I'm not

10   vacating the preliminary injunction as of today's date.  Also, I

11   have asked counsel on behalf of Kaiser to prepare the formal

12   order.  And because I want to make certain that it is absolutely

13   consistent with the tentative and it addresses his oral motion

14   to amend the pleadings, I'm going to ask him to prepare that.

15   He will send you a copy.  If you have any objections to his

16   proposed order, simply file that objection with the court.  I'm

17   sure it will be absolutely consistent with the tentative,

18   though.  Okay?

19   MR. DEAN:  Thank you, Your Honor.

20   MS. DEAN:  Thank you.

21   THE COURT:  Okay.  We are now off the record.

22   MR. FREEMAN:  Thank you, Your Honor.

23   (Discussion off the record.)

24   THE COURT:  Let's go back on the record.  We have had a

25   short discussion off the record concerning the possibility of

26   engaging in a mandatory settlement conference.  Counsel on

27   behalf of Kaiser and Mr. and Mrs. Dean have indicated that they

28   would like this court to participate and will waive any issues

1    regarding my disqualification as the trial judge.

2           Counsel on behalf of Kaiser will prepare the

3    appropriate stipulation and waiver.  And I conduct settlement

4    conferences on a Friday.  I am gone the next two weeks.  Please

5    tell me when would be the earliest and most convenient date for

6    the parties.

7           MR. FREEMAN:  Your Honor, I am available after

8    August 26th.  So --

9           THE COURT:  How is August 30th?

10          MR. FREEMAN:  That's fine for me.

11          THE COURT:  How is August 30th for you folks?

12          MR. DEAN:  Just so -- I need to just have a few things

13   clarified, Your Honor.  First of all, the motion that we have

14   filed today, motion for summary judgment, has been granted.  But

15   you have ruled that you are allowing them to amend their

16   complaint.

17          THE COURT:  Yes.

18          MR. DEAN:  Okay.  So basically Mr. Freeman has asked

19   that we have a mandatory settlement conference, which I believe

20   is required by law.

21          THE COURT:  It's not.

22          MR. DEAN:  Oh.

23          THE COURT:  It's not required.

24          MR. DEAN:  Oh, okay.

25          THE COURT:  The word "mandatory" means that your

26   appearance is mandatory.

27          MR. DEAN:  Oh.

28          THE COURT:  I'm not required to set a settlement

1  conference unless I believe that it would be of benefit to the

2  parties.

3       MR. DEAN:  So my question is, let's say we go to that

4  and then, you know, we just get this offer from Kaiser, which is

5  basically nothing, and we say, "No, we want to go ahead, and

6  let's go to trial."  And we understand you would be the judge,

7  which we are totally fine with.  Is that what you are saying,

8  that we would still have the option, if we can't settle it, to

9  go to trial?

10      THE COURT:  Well, you do except for the following:  I

11 don't think -- there wasn't a cross-complaint filed in this

12 case, is there?  Okay.  So --

13      MR. DEAN:  Well, Your Honor, actually we were going to

14 file one.

15      THE COURT:  But it's too late.

16      MR. DEAN:  Yeah.

17      THE COURT:  You didn't file one.  If the case can't be

18 settled, then the next thing that will happen is they are going

19 to file an amended complaint.  You are going to probably file

20 another motion, and then I'm going to make a determination

21 whether any other causes of action survive this settlement

22 agreement.  Ultimately, if -- and I'm not prejudging it because

23 I haven't seen it yet -- but if I were to make a determination

24 that any new amended complaint does not survive the settlement

25 agreement, then the case is over and you win.

26      MR. DEAN:  And is that, like, done with -- what do you

27 call it? -- without prejudice or --

28      THE COURT:  With prejudice.

```
 1              MR. DEAN:  That means they can file again or no more?
 2              THE COURT:  No.  No.  It's over.
 3              MR. DEAN:  Okay.
 4              THE COURT:  I mean, they can appeal it.  I mean -- and
 5     so I can't tell you that it is absolutely over.  As far as this
 6     court would be concerned, it would be over.  But then they would
 7     have a right to appeal it to the court of appeal, arguing that I
 8     made an erroneous ruling by granting this motion.  Okay?
 9              MR. DEAN:  Yes.
10              THE COURT:  So if you want to have a settlement
11     conference, I'll give you the time.  Would you like to do this,
12     Mr. Dean?
13              MR. DEAN:  Yes, Your Honor.  And, like, in the
14     meantime, maybe -- maybe Kaiser may decide to, you know --
15              THE COURT:  I'll let you discuss that with them.
16              So the matter will be set for a settlement conference
17     on August 30th, at --
18              THE CLERK:  Ten.
19              THE COURT:  -- at 10:00 a.m.
20              THE CLERK:  Here.
21              THE COURT:  You know, I apologize.  Am I gone the 26th?
22     I am, right?
23              THE CLERK:  That's for the CEO.
24              THE COURT:  Okay.  I think I leave the afternoon of the
25     30th, because I'm gone the following week.  I'm thinking about
26     setting it the 29th.
27              THE CLERK:  You can have them come in at 9:00 or 9:30
28     if you want.
```

```
 1            THE COURT:  Let's set it for nine o'clock on Friday the
 2   30th.  And so I'm going to allocate -- I'm going to allocate
 3   two, two and a half hours.  Will that be enough time, in your
 4   view?
 5            MS. DEAN:  Yes, sir.
 6            MR. FREEMAN:  I think so, Your Honor.
 7            THE COURT:  Okay.  And if it took longer than that, I
 8   would want to set it on a different date.  I'm leaving -- I
 9   think I leave that afternoon.  Okay?
10            MR. FREEMAN:  To be safe, can we pick a different date?
11            THE COURT:  Sure.  Let's pick September 13th at
12   10:00 a.m.  Okay?
13            Thanks, folks.
14            MR. DEAN:  Thank you, Your Honor.
15            MR. FREEMAN:  One other housekeeping matter.  Let me,
16   if I could, Your Honor, just check my calendar that date.
17            I have a case management conference I'm required to
18   attend that date, Your Honor.
19            THE COURT:  Where?
20            MR. FREEMAN:  L.A. Superior Court.
21            THE COURT:  Can you appear by CourtCall in L.A.?
22            MR. FREEMAN:  I guess I could, yeah.
23            THE COURT:  Okay.  Otherwise I have got to go to
24   September 20th, and now we are getting it so far --
25            MR. FREEMAN:  Yeah.  I appreciate that, Your Honor.  I
26   will attend by CourtCall.
27            THE COURT:  Okay.  The matter is set for the 13th of
28   September.  Thank you for coming in.  Have a good day.
```

```
 1              MR. FREEMAN:  One other point.

 2              THE COURT:  Yeah.

 3              MR. FREEMAN:  Since we are going to have this

 4   conference, and our motion to amend is required to be filed

 5   within 30 days, can we extend that until after our attempts to

 6   resolve this?

 7              THE COURT:  Your amended complaint will be due on or

 8   before September 20th.  That's the week after the settlement

 9   conference.

10              MR. FREEMAN:  That's fine, Your Honor.  Thank you.

11              THE COURT:  Okay?

12        Thank you, Mr. and Mrs. Dean.

13              MR. DEAN:  Thank you.

14              MS. DEAN:  Thank you.

15              THE COURT:  Thank you, Mr. Freeman.

16        Have a good day.

17              MR. FREEMAN:  Thank you.

18              THE COURT:  The court is in recess.

19                    (Proceedings concluded.)

20

21

22

23

24

25

26

27

28
```

REPORTER'S CERTIFICATE


KAISER FOUNDATION HEALTH PLAN, INC.,      )
and KAISER FOUNDATION HOSPITALS,          )
                                          )
                          Plaintiffs,     )
                                          )
                    vs.                   )Case No. INC1207224
                                          )
STEPHAN CHRISTOPHER DEAN, LIZA            )
DEAN, DBA SUREFILE FILING SYSTEMS,        )
and DOES 1-10, Inclusive,                 )
                                          )
                          Defendants.     )
_____)



         I, Terri L. Dickneider, Certified Shorthand Reporter

No. 5031, hereby certify:

         On July 31, 2013, in the county of Riverside, state of

California, I took in stenotype a true and correct report of the

testimony given and proceedings had in the above-entitled case,

pages 1-37, and that the foregoing is a true and accurate

transcription of my stenotype notes and is the whole thereof.


DATED:  Indio, California; August 4, 2013.




                        _____
                            *Terri L. Dickneider*

                        TERRI L. DICKNEIDER, CSR No. 5031

EXHIBIT 10



# RIVERSIDE SUPERIOR COURT
## P U B L I C   A C C E S S

## Minute Order

| **Case Name:** KAISER FOUNDATION VS STEPHAN CHRISTOPHER DEAN;ET A | |
|---|---|
| Indio Civil | Breach of Contract |
| **Case Number:** INC1207224 | **File Date:** 10/12/2012 |
| **Action Date:** 9/13/2013 | **Action Time:** 10:00 AM | **Department:** PS2 |
| **Action Description:** Mandatory Settlement Conference | |

Honorable Judge David M. Chapman, Presiding

Clerk: C. Donovan

Court Reporter: T. Dicknieder

KAISER FOUNDATION HEALTH PLAN INC, KAISER FOUNDATION HOSPITALS represented by/in Tom Freeman

Vita Willett Present

STEPHAN CHRISTOPHER DEAN; DBA:SUREFILE FILING SYSTEMS present-Pro Per

LIZA DEAN; DBA:SUREFILE FILING SYSTEMS present-Pro Per

Mandatory Settlement Conference Held

Stage at Disposition Before Trial - Court Ordered Dismissal - Other Court-ordered Dismissal (Civil Case Categories Only).

Entire action dismissed.

Dismissal entered with prejudice.

Injunction is dissolved

Undertaking/Bond # 0609578 Exonerated

Notice Waived

Hearing held: Pre-disposition hearing.