Stephan C. Dean and Liza Dean
37187 Bankside Drive #2
Cathedral City, CA  92234
323-314-9692
Surefile@msn.com

In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

STEPHAN DEAN and LIZA DEAN,
Individually and DBA SUREFILE FILING
SYSTEMS,

        Plaintiffs,

v.

KAISER FOUNDATION HEALTH
PLAN, INC., KAISER FOUNDATION
HOSPITALS, and Does 1-50 Inclusive,

        Defendants.

) Case No.: 5:22-CV-00278-MCS-KK
)
)
) **MEMORANDUM OF POINTS AND**
) **AUTHORITIES IN OPPOSITION TO**
) **MOTION OF COUNTERCLAIMANTS**
) **FOR SUMMARY JUDGMENT**
)
) **Hearing:**
) **Date: May 8, 2023**
) **Time: 9:00 a.m.**
  **Courtroom: 7C**

# INTRODUCTION

The Defendants/Counterclaimants herein are seeking a Summary Judgment related to their claim that Plaintiffs violated the terms of a Settlement Agreement/Release. The Court previously determined, in ruling on a prior Motion for Summary Judgment filed by Counterclaimants in this action, that Plaintiffs did indeed breach said Settlement Agreement/Release. That prior Motion for Summary Judgment was denied based upon a finding by the Court that the Counterclaimants had failed to establish damages. Counterclaimants have now filed this second Motion seeking summary Judgment attempting to establish damages.

Plaintiffs herein contend that the issue of damages is irrelevant based upon the fact that the Settlement Agreement/Release, which forms the subject matter of this action, contained no mechanism by which the Counterclaimants can pursue any claim for damages for breach of said agreement. The Settlement Agreement/Release has been previously found by this court to be a bilateral fully integrated Settlement and Release. This dispute has been a long and tortuous road for all parties but, particularly for the plaintiffs and cross-defendants. The Deans have been subjected now for the third time to litigation because of Kaiser's unwillingness to simply settle a dispute which they know they released on March 24, 2011.

The pertinent issue associated with this Motion for Summary Judgment is very similar to the issue that arose in the Superior Court of California case between these same parties when, in 2013, the Deans moved for Summary Judgment. Counterclaimant's Kaiser's argument herein is essentially the same argument that was made by Kaiser in Opposition to the Dean's Motion for Summary Judgment in that Superior Court of California action. Specifically Kaiser argued in that case that the Settlement Agreement/Release only pertained to payment for services rendered. The discussion between Kaiser's attorney in that State action and the Honorable Judge Chapman, who

was presiding over that Superior Court of California action, is outlined in pertinent part below, (Dkt 71-3, pgs 99, 100):

> *"MR. FREEMAN: Your Honor, as I have tried to explain, the parties, at least Kaiser, understood what it had negotiated at the time it entered into the transfer agreement was the return of all of the medical records that the Deans had in their possession. They were unaware of the Deans' concealment of the fact that they retained electronic records of Kaiser that had personal health information.*
> *THE COURT: Okay. But then we -- then you are triggered by a fully integrated document. Are you going to introduce parol evidence to try and defeat paragraph 18, which fully integrates into this settlement agreement all prior agreements, negotiations or understandings?*
> *MR. FREEMAN: Yes. Your Honor, what it comes down to is the fact that Ms. Burke negotiated this agreement understanding that the dispute that was being resolved was the compensation for the Deans' services.*
> *THE COURT: Despite language to the contrary. So she's going to submit a declaration to the court saying that "I drafted this release agreement. I chose the words within this release agreement. I made it all-encompassing, but, oh, by the way, I did not intend it to be a fully and completely integrated release agreement, releasing all known and unknown claims" and then specifically making reference to 1534? She's going to say that? I mean, she essentially already has.*
> *MR. FREEMAN: She has said that, Your Honor."*

Indeed, as back then, Kaiser argued that they did not know the Deans had electronic PHI, and yet, Holly Burke, who drafted the agreement, required the Deans to continue to preserve it. (See Docket 53.2, pg 36).

> *"KP and Dean will continue to take appropriate steps to preserve all confidential information in the medical records handled by Dean during the course of providing Services as required by the Confidentiality of Medical records Act. Cal. Civ. Code 56 et seq., the federal Health Insurance Portability and Accountability Act ("HIPAA"), and the parties' business Associate agreement of June 24, 2009."*

Now, it is 2023 and Kaiser is back at it again.  This time arguing in front of this court, at least three times, and the Court agreeing, that it cannot add or delete a term to a fully integrated agreement.

THE COURT: *"but, oh, by the way, I did not intend it to be a fully and completely integrated release agreement, releasing all known and unknown claims" and then specifically making reference to 1534? She's going to say that? I mean, she essentially already has.*
MR. FREEMAN: *She has said that, Your Honor."*

Kaiser is now attempting to add terms that would give them a legal mechanism in which to pursue damage claims against the Deans in a fully integrated agreement as well as terms restricting the Deans use and disclosure of patient information. They are now changing their position, which they are not allowed to do. Throughout this action, Kaiser has argued that it is the Plaintiffs who have tried to add terms to the Agreement. Now Kaiser has done an about face and is trying to argue that it should be allowed to add terms, specifically a mechanism, to allow it to bring claims against the Deans contrary to the express and specific terms of the Settlement Agreement and Release. "'The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. . . . "The policies underlying preclusion of inconsistent positions are 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings.'" . . . Judicial estoppel is "intended to protect against a litigant playing 'fast and loose with the courts.'"'" ( *Russell* v. *Rolfs* (9th Cir. 1990) 893 F.2d 1033, 1037.) "It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite." (Comment, *The Judiciary Says, You Can't Have It Both Ways: Judicial Estoppel — A Doctrine Precluding Inconsistent Positions* (1996) 30 Loyola L.A.L.Rev. 323, 327 (hereafter *You Can't Have It Both Ways*).)

The contract/agreement entered between the parties was signed on March 24, 2011. It was and is a bilateral fully integrated Settlement and Release (DOCKET 81, PAGE 8) of all claims known or unknown for all times prior to and after the Effective Date.(DOCKET 94,  Exh.B pgs 1 & 2). The agreement was reached because of Dean

seeking money owed him by Kaiser for services rendered. Finally, during the negotiations towards settlement, Kaiser agreed to pay Dean the moneys owed but, wanted something more in exchange. It wanted the Dean's unilateral promise to never use its name or trademark in any capacity and preserve the patient information. Dean refused to agree to the unilateral term regarding trademarks unless Kaiser agreed to provide additional compensation to the Deans.    Kaiser elected not to provide additional compensation and dropped its request related to the protection of name or trademark (Exh A, Decl. Stefanelli).  Now years later, Dean, a duly licensed Data Broker, has made use of Kaiser's name/trademark on his business website. Kaiser in its Cross-Claim herein seeks to permanently enjoin Dean from so using its name/trademark or the patient information and, likewise seeks damages. There are four bases for Dean's Opposition to Kaiser's Motion for Summary Judgment.

First and foremost, Kaiser is precluded from seeking relief (**THE COURT CANNOT ADD A TERM**). Second, the agreement precludes any damage claims (**KAISER HAS NO LEGAL MECHANISM**). Third, Kaiser released its claims against the Deans in 2011, (**THIS IS NOT A NEW CLAIM**). Fourth, Kaiser has already dismissed, with prejudice, its pursuit of a permanent injunction for use and disclosure of PHI in 2013 in the California State Court action (**KAISER KNEW FORENSIC WIPING WAS NEEDED**).

I

**KAISER IS PRECLUDED FROM SEEKING THE RELIEF**

**The Court cannot add a term**. This Court has already found that the Settlement Agreement reached by the parties in 2011 is a fully integrated agreement (Docket 81 page 8). The court further noted, citing Moss Dev. Co. v. Geary, 41 Cal.App.3d 1,9  (1974) …"[C]ourts are not at liberty to read into a contract language that is demonstrably not there." This court went on, citing Von Cos. Inc. v. U.S. Fire Ins. Co., 78 Cal.App. 4Th 52, 59 "('We do not have the power to create for the parties a contract they did not make

and cannot insert language that one party now wishes were there.') (Docket 81 page 7)) It is no longer the Deans seeking to add language to a fully integrated agreement they now wish was there. It is Kaiser seeking language restricting Dean from using its name or logo for marketing purposes, the very language they willfully chose to omit from the settlement agreement when the Deans demanded additional compensation. (Decl. Stefanelli, Exh A).

This court has already ruled that it does not have the authority to do the very thing that Kaiser is seeking. ( Docket 81 page 7). Kaiser argued, in its Motion for Summary Judgment, that this court could not insert a term ( Docket 53 -1 page 18).  Kaiser cited Dameron Hosp v AAA as being instructive.  " Courts will not add a term in which the contract is silent". The courts "function is to determine what, in terms and substance , is contained in the contract, not to insert what has been omitted". Kaiser, as in the Dameron case, is contending that the Deans have an obligation to abide by language in agreements that is now superseded by the settlement agreement.(Docket 53-1 page 18)  In Dameron Hospital, past conduct could not add a new contractual term. So too here. Kaiser cannot add a term to the fully integrated bilateral Settlement Agreement/Release restricting the Deans from using the Kaiser mark for commercial purposes, or allowing Kaiser to seek to preclude the Deans from doing so.  In the Settlement Agreement/Release Kaiser specifically agreed to waive "any and all claims, actions, causes of action of any nature and for all liabilities and obligations of every kind and character arising out of or relating to the Dispute and any and all claims that were or could have been asserted relating to and or arising from any of the foregoing, regardless such claims ... have arisen  prior to the Effective Date or arise after the Effective Date."  The court cannot now graft terms that are entirely absent from the Settlement Agreement to allow Kaiser a mechanism/remedy to preclude the Deans from actions that were contemplated at the time of the signing of the Settlement Agreement and were released by Kaiser.

## II

## THE AGREEMENT PRECLUDES ANY DAMAGE CLAIMS

**Kaiser has no legal mechanism.** In its order dated 11/22/22 (Docket 81, pg 22) this Court held that because Kaiser did not show damages, it would not grant Kaiser's summary judgment associated with breach of contract. The settlement agreement is fully integrated and has no legal mechanism in which Kaiser can claim any damages even if it could prove it has sustained them. The fact is the settlement agreement section B and C affirm that both parties compromised any claims they might possess against each other on 3/24/2011 for all times prior and after the effective date. Indeed, Kaiser was well aware of potential trademark claims and potential patient information claims before signing the agreement. Instead of preserving the claims they willfully decided to omit the terms necessary to allow Kaiser to pursue such damage claims. The agreement of 3/24/2011 is doing exactly what was intended to be achieved by both parties, and specifically to preclude any future claims (Mutual Consent), including damage claims Kaiser is now attempting to insert into the fully integrated agreement. *"An essential element of any contract is 'consent.'" Flick, 60 Cal. App. 4th at 811 (quoting Cal. Civ. Code § 1550). For consent to be valid, it must be mutual. Id.; Cal. Civ. Code § 1565. "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." Flick, 60 Cal. App. 4th at 811 (quoting Cal. Civ. Code § 1580). Ultimately, "contracts must be enforced according to the 'mutual intention of the parties as it existed at the time of contracting.'" Id. (quoting Cal. Civ. Code § 1636.)" (Dckt 81, pg 9)*

Again, the fully integrated agreement between the parties is silent insofar as any prohibitive or affirmative language (Legal Mechanism) which would arguably allow Kaiser to assert a damage claim. The language Kaiser seeks to be read into the Agreement cannot be inserted. See Moss Dev. Co. v. Geary and Vons Cos. v. U.S. Fire

Ins. Co. supra. "We do not have the power to create for the parties a contract they did not make and cannot insert language one party now wishes were there".

## III.

## KAISER RELEASED ITS CLAIMS AGAINST THE DEANS IN 2011

**This is not a new claim.** Kaiser released its claims on 3/24/2011. Extrinsic evidence may "be admitted to explain the meaning of a writing when the meaning urged is one to which the contract term is reasonably susceptible or when the contract is ambiguous." Hayter Trucking, Inc. v. Shell W. E&P, Inc., 18, Cal.App. 4Th 1,15 (1993) Dean has submitted herewith the Declaration of Thomas Stefanelli ( Exhibit A ), to establish among other things, the meaning of a portion of the Settlement Agreement. The Agreement reads in it relevant part as follows:

> 3. **Settlement and Releases**. ... "shall mutually remise, release, and forever discharge each other ... from all claims, actions, causes of action of any nature and for all liabilities and obligations of every kind and character arising out of or relating to the Dispute and any and all claims that were or could have been asserted relating to and or arising from any of the foregoing, regardless such claims ... have arisen prior to the Effective Date or arise after the Effective Date."

Moreover, paragraph 3 of the Settlement Agreement included a waiver of California Civil Code Section 1542 in bold print. It reads:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor**. "

Whereas even if Kaiser could invoke California Civil Code Section 1542 as a basis for its Counterclaim against Dean, the simple fact of the matter is this: extrinsic or parole evidence (Exh. A. Decl. of Stefanelli), which is permissible for the scope of this opposition, **exposes, reveals, and cements the audacity of this claim.**

Kaiser has sought injunctive relief which this Court has granted and will issue in a separate order. In light of the evidence presented, the injunctions would go directly against the court's ruling that it would not add a term. This court would be inserting a term into a fully integrated agreement that it previously ruled it could not do. The evidence presented proves Kaiser released any trademark claims in 2011.

## IV

## KAISER ALREADY DISMISSED WITH PREJUDICE ITS PURSUIT OF A PERMANENT INJUNCTION FOR USE AND DISCLOSURE OF PHI IN 2013

**Kaiser knew forensic wiping was required**. The issue regarding seeking injunctive relief regarding use and disclosure of Patient information was dismissed with prejudice in the California State Superior Court in 2013. In 2013, as a consideration of settlement, Kaiser opted to dismiss with prejudice instead of seeking the very injunction they are now pursuing. (Dean Decl., Exht A (Kaiser Settlement conference brief). Kaiser was well aware the Deans as lay people did not have the technical skills to successfully destroy the PHI in their possession. Kaiser submitted an expert declaration in the 2013 case. (Dkt 71-3, pg 45). Kaiser's own attorney said nothing at the settlement conference about the need for forensic wiping as Kaiser had been seeking in their lawsuit for a preliminary/permanent injunction. (Dean Decl., Exh.B, KaiserReply Brief Seeking Preliminary Injunction and Freeman Decl.) The reason why Kaiser's attorney failed to bring this up to the Court during the Settlement Conference was to pursue the injunction any further would have required parole evidence to be entered. This would have exposed Kaisers release of any trademark claims. Kaiser instead opted

to circumvent the civil process by setting up the Deans for a criminal investigation. This was done by Kaiser inducing the Deans to think they were in settlement negotiations to have the patient information properly removed by a forensic expert. Kaiser executive Vita Willet contacted the Deans and was being coached by an ex Assistant US Attorney. On February 4, 2014, the Deans home was raided by the FBI. The Deans children were dragged out of bed, his wife dragged out of the shower, handcuffed, and leaned up outside against the garage door. As can be imagined the children were terrified. In 2017 the US Attorney's Office notified the Deans that no charges were going to be filed and that the Deans were no longer the target of an investigation, and the Deans computers and devices were returned with all the patient information still on them. This was all done because Kaiser refused to simply settle with the Deans back in September of 2012 for the consideration the Deans were demanding. ( Dkt 71-3, pg 18, 19, 20). The Deans are willing to have this unsealed and the US Attorney has no objection to it if the Court desires.

# CONCLUSION

For all the reasons discussed herein, it is respectfully requested that Kaiser's Motion for Summary Judgement be denied with prejudice. That the cross complaint be dismissed with prejudice. That the injunctions not be issued regarding Kaiser trademarks or uses and disclosure of patient information. And that the fee award motion be denied.

Respectfully submitted April 11, 2023 by:

Stephan Dean

Liza Dean

# EXHIBIT A

Stephan Dean
Liza Dean
37187 Bankside Drive, #2
Cathedral City, CA  92234
Telephone: (323) 314-9692

Plaintiffs and Counterdefendants in pro se

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEPHAN DEAN AND LIZA DEAN
INDIVIDUALLY AND DBA SUREFILE
FILING SYSTEM;

        Plaintiffs,

vs.

KAISER FOUNDATION HEALTH PLAN,
INC.; KAISER FOUNDATION HOSPITALS;
DOES 1-50 INCLUSIVE

        Defendants

Case No: 5:22-CV-00278-MCS-KK

**DECLARATION OF THOMAS
STEFANELLI, ESQ.**

I, Thomas Stefanelli, Esq., declare and state as follows:

1.      I am an attorney licensed to practice before all of the Courts of the State of California. I have personal knowledge of the matters and facts contained within this declaration and if called upon as a witness I could and would competently testify to said matters and facts.

2.      I am the attorney who was assisting Stephan Dean, Liza Dean and Surefile Filing System in a dispute against Kaiser Foundation Health Plan, Inc./Kaiser Foundation Hospitals back in or about 2010/2011. Specifically, Stephan Dean, Liza Dean and Surefile Filing System were threatening Kaiser Foundation Health Plan, Inc./Kaiser Foundation Hospitals with litigation

**DECLARATION OF THOMAS STEFANELLI**

related to Kaiser's failure to pay for services rendered by the Deans. On or about November 29, 2010, I, on behalf of the Stephan Dean, Liza Dean and Surefile Filing System, sent a letter to Holly Burke, Senior Counsel for Kaiser, offering on behalf of my clients to sign a release of all claims against Kaiser in return for a payment from Kaiser in the amount of $110,160.

3.      On or about December 14, 2010 I received from Holly Burke a Settlement Agreement and Release prepared by Kaiser and noted to be "for discussion purposes only". This proposed Agreement and Release was to be signed by my clients and on behalf of Kaiser Foundation Health Plan Inc. and Kaiser Foundation Hospitals. It called for the payment of $100,000 from Kaiser to my clients. It also specified as follows:

> WHEREAS, the parties to this Agreement now desire to settle and compromise any claims they might possess against the other, settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein.

> The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date.

> Non-Disclosure. The nature and terms of this Agreement shall not be disclosed by any party hereto or its agents, attorneys, or any other representative, without the prior written consent of all of the other parties; provided, however, that any party may disclose the existence of this Agreement, and the nature and terms thereof, (i) to the attorneys, accountants, and financial and tax advisors of that party, (ii) as required or compelled by law, or (iii) to enforce the provisions of this Agreement.

4.      Throughout the rest of December 2010, I, on behalf of the Deans and Surefile and Holly Burke on behalf of Kaiser continued to attempt to negotiate a settlement. On behalf of the Deans, I was demanding $110,000 (not the $100,000 mentioned in the original Settlement Agreement and Release prepared by Kaiser). I was also demanding a hold harmless clause

requiring Kaiser to indemnify and hold harmless my clients from any third party claims (due to potential HIPAA violations associated with my client having access to medical record information). I was also demanding that Kaiser eliminate a 25% holding on the settlement funds for tax purposes. Holly Burke, in turn, was demanding that the non-disclosure clause be extended to preclude disclosure of not only the nature and terms of the agreement, but also of "services provided". An amended Settlement Agreement and Release was prepared by Kaiser noted again to be for "discussion purposes only" with the offer from Kaiser noted to expire on December 29, 2010.

5.    On or about December 27, 2010 I received an amended Settlement Agreement and Release from Holly Burke from Kaiser, which was again noted to be "for discussion purposes only". The agreement called for a payment from Kaiser to my clients in the amount of $110,000, included the hold harmless clause and removed any 25% withholding for tax purposes. The new proposed agreement continued, however, to require non-disclosure by my clients not only of the nature and terms of the agreement but also of "services provided". This offer from Kaiser was again noted to expire on December 29, 2010. My clients were agreeable to the settlement at that point as written, including the fact that it was a full and complete settlement of all claims that the parties might possess against each other. The only clause that my clients did not agree to at that time was the addition made by Kaiser to the non-disclosure clause precluding my clients from disclosing "services rendered".

6.    The deadline to accept Kaiser's offer (December 29, 2010) came and went. On or about January 7, 2011 I reached out to Holly Burke advising of my clients' desire to continue settlement negotiations but specifically advised that if Kaiser wanted the additional term of the non-disclosure agreement, then additional compensation beyond the $110,000 was required.

-3-

**DECLARATION OF THOMAS STEFANELLI**

7.      On or about January 8, 2011 Holly Burke got back to me. Her email included the following:

> As you can imagine, I'm a bit disappointed we couldn't close this off last year. I fear that Mr. Dean is backing himself into a corner with little upside.

> As you are aware, my client's offer to do a complete settlement in consideration for a payment of $110,000 has expired. Sounds to me like your client never really intended to do a complete release. I had tried to be very clear that the only basis for resuming discussions with Mr. Dean last year was based on Mr. Dean's agreement to release all claims. I was quite surprised that Mr. Dean felt he had some surviving claims.

8.      My clients and I were rather confused by this email. As indicated above, my clients were agreeable to the proposed settlement agreement whereby the parties would release any and all claims against each other in return for a payment by Kaiser to my clients of $110,000. It was only Kaiser's insistence that the non-disclosure clause be extended beyond non-disclosure of the nature and terms of the agreement to include non-disclosure of "services provided" that was holding up the settlement.

9.      On or about January 10, 2011 I responded to Holly Burke as follows:

> My client remains interested in settling his claims, in total, for $110,000. His objection to going through with the settlement was in relation to confidentiality language you added to the release. One might argue that a confidentiality clause is becoming a clause routinely included in Settlement Agreements. The usual confidentiality clause relates, however, only to the terms of the settlement. I have never heard of a confidentiality clause being extended to include all dealings between the parties.

> My client has made his living for many years working for Kaiser. He is not prepared to agree to a confidentiality clause that precludes him from referring to that work history, without substantial compensation. In these economic times, it will be difficult for him to find new work. It will be almost impossible if he is precluded from giving a work history because of a

-4-

**DECLARATION OF THOMAS STEFANELLI**

1    confidentiality clause that extends beyond the terms of the
2    settlement.

3    10.    On or about January 10, 2011 Holly Burke responded to my email noted above. Now
4    produced and shown to me and marked as Exhibit "A" to this my declaration is a true copy of the
5    email that I received. As can be seen. Holly Burke indicated that my clients had, in previous
6    contracts with Kaiser Permanente, agreed not to publicize his work for KP. As can be seen, she
7    quoted language from those/that previous agreement(s). She specifically quoted as follows:
8

9        Publicity. Supplier will not, without the prior written consent of
10       Kaiser Permanente, use in advertising, publicity, on the internet or
         otherwise the names, trade names, service marks, trade dress or
11       logo of Kaiser Permanente, the Kaiser Permanente Medical Care
         Program or any affiliates of these entities or refer to the existence
12       of this Agreement in any press releases, advertising, web sites or
13       material distributed or made available to prospective customers or
         other third parties.
14

15   11.    The proposed Settlement Agreement and Release prepared by Kaiser related to this
16   ongoing dispute included the following: "Entire Agreement. This Agreement states the entire
17   agreement among the parties who have executed this Agreement and supersedes their prior
18   agreements, negotiations or understandings." In light of the fact that by the very terms of this
19   new proposed Settlement Agreement and Release, prior Agreements with Kaiser would be
20   superseded, it was my and my clients understanding that Kaiser was adding new language to the
21   proposed non-disclosure clause to prevent my clients from: "use in advertising, publicity, on the
22   internet or otherwise the names, trade names, service marks, trade dress or logo of Kaiser
23   Permanente, the Kaiser Permanente Medical Care Program or any affiliates of these entities or
24   refer to the existence of this Agreement in any press releases, advertising, web sites or material
25   distributed or made available to prospective customers or other third parties".
26
27
28

-5-

**DECLARATION OF THOMAS STEFANELLI**

1    12.    On or about January 11, 2011 I received another email from Holly Burke which

2    confirmed in my mind and the minds of my clients our understanding of the reason why Kaiser

3    was insisting on the extension of the non-disclosure clause to include "services provided". The

4    new email from Holly Burke reads in pertinent part as follows:

5

6        As I mentioned in my email last night, I believe the Publicity
         clause in the executed contract with Surefile restricts Surefile from
7        using the KP name or logo without KP consent (see email below).
         KP does not intend to modify this requirement. If Surefile wants to
8        use KP's name, Mr. Dean should contact Jules Parent in KP's
         Procurement & Supply organization, to obtain prior written
9        consent. Mr. Dean has Jules' contact info.

10

11   Now produced and shown to me and marked as Exhibit "B" to this my declaration is a true copy

12   of the January 11, 2011 email I received from Holly Burke.

13   13.    On January 12, 2011 I received another email from Holly Burke of Kaiser. It reads in

14   pertinent part as follows:

15

16       Please note that the no publicity clause applies across the board to
         all of our vendors. I believe it is enforceable as Kaiser Permanente
17       is a protected mark. I believe KP is firmly entitled to prevent a
         party from using this mark and logo for commercial purposes.
18

19   Now produced and shown to me and marked as Exhibit "C" to this my declaration is a true copy

20   of the January 12, 2011 email.

21

22   14.    On January 14, 2011 I received another email from Holly Burke at Kaiser. Now

23   produced and shown to me and marked as Exhibit "D" to this my declaration is a true copy of

24   said email. As can be seen, it became very apparent through her emails that Kaiser was very

25   concerned about the ability of my client to use the Kaiser name in any fashion. The email reads

26   in pertinent part as follows:

27

28

-6-

DECLARATION OF THOMAS STEFANELLI

I had some ideas this morning while at the gym. Just a thought - what if we modified the confidentiality clause with respect to "services" so that Dean would be precluded from disclosing confidential or proprietary info about the services, including the name of Kaiser Permanente. In effect, this would give Dean the right to talk to future prospective customers about its background providing the storage services without disclosing confidential aspects of this service or KP's name?

15.    On January 14, 2011 I received yet another email from Holly Burke from Kaiser. Again she explained that her purpose in amending the disclosure clause was to preclude my clients from using the Kaiser name. Now produced and shown to me and marked as Exhibit "E" to this my declaration is a true copy of said email.

16.    On January 14, 2011 I notified Holly Burke by email that a settlement offer of $110,000 was inadequate if Kaiser insisted on the additional term added to the non-disclosure clause. I notified that my clients were willing to accept that additional term but wanted additional compensation from Kaiser.

17.    On March 8, 2011 I sent an email to Holly Burke indicating that my clients would, in return for a payment of $110,000, sign a Settlement Agreement and Release waiving all claims and a non-disclosure clause precluding them from discussing the terms and conditions of the Agreement. If Kaiser continued to insist upon the non-disclosure clause going further, my clients would agree to sign a Settlement Agreement and Release in return for a payment of $200,000.

18.    Holly Burke from Kaiser got back to me on March 8, 2011 asking for confirmation of our two offers. Now produced and shown to me and marked as Exhibit "F" to this my declaration is a true copy of her email.

19.    On or about March 24, 2011 Kaiser elected to go with the payment of $110,000 with the Settlement Agreement only precluding disclosure of the nature and terms of the Agreement. The

**DECLARATION OF THOMAS STEFANELLI**

1    Settlement Agreement was signed by the parties and it is the Settlement Agreement and Release

2    that has been considered by this court in prior hearings in this action.

3        I declare under penalty of perjury under the laws of the State of California that the

4    foregoing is true and correct.

5

6        Dated this 20th day of March, 2023 in Palm Springs, California.

7

8

9                                                    Thomas Stefanelli, Esq.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        DECLARATION OF THOMAS STEFANELLI

EXHIBIT "A"



Subject: Re: Action: Claim of Surefile Link

Hi Tom,

I will discuss your proposal with my clients.

As an aside, I think the possibility for Surefile and Mr. Dean to find new work at KP to be relatively slim at this point. I believe his actions to withhold delivery of the patient records lacked a customer service approach. . . I also think that your client might want to check his existing contract with KP to determine if he has any rights to puchize his work for KP. I have copied and pasted the relevant language below. I would think your client may be holding on for something that can't be achieved and passing up something of value.I will get back to you.

Cheers,
Holly

. . . Agreement into the . . .

6.10Publicity. Supplier will not, without the prior written consent of Kaiser Permanente, use in advertising, publicity, on the internet or otherwise the names, trade names, service marks, trade dress or logo of Kaiser Permanente, the Kaiser Permanente Medical Care Program or any affiliates of these entities or refer to the existence of this Agreement in any press releases, advertising, web sites or materials distributed or made available to prospective customers or other third parties.

Stephan Dean . . .

EXHIBIT "B"

3/20/23, 5:09 PM                                    (5...) lawstef7771@yahoo.com - Yahoo Mail

Find messages, documents, photos or peo    Advanced ⌄

← Back    ↩    ↩    →    🗄 Archive    🗁 Move    🗑 Delete    ⊘ Spam    •••    ⌃    ⌄    ✕

Tom

--- On Tue, 1/11/11, Holly.B.Burke@kp.org
<Holly.B.Burke@kp.org> wrote:

From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
Subject: Action: Claim of Surefile
To: lawstef7771@yahoo.com
Date: Tuesday, January 11, 2011, 11:46 AM

Hi Tom,

I'm back with you. OK. My client is getting a bit frustrated and losing
confidence that we can do a final settlement. KP thinks that the offer of
$110,000 made last year was very generous. KP has calculated the value
of the total services that Surefile has claimed are yet to be paid at
$58,384.12 based on industry rates for these types of services. My client is
willing to extend the time period for the previous offer of $110,000 until
Friday, Jan. 14th at 1:30 pm PT. I believe my client is very serious that
Friday is the deadline.

I have revised the Settlement and Release Agreement to incorporate the
following changes: (a) definition of "third parties" as requested by Mr.
Dean, and (b) change of the Effective Date to Jan. 14, 2011. I have kept
the $110,000 amount in the agreement. In section, I have highlighted text
in the confidentiality clause that may give your client comfort that he is
permitted to make disclosures that are "required or compelled by law".

As I mentioned in my email last night, I believe the Publicity clause in the
executed contract with Surefile restricts Surefile from using the KP name or
logo without KP consent (see email below). KP does not intend to modify
this requirement. If Surefile wants to use KP's name, Mr. Dean should
contact Jules Parent in KP's Procurement & Supply organization, to obtain
prior written consent. Mr. Dean has Jules' contact info.

Please let me know your thoughts.

Cheers,
Holly



EXHIBIT "C"

3/20/23, 5:13 PM                                    (5,716 unread) lawstef7771@yahoo.com - Yahoo Mail

Find messages, documents, photos or pe

← Back    ◄◄    ◄◄◄    →    🗄 Archive    ▭ Move    🗑 Delete    ⊘ Spam    • • •    ▲    ▼    ✕

Inbox        5.8K

Unread

Starred

Drafts

Sent

Archive

Spam

Trash

Views

Photos

Documents

Emails to myself

Subscriptions

Shopping

Receipts

Travel

Folders



From: Holly.B.Burke@kp.org <Holly.B.Burke@kb.org>
Subject: Re: Action: Claim of Surefile
To: lawstef7771@yahoo.com
Date: Wednesday, January 12, 2011, 8:58 PM

Tom,

I would suggest a phone call. I'm available to chat tomorrow from 8:30 am -
9 am or from 10 - 11 am.

Please note that the no publicity clause applies across the board to all of
our vendors. I believe it is enforceable as Kaiser Permanente is a protected
mark. I believe KP is firmly entitled to prevent a party from using this mark
and logo for commercial purposes.

Cheers,
Holly

KAISER PERMANENTE

HOLLY BURKE
SENIOR COUNSEL
LEGAL DEPARTMENT

1800 HARRISON ST.
16TH FLOOR
OAKLAND, CA 94612

OFFICE - (510) 625 – 5679 Tie: 8-428-5679
FAX - (510) 625-5692
EMAIL –

NOTICE TO RECIPIENT:  If you are not the intended recipient of this e-mail, you are prohibited
from sharing, copying, or otherwise using or disclosing its contents.  If you have received this e-
mail in error, please notify the sender immediately by reply e-mail and permanently delete this e-
mail and any attachments without reading, forwarding or saving them.  Thank you.

Thomas Stefanelli                          To: Holly B Burke PO KAIPERM @KAIPERM

EXHIBIT "D"

(5.18 AM) lawstef7771@yahoo.com - Yahoo Mail

Find messages, documents, photos or peo



--- On Fri, 1/14/11, Holly.B.Burke@kp.org <Holly.B.Burke@kp.org> wrote:

From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
Subject: Action: Claim of Surefile
To: lawstef7771@yahoo.com
Date: Friday, January 14, 2011, 9:54 AM

Tom,

I thought I would get you this revision before hearing your response to my email last
night. I will be in some long meetings today. Since the settlement offer expires today,
I thought it might be helpful to revise the draft settlement to incorporate this proposed
change. I'm hoping that this response to your client's concerns will be well received.

I have revised the Settlement Agreement to reflect my attempt to respond to
Surefile's request that it have flexibility to talk to prospective customers about its
experience in providing offsite storage and deactivation services. With the revised
language - Surefile could disclose to prospective customers its services experience -
although Surefile would be restricted from using Kaiser Permanente's name or
disclosing confidential or proprietary info regarding KP that it obtained in the course
of providing the services. I hope this responds and addresses Surefile's concerns.

Let me know if this might work. I have attached a signature ready pdf in the event
this v.8 is acceptable.

Cheers,
Holly

KAISER PERMANENTE

HOLLY BURKE
SENIOR COUNSEL
LEGAL DEPARTMENT

1800 HARRISON ST.
18TH FLOOR
OAKLAND, CA 94612

OFFICE - (510) 625 - 5679 Tie: 8-428-5679
FAX - (510) 625-3880
EMAIL -

Discover
online
commission-
free ETFs
in our
ETF Market
Center

Learn more

EXHIBIT "E"

3/20/23, 8:22 PM                    (5.7[...]outfreed) lawstef7771@yahoo.com - Yahoo Mail

Find messages, documents, photos or peo[...]

← Back    ↩    ↩    ➔    Archive    Move    Delete    Spam    ⋯    ▲    ▼    ✕

Re: Re: Action: Claim of Surefile EXHIBIT 8                    Yahoo/Inbox



My InfoStephan Dean <surefile@msn.com>                    Fri, Mar 17 at 9:07 AM
To: Thomas Stefanelli

**From:** Thomas Stefanelli <lawstef7771@yahoo.com>
**Sent:** Friday, January 14, 2011 8:44 AM
**To:** steven dean <surefile@msn.com>
**Subject:** Fw: Re: Action: Claim of Surefile

— On Thu, 1/13/11, Holly.B.Burke@kp.org <Holly.B.Burke@kp.org> wrote:

> From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
> Subject: Re: Action: Claim of Surefile
> To: lawstef7771@yahoo.com
> Date: Thursday, January 13, 2011, 2:47 PM

Tom,
Sounds good. I was up to my armpits yesterday with work and sent the quick
availability times. I will call try and call later this afternoon.
I had some ideas this morning while at the gym. Just a thought - what if we modified
the confidentiality clause with respect to "services" so that Dean would be precluded
from disclosing confidential or proprietary info about the services, including the name
of Kaiser Permanente. In effect, this would give Dean the right to talk to future
prospective customers about its background providing the storage services without
disclosing confidential aspects of this service or KP's name?

Just a thought.

What about third party definition? Did that work?

Talk later?

Cheers,
Holly


WINTER
CHECKLIST
✓ Hot Cocoa
Wiper Blades
Winter Tires

AMERICA'S
TIRE

SHOP NOW

EXHIBIT "F"

(5.146 unread) - lawstef7771@yahoo.com - Yahoo Mail



Tom

--- On Tue, 3/8/11, Holly.B.Burke@kp.org <Holly.B.Burke@kp.org> wrote:

From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
Subject: Action: Claim of Surefile - Need Confirmation of Existing Situation
To: lawstef7771@yahoo.com
Date: Tuesday, March 8, 2011, 6:06 PM

Hi Tom,

I'm really sorry to hear about your Dad.

Thanks for getting back to me. I wanted to get confirmation on the current Dean offer. I want to minimize any confusion at this important point.

I wondered if you could confirm my understanding. As I understand the new offer, we have two options.

1. Option 1: $110K to settle with the previous language re: confidentiality. Please see Option 1 document, which is Version 9 (without additional confidentiality and publicity restrictions). I want to confirm if the document as marked was the acceptable version to go with Option 1. We would need to update the dates in this version.

2. Option 2: $200k with updated language re confidentiality, publicity and disparagement. Please see Option 2 document, which is Version 9 that I sent to you in mid-Jan. We would need to update the $ amounts and dates in this version.

Option 1 Document:

Option 2 Document:

Can you let me know if this is correct?

Thanks much,
Holly