Stephan C. Dean and Liza Dean
37187 Bankside Drive #2
Cathedral City, CA  92234
323-314-9692
Surefile@msn.com

In Pro Per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

STEPHAN DEAN and LIZA DEAN, Individually and DBA SUREFILE FILING SYSTEMS,

Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and Does 1-50 Inclusive,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 5:22-cv-00278-MCS-KK

**DECLARATION OF STEPHAN AND LIZA DEAN IN OPPOSITION OF COUNTER-CLAIMANT KAISER FOUNDATION HEALTH PLAN INC.'S MOTION FOR SUMMARY JUDGEMENT**

We, Stephan Dean and Liza Dean, do declare, we are the plaintiffs and cross defendants in this case and have personal knowledge of the matters and facts contained within this declaration and if called upon as a witness I could and would testify to said matters and facts. Over the past thirty years we have been working for Kaiser as non-employees performing various tasks involving patient information as defined under HIPAA and the CMIA. Much of the work we performed was done through verbal contracts, except for two jobs.

In 2008 Stephan Dean notified Kaiser of a potential HIPAA issue because we had no BAA as required by HIPAA and we had no contract for the services we had been rendering.  We had removed

approximately forty thousand records from the Kaiser Moreno Valley medical center to our warehouse in Indio Ca. Liza Dean was also working in the Riverside Kaiser hospital as well as Moreno Valley Kaiser on the electronic medical records (EMR). She had no contract or was not being paid for her services, we were led to believe that we were going to receive a contract for the services and this was training. Kaiser had just implemented a new EMR program called KP Health Connect.

Eventually after much pushing, we received a BAA from Kaiser dated 6/2009, it was not signed by Kaiser only dated. Eventually it was counter signed in October 2009. We still had no contract for the services we had been providing. Eventually we received a contract from Kaiser for scanning in November 2009, this was for the work that Liza had been doing in 2008. We were very appreciative of this contract because it was a official document allowing us to bill Kaiser for services rendered. The Deans were never allowed to provide the services after the contract was issued.

In late 2009 we began removing paper medical records from the Kaiser west Los Angeles medical center. This was done with no written contract. Kaiser did not know where the records were being stored, the same as the Moreno Valley records, we simply removed them. I finally put my foot down a refused to continue unless we received a written contract as well as directions on having insurance to protect the records. This was a bad decision on the Deans part. Apparently, we had embarrassed upper-level management.

Eventually Kaiser had no choice but to give us a written contract based on Liza Dean being of Hispanic heritage (Minority owned business) We were very grateful to Kaiser as this was an opportunity of a lifetime for the Deans. We had little money so to continue working for Kaiser we began selling our assets to pay for the storage and delivery of medical charts we had been storing and scanning for Kaiser. Kaiser never gave the Deans another job and eventually we ran out of money and could not continue to serve Kaiser any longer. All our assets had been sold and we had to stop delivering records to Kaiser as well as pay the costly insurance required by Kaiser.

Finally, we notified Kaiser that because of promised work through verbal agreements not being given we could no longer deliver medical records. Kaiser also owed us for storage and delivery approximately 110 thousand dollars. Kaiser cancelled the Moreno Valley agreement and the West LA agreement and demanded they get all the paper records back. A transfer agreement was signed, and Kaiser picked up all the paper records from the Deans warehouse in July 2010. Kaiser agreed to allow the Deans to pursue the money owed for the storage in the Transfer agreement.

In late 2010, I, Stephan Dean, reached out to Kaiser lawyer Holly Burke demanding payment for services rendered as Kaiser had agreed the Deans could in the Transfer agreement of July 2010. Ms. Burke refused to negotiate unless the Deans agreed to release all claims not just for services rendered but also any claims. At that time we got Thomas Stefanelli involved again to negotiate on our behalf. See ( Exh. A, Dec.Thomas Stefanelli). Eventually the Settlement agreement of March 24, 2011, was signed.

Shortly after the signing of the March 2011 agreement I reached out to MS. Burke regarding the PHI the Deans were preserving as per the agreement. We again got Mr.. Stefanelli involved, and Kaiser retained Thomas Freeman of Marion's INN to represent Kaiser. Eventually Kaiser through Mr. Freeman drafted an agreement to supersede the March 2011 agreement. (Dkt 71-3) This agreement would have resolved all the issues we are dealing with now in 2023 including Trademark and PHI issues. Unfortunately, we could not agree on consideration for the Deans to release their computers and release their claims of omissions against Kaiser. Kaiser in October 2012 went Ex Parte and sought an injunction regarding use and disclosure of PHI. Kaiser also wanted a forensic expert to have access to the Deans property to properly remove the PHI the Deans were preserving according to the March 2011 agreement. Eventually the Deans decided to delete the PHI they were preserving and on December 31, 2012, the Deans filed a declaration stating this.

Kaiser then responded and filed a reply to the Deans deletion and brought in a forensic expert as well as Kaisers attorney declaring the Deans had made clear they didn't have the ability to properly remove the

PHI. (Exhibit B) at the hearing for the preliminary injunction the court refused to give Kaiser access to the Deans computers. Kaiser never attempted to gain access again through the court. Shortly after the Deans moved for summary judgement based on the March 24, 2011, release of all claims and the agreement being fully integrated.

The hearing for the Deans Motion was heard on July 31, 2013 (DKT 71-3) the court's tentative ruling was that the motion would be granted, and argument was made. As the transcript clearly shows Kaiser had no options and the Settlement agreement precluded Kaiser from moving forward. Exhibit A) Kaiser eventually dismissed with prejudice any opportunity of getting a permanent injunction regarding use and disclosure of PHI. The reason they cut and ran was that introducing parole evidence would have exposed that they had released trademark claims in the settlement agreement. in September 2013 Kaiser dismissed the entire action with prejudice and the preliminary injunction they had secured was dismissed by the court with prejudice at Kaisers request. The Deans were confused as to why Kaiser just walked away after all they had put the Deans through. A few days later after the court dismissed the case I Stephan Dean contacted Kaisers lawyer and asked why forensic wiping was no longer required, and that we would update regulators on the outcome of the litigation. We also contacted a forensic expert who stated that the actions we took as far as deletion were futile. The expert Kaiser had brought in Richard Albee was what was needed. Kaiser instead decided to circumvent civil court and induced the Deans into thinking they wanted to settle. Kaisers attorney sent an email stating that Vita Willett the Kaiser executive who attended the settlement conference wished to speak with me regarding the emails I sent regarding the PHI. I agreed and instead of attempting settlement Ms. Willett was being coached by an ex US attorney. I was accused of extortion and on 2/4/2014 my home was raided by the FBI. My young children and wife who had nothing to do with the dispute were dragged out of bed and my wife out of the shower handcuffed and scared to death. Instead of going back to civil court Kaiser circumvented the process and got what they wanted. the Deans property and email accounts. This went on from 2014 to 2017 when the US attorney notified me that no charges would be filed, and my property was returned with everything still on it. The case troubled the public defender so much she filed a 41g motion to have our property returned but it failed so the public defender's office appealed to the ninth circuit. The case

still went nowhere, and the appeal was denied. As stated, the government finally decided no charges and the Deans were no longer a target of the investigation.  As the late Judge Pregerson noted of the Ninth circuit, sometimes an attorney will hang the sword of Damacles over a party's head, comparing what was going on. He specifically asked if Mr. Dean had ever committed a crime before and the attorney said no. Judge Pregerson said, I thought so.

The Deans agree for the case to be unsealed and the US attorney has said it would not object.  The Kaiser former and current employees and attorney are all part of this, and it is wrong.  The Deans have been dragged through all of this simply for telling Kaiser to obey HIPAA and public policy regarding their own patients.

Respectfully submitted April 11, 2023

Stephan Dean

Liza Dean

# EXHIBIT A

1   THOMAS M. FREEMAN, Cal. Bar No. 109309
    SARAH EDWARDS, Cal. Bar No. 268679
2   MARION'S INN LLP
    1611 Telegraph Avenue, Suite 707
3   Oakland, California 94612-2145
    Telephone: (510) 451-6770
4   Facsimile: (510) 451-1711
    Email: tmf@marionsinn.com
5   Email: se@marionsinn.com

6   Attorneys for Plaintiffs Kaiser Foundation
    Health Plan, Inc. and Kaiser Foundation Hospitals
7

8

9                    SUPERIOR COURT OF CALIFORNIA

10              COUNTY OF RIVERSIDE - PALM SPRINGS

11

12  KAISER FOUNDATION HEALTH PLAN, INC. )    No. INC 1207224
    and KAISER FOUNDATION HOSPITALS,     )
13                                        )    Assigned to Hon. David M. Chapman
                 Plaintiffs,              )
14                                        )    Dept. PS-2
         v.                               )
15                                        )    SETTLEMENT CONFERENCE
    STEPHAN CHRISTOPHER DEAN, LIZA        )    STATEMENT OF PLAINTIFFS
16  DEAN, DBA SUREFILE FILING SYSTEMS,    )    KAISER FOUNDATION HEALTH
    and DOES 1-10, inclusive,             )    PLAN, INC. and KAISER
17                                        )    FOUNDATION HOSPITALS
                 Defendants.              )
18  _____)    Complaint filed: October 12, 2012

19

20                                            Date: September 13, 2013
                                              Time:  10:00 a.m.
21

22          Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals submit the

23  following settlement conference statement.

24          A.      The Deans' Work for Kaiser

25          In the fall of 2008, Stephan and Liza Dean began providing services to Kaiser at its

26  Moreno Valley facility following Kaiser's acquisition of the Moreno Valley Community

27  Hospital. Initially, Kaiser needed a vendor to deactivate, catalog, and box old Moreno Valley

28  Community Hospital medical records that were located at the facility.

                                              1
    PLAINTIFFS' SETTLEMENT CONFERENCE STATEMENT
                                                             Case No. 1207224

Beginning in August 2009, the Deans began a project to transport, catalog and box old Moreno Valley Community Hospital records for Kaiser. The Deans provided these services from a warehouse facility in Indio. From time-to-time, employees in Kaiser's Medical Records Department sent requests to the Deans to pull medical records for delivery to Kaiser. Contrary to Kaiser's policies and unbeknownst to others at Kaiser at the time, some of those requests were sent via unencrypted e-mail and included PHI.

The Deans and Kaiser entered into a written service agreement dated March 12, 2010, for the West Los Angeles area, for the purpose of medical record storage and deactivation (the "West Los Angeles Agreement"). Pursuant to that agreement, the Deans agreed, among other things, to remove, prepare, deactivate, transport, store, and retrieve upon request medical charts for the Kaiser Permanente West Los Angeles Medical Center..

By June of 2010, the Deans had completed the services requested by Kaiser. A notice of termination was sent to Stephan Dean by Kaiser, along with a request to return all of the medical records. The Deans refused to allow Kaiser or its patients and members access to their medical records, or to return them, because of a dispute concerning payment for their services. Therefore, in July 2010, Kaiser notified the Deans that they were in breach of their agreements with Kaiser, and that they should (1) comply with patient requests for medical records, (2) permit Kaiser to inspect Sure File's warehouse, and (3) arrange for transfer all medical records relating to Kaiser patients and members.

Kaiser and the Deans negotiated a transfer agreement ("Sure File Transfer Agreement") to effect the transfer of possession of all of the Kaiser records in the Deans' custody to Kaiser. The Sure File Transfer Agreement was signed by Stephan Dean on July 23, 2010. Kaiser reasonably understood at the time that the Deans had returned to Kaiser all Kaiser member or patient records. Unbeknownst to Kaiser, however, the Deans retained possession of email and other electronic records with PHI of Kaiser members and patients.

B.    The March 2011 Settlement Agreement

At the time of the execution of the Sure File Transfer Agreement, Kaiser was aware that the Deans claimed that they were owed additional compensation for work they done for Kaiser.

2

1    To resolve the dispute over compensation for the Deans' services, Kaiser and Stephan Dean
2    executed a confidential settlement agreement ("Settlement Agreement") in March 2011. Kaiser
3    agreed to pay the Deans $110,000 to resolve their Dispute. The Settlement Agreement recited
4    that Kaiser's payment to the Deans would be "in full and final settlement and compromise of any
5    claims [the parties] might possess against the other, including without limitation the Dispute and
6    any counterclaims and allegations related to or in connection with the Dispute." It also stated that
7    Kaiser and Sure File agreed that "no additional money shall be due from any party, for any
8    reason whatsoever, for any obligation incurred by any party to any other party in connection with
9    the Dispute." The Settlement Agreement contained a general release and waiver of Cal. Civ.
10   Code § 1542, extending only to known and unknown claims "with respect to the Dispute."

11           C.       Stephan Dean's Post-Settlement Agreement Conduct

12           Soon after the Settlement Agreement was executed, in the summer of 2011, Stephan Dean
13   informed Kaiser for the first time that he was *still* in possession of email from Kaiser which
14   contained PHI, as well as other electronic records with PHI of Kaiser members and patients.
15   Kaiser immediately demanded that the Deans return or destroy all the electronic PHI in their
16   possession.

17           Kaiser also provided the Deans with instructions on how to remove the PHI from his
18   computers and email account(s) and offered to have the records removed by Kaiser's IT experts
19   or to engage a third-party IT security expert at Kaiser's cost to assist the Deans in this endeavor.
20   The Deans refused all these offers unless Kaiser paid them additional compensation. Despite
21   repeated requests from Kaiser to return or destroy the electronic PHI and certify having done so,
22   as required by the terms of their Business Associate Agreement with Kaiser, the Deans refused
23   and instead made repeated demands to Kaiser for additional payment. The Deans also refused to
24   provide access to the electronic PHI so that Kaiser could confirm what PHI relating to Kaiser's
25   members and patients Dean had in his possession, or recover or destroy it. Dean also refused to
26   follow instructions provided to him from Kaiser on how to remove and destroy any electronic
27   PHI still saved on the Deans' computers or other electronic devices or in their email account.
28   ///

D.    Previous Settlement Discussions

Despite Kaiser's belief that it had fully compensated the Deans for their services and despite Kaiser's belief that the Deans had no right to possess the PHI of Kaiser patients and members, Kaiser engaged in negotiations with the Deans for more than a year to secure the return or destruction of the PHI.

Kaiser initially offered the Deans $100,000 in exchange for their agreement to provide all PHI in their possession and certify such delivery or destruction under oath. In response the Deans demanded $8,000,000. Ultimately, Kaiser offered the Deans $250,000 conditioned upon execution of a comprehensive confidential settlement agreement that required, among other things, that the Deans certify under oath the return or destruction of all PHI in their possession and allow inspection of their computers and email accounts to assure deletion of the PHI. The Deans demanded $650,000 for this agreement which Kaiser rejected.

When Kaiser refused to accede to the Deans' exaggerated demands for additional payments before they would agree to return or destroy the PHI of Kaiser members and patients in their possession, the Deans engaged in tactics designed to scare Kaiser into acceding to their demands for additional compensation. For instance, the Deans claimed that Kaiser's electronic PHI was at risk of being stolen because it was stored on computers in the Deans' garage. The Deans told a reporter for the San Francisco Financial Times that the garage door had been left open accidentally, which could result in a loss of Kaiser's PHI. The Deans also threatened to contact Kaiser members and patients.

A.    The Litigation

Because of the Deans' reckless conduct and their refusal to cooperate with Kaiser's requests for the return or destruction of the Kaiser electronic PHI, or Kaiser's offers to have the PHI removed from their computers by either Kaiser IT professionals or independent third-party IT experts at Kaiser's expense, Kaiser was forced to file this lawsuit against the Deans on October 12, 2012, to secure the protection of its members' and patients' PHI.[1]  Kaiser requested

---

[1]  During the course of negotiations to secure the return of the PHI of its members and patients Mr. Dean repeatedly told counsel for Kaiser that the Deans had "nothing to lose" and were not concerned about Kaiser's threats to pursue litigation to secure the return of the PHI of its members and patients. Kaiser confirmed that the

4

1  and obtained a temporary restraining order against the Deans from this Court on October 17,
2  2012, and subsequently moved for and was granted a preliminary injunction on January 10, 2013.
3      F.    The Court's July 29, 2013 Ruling
4          In its ruling on Defendants' motion for summary judgment the Court determined that the
5  Settlement Agreement superceded all prior agreements between the parties and resolved all
6  disputes between the parties.
7      G.    Kaiser's Position Re Settlement
8          Ignoring for purposes of this settlement conference whether the Transfer Agreement and
9  the Settlement Agreement were procured by fraud on the part of the Deans by their failure to
10  return all PHI to Kaiser and whether Kaiser will file an amended complaint, it cannot reasonably
11  be disputed that Kaiser owes the Deans nothing further for their services and that the Deans have
12  settled or otherwise waived any claim against Kaiser.  Thus, continuing demands from the Deans
13  for hundreds of thousands of dollars are baseless.  Kaiser is not willing to consider such demands.
14          However, in an effort to bring this litigation to a conclusion Kaiser is willing to discuss a
15  nominal settlement payment to the Deans in exchange for either a permanent injunction
16  concerning the use and disclosure of any Kaiser PHI, or an agreement by the Deans to surrender
17  their computers and allow inspection of their email accounts to assure that all Kaiser PHI has
18  been removed.
19
20  Dated: September 5, 2013          MARION'S INN LLP
21                                    Thomas M. Freeman
                                      Sarah Edwards
22
23                                    By _____
24
                                         Thomas M. Freeman
25
26                                    Attorneys for plaintiffs Kaiser Foundation Health
                                      Plan, Inc. and Kaiser Foundation Hospitals
27
28  _____
Deans have numerous judgment liens and tax liens pending against them.

PLAINTIFFS' SETTLEMENT CONFERENCE STATEMENT          Case No. 1207224

## PROOF OF SERVICE

I, the undersigned, state:

I am over the age of eighteen and not a party to this action. My business address is 1611 Telegraph Avenue, Suite 707, Oakland, California 94612-2145, which is located in Alameda County.

On September 6, 2013 I served the following document(s):

PLAINTIFFS' SETTLEMENT CONFERENCE STATEMENT

___X___ **BY E-MAIL**. I am familiar with the business practice at my place of business for collection and processing of correspondence for delivery by electronic mail. Correspondence so collected and processed is sent from an e-mail of an employee of this firm to the e-mail address(es) of the recipient(s) listed below.

Stephan Christopher Dean
Liza Dean
surefile@msn.com

Thomas M. Stefanelli, Esq.
Law Office of Thomas M. Stefanelli
lawstef7771@yahoo.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 6, 2013

Helen Ganski

PROOF OF SERVICE

# EXHIBIT B



THOMAS M. FREEMAN, Cal. Bar No. 109309
SARAH EDWARDS, Cal. Bar No. 268679
MARION'S INN LLP
1611 Telegraph Avenue, Suite 707
Oakland, California 94612-2145
Telephone: (510) 451-6770
Facsimile: (510) 451-1711
Email: tmf@marionsinn.com
Email: se@marionsinn.com

Attorneys for Plaintiff Kaiser Foundation
Health Plan, Inc. and Kaiser Foundation Hospitals

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE - INDIO BRANCH

KAISER FOUNDATION HEALTH PLAN, INC.
and KAISER FOUNDATION HOSPITALS,

                    Plaintiffs,

            v.

STEPHAN CHRISTOPHER DEAN, LIZA
DEAN, DBA SUREFILE FILING SYSTEMS,
and DOES 1-10, inclusive,

                    Defendants.

No. INC 1207224

Assigned to Hon. Harold W. Hopp

PLAINTIFFS' REPLY RE MOTION
FOR PRELIMINARY INJUNCTION;
REPLY DECLARATION OF THOMAS
M. FREEMAN

Date:    January 10, 2013
Time:    8:30 a.m.
Dept.:   2G

Complaint filed: October 12, 2012
Trial date:  Not set

        Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals

(collectively "Kaiser" or "plaintiffs") have moved for an order enjoining defendants Stephan

Christopher Dean, Liza Dean, DBA Surefile Filing Systems (collectively "Dean" or

"defendants") from using or retaining Kaiser members' and patients' confidential protected health

information ("Protected Information") and requiring defendants to return or destroy, and then to

certify the return or destruction of all Protected Information in their possession. There is no

dispute that defendants entered into a Business Associate Agreement ("BAA") with Kaiser

which entitles Kaiser to the deletion--and confirmation of said deletion--of all Protected

Information in defendants' possession.

        On October 17, 2012 this Court entered a Temporary Restraining Order ("TRO"), which

1

KAISER'S REPLY RE MOTION FOR PRELIMINARY INJUNCTION          Case No. INC 1207224

1  prohibited defendants from accessing or using the Protected Information in their possession.

2        In an untimely submission by defendants in opposition to the motion for preliminary

3  injunction, the defendants executed a declaration on December 31, 2012, in which they claim to

4  have deleted all Protected Information in their possession. The declaration provides no details

5  describing specifically what allegedly was deleted or any explanation as to how the alleged

6  deletion was accomplished. If the statements in Dean's declaration are true, defendants have

7  violated this Court's October 17, 2012 TRO, which prohibited defendants from accessing the

8  Protected Information in their possession, much less tampering with it or deleting it.

9        Mr. Dean has previously refused Kaiser's repeated demands that he delete the Protected

10  Information and asserted defendants' lack of ability to competently delete all Protected

11  Information in their possession. See Freeman Decl. ¶ 2 and Exh. A. In light of this conduct, the

12  defendants' violation of this Court's October 17, 2012 TRO, and the privacy interests of third

13  parties at stake here, this Court should require Dean to describe under oath what specific steps

14  defendants have taken in deleting the Protected Information in their possession, and appoint a

15  forensic auditor to conduct a limited forensic inspection of the defendants' computer(s) and

16  email to confirm that all Protected Information in their possession actually has been deleted..

17  Although the cost of the forensic inspection should properly be borne by Dean as a sanction for

18  their violation of the Court's TRO, if necessary, Kaiser is willing to pay for the forensic

19  inspection by a qualified expert to protect the privacy interests of its members and patients.

20

21  **I.    DEFENDANTS HAVE FAILED TO OFFER ANY LEGITIMATE REASONS WHY KAISER'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED, AND HAVE VIOLATED THE COURT'S TRO**

22

23        Defendants filed a "Declaration of Stephan Christopher Dean, Liza Dean, DBA Surefile

24  Opposing Application for Preliminary Injunction" ("Opposition") on December 21, 2012. This

25  declaration offers no legal arguments why Kaiser's motion should be denied. Furthermore,

26  defendants claim that they "have complied fully with [the TRO] and will continue to do so."

27  (Opposition ¶ 13.) This is not true. Defendants now state they have accessed and deleted the

28  Protected Information in their possession, in blatant violation of the TRO.

In an untimely additional declaration executed on December 31, 2012, the Deans now claim to have deleted Protected Information in their possession (Supplemental Declaration of Stephan Christopher Dean, Liza Dean DBA Surefile in Support of Opposition to Preliminary Injunction ("Supplemental Declaration") ¶ 2), in violation of this Court's October 17, 2012 TRO, but fail to describe exactly what defendants allegedly deleted or explain the process they used.

Over the course of the parties' dispute, defendants have represented to Kaiser's counsel that they were unaware of how to delete the Protected Information in their possession. (Reply Freeman Decl. ¶ 2 and Exh. A.) This lack of technical knowledge, coupled with defendants' repeated conduct demonstrating their intention or willingness to risk a security breach and the unauthorized disclosure of the confidential Protected Information in violation of the parties' signed agreements if Kaiser refused to accede to a variety of ever-changing demands for additional compensation, and obvious willingness to disobey court orders, makes it reasonable for Kaiser and this Court to be skeptical that the Protected Information has been actually removed from defendants' possession.

## II. DEFENDANTS SHOULD BE ORDERED TO PROVIDE ADDITIONAL INFORMATION

In light of defendants' conduct, professed lack of knowledge as to how to delete the Protected Information in their possession, and violation of this Court's TRO, defendants should be required to provide detail as to what Protected Information they had in their possession, where it was stored, and the process they undertook to supposedly delete the Protected Information.

Kaiser respectfully requests that this Court order Dean to provide detailed information under oath (1) identifying every computer and ancillary device (e.g., hard drive, thumb drive, etc) on which defendants ever received or stored any Protected Information; (2) identifying any e-mail account(s) on which defendants have ever received, or transmitted, or saved Protected Information; and (3) describing each step defendants have taken to allegedly delete the Protected Information from defendants' files, devices, and e-mail accounts.

KAISER'S REPLY RE MOTION FOR PRELIMINARY INJUNCTION                    Case No.  INC 1207224

**III.   A COURT-APPOINTED FORENSIC AUDITOR SHOULD REVIEW THE ACTIONS TAKEN BY DEFENDANTS TO ENSURE THAT ALL PROTECTED INFORMATION IS ACTUALLY DELETED**

Kaiser has submitted the declaration of forensic auditor Richard L. Albee, founder and President of DataChasers® Incorporated, a forensic computer evidence discovery company, in which he explains the process which he would undertake in deleting the Protected Information in defendants' possession completely and competently.  Mr. Albee will also be in attendance at the January 10, 2013 hearing on this matter to answer any questions the Court may have at that time.  Mr. Albee is competent and qualified to review the detailed information defendants are ordered to produce, and determine whether, based on Dean's description, Protected Information in Dean's possession was actually deleted.  If the forensic auditors determine that the actions taken by Dean to allegedly delete all Protected Information in defendants' possession were insufficient to actually effect such a deletion, Mr. Albee can either (1) complete this process himself; or (2) provide detailed instructions to defendants as to how to complete this process completely and competently.  Once defendants have allegedly done so, the Court should order a forensic inspection to ensure that it has been accomplished.

As explained in Mr. Albee's declaration, if DataChasers® Incorporated were ordered to execute or complete the deletion process, they are capable of performing a targeted search and deletion which creates no risk of harm to defendants' own files, and involves very minimal intrusion into Dean's e-mail accounts, focusing only on those messages sent to or received from anyone at Kaiser. (Albee Decl. ¶¶ 27-30.)

**IV.   CONCLUSION**

Defendants have offered no meaningful opposition to plaintiffs' motion for a preliminary injunction.  Instead they have admitted violating this Court's TRO.  In light of the defendants' conduct and the significant privacy interests of Kaiser's members and patients and the strong public policy favoring protection of confidential personal health information, the Court should grant Kaiser's motion for a preliminary injunction and further order a forensic inspection of

4

defendants' computer(s) and ancillary devices and email accounts, at defendants' expense, to confirm or complete the deletion of all Protected Information in defendants' care, custody and control

Respectfully submitted,

Dated: January 4, 2013

MARION'S INN LLP
THOMAS M. FREEMAN
SARAH EDWARDS

By _____
Sarah Edwards

Attorneys for Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals

KAISER'S REPLY RE MOTION FOR PRELIMINARY INJUNCTION                    Case No.  INC 1207224

# DECLARATION OF THOMAS M. FREEMAN

I, Thomas M. Freeman, declare:

1.    I am a partner of the law firm of Marion's Inn LLP, counsel for plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively referred to for convenience as "Kaiser"). I am a licensed attorney admitted to practice in the Courts of the State of California. I have personal knowledge of the matters set forth in this Declaration and could and would testify to them if called as a witness.

2.    Over the last year and half I have exchanged numerous emails and letters and had numerous conversations with Mr. Stephan Dean in an effort to obtain his agreement to comply with his obligations under the Business Associate Agreement ("BAA") he signed with Kaiser. In September 2011, Mr. Dean and I had several conversations in which we specifically discussed the deletion of emails he claimed to have in his possession that included Protected Information as that term is defined in the BAA. In our conversations Mr. Dean told me that he did not know how to remove the Protected Information from his computer and email account. When he refused Kaiser's offer to delete the Protected Information at no expense to him without payment of additional compensation from Kaiser I sent him a letter on October 14, 2011 directing Mr. Dean to two sources for information and instructions on the deletion of the Protected Information After receiving my letter Mr. Dean called me and told me (1) he would not delete the Protected Information using the instructions provided in my letter and (2) that he did not believe any actions he took would be sufficient to assure that the Protected Information had been effectively removed from his computer or his email accounts.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 4, 2013

Thomas M. Freeman

KAISER'S REPLY RE MOTION FOR PRELIMINARY INJUNCTION                    Case No. INC 1207224

**PROOF OF SERVICE**

I, the undersigned, state:

I am over the age of eighteen and not a party to this action. My business address is 1611 Telegraph Avenue, Suite 707, Oakland, California 94612-2145, which is located in Alameda County.

On January 4, 2013 I served the attached document(s):

PLAINTIFFS' REPLY RE MOTION FOR PRELIMINARY INJUNCTION; REPLY DECLARATION OF THOMAS M. FREEMAN

DECLARATION OF RICHARD L. ALBEE

___X___ **BY EXPRESS SERVICE CARRIER**. I am familiar with the business practice at my place of business for collection and processing of correspondence for delivery by an overnight express service carrier. Correspondence so collected and processed is placed in a sealed envelope, with delivery fees paid or provided for, addressed to the recipient(s) listed below, and deposited in a designated express service mail box that same day in the ordinary course of business.

___X___ **BY E-MAIL**. I am familiar with the business practice at my place of business for collection and processing of correspondence for delivery by electronic mail. Correspondence so collected and processed is sent from an e-mail of an employee of this firm to the e-mail address(es) of the recipient(s) listed below.

Stephan Christopher Dean
Liza Dean
DBA Surefile Filing Systems
C/O Joanne Dean
43 Calle Del Sol
Palm Springs CA 92264
surefile@msn.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 4, 2013

Caitlin Thompson

KAISER'S REPLY RE MOTION FOR PRELIMINARY INJUNCTION                    Case No.  INC 1207224

1              INDIO, CALIFORNIA; JANUARY 10, 2012

2             BEFORE THE HONORABLE HAROLD W. HOPP

3       THE COURT:  Kaiser Foundation versus Dean.

4       MR. FREEMAN:  Good morning, your Honor.

5        Thomas M. Freeman, Marion's Inn, for plaintiffs,

6  Kaiser Foundation Health Plan and Kaiser Foundation Hospitals.

7       THE COURT:  Good morning.

8       MR. DEAN:  Good morning, Stephan and Lisa Dean, the

9  defendants.

10       THE COURT:  Good morning.

11       Okay.  Counsel for plaintiff, you requested argument.

12       MR. FREEMAN:  Not argument, your Honor, just a point

13  of clarification.

14       We had submitted a proposed preliminary injunction

15  order.  It seems consistent with the Court's tentative, and --

16       THE COURT:  Do you have a copy of that?

17       MR. FREEMAN:  I do have a copy of that.

18       THE COURT:  Mr and Mrs. Dean have you seen that?

19       MR. DEAN:  No, your Honor.

20       MR. FREEMAN:  It was submitted with our moving papers.

21  It was submitted with our moving papers in October.  I don't

22  have a copy for them, but they could look at it.

23       MR. DEAN:  I am sorry, your Honor.  We have received

24  them.

25       THE COURT:  Give that back to deputy sheriff.

26       Any objection to the form of the order?

27       MR. DEAN:  Yes, we do.

28       THE COURT:  What?

1          MR. DEAN:  We don't agree to any of the things that

2     you ruled on yesterday as far as them having access to our

3     computers or e-mail accounts.

4          MR. FREEMAN:  From our perspective, your Honor --

5          THE COURT:  Why is there -- this first page has

6     printing on both sides of the page.

7          MR. FREEMAN:  I am sorry, your Honor.  I thought the

8     Court had a copy of this in its file, and I did not bring an

9     extra copy.  I am happy to go down and make one.

10         THE COURT:  It looks like the same thing on both sides

11    of the page.  Why do we need a certification in writing?  Why

12    is that an appropriate part of the preliminary injunction?  And

13    why do we need access to their computers for the preliminary

14    injunction?

15         MR. FREEMAN:  Two reasons, your Honor.

16         First, the business associate agreement that the Deans

17    signed with Kaiser requires them to provide a certification of

18    the return or destruction of the protected information.

19         THE COURT:  You think that's something that could be

20    enforced by a preliminary injunction?  I thought the point of

21    the preliminary injunction was to prevent harm.  In other

22    words, they either destroyed information, or don't use it.  But

23    how does certifying to you that they have done something or

24    giving you access to their computers avoid irreparable injury?

25         MR. FREEMAN:  Well, so long as the Court's satisfied

26    that they have done or will do what he --

27         THE COURT:  Take discovery on that, and find out they

28    complied.  I don't see how it is appropriate for me to, as part

1    of a preliminary injunction, essentially order them to provide

2    discovery such as making them give you access to computers or

3    give a sworn statement under oath.

4           If you want information, go ahead and take discovery.

5    What am I missing?

6           MR. FREEMAN:  Well, we have propounded discovery, your

7    Honor.  We requested the Deans to provide us access to the

8    protected information, and according to the declaration that

9    they provided, in opposition to our motion, they, under penalty

10   of perjury, said he had destroyed that information.  Now,

11   that's in violation.

12          THE COURT:  Yet another reason you don't need that as

13   part of the preliminary injunction, right?

14          MR. FREEMAN:  Well, the point of getting the temporary

15   restraining order was to enjoin these parties from using or

16   accessing the protected information.

17          THE COURT:  You will forgive me, but it is hard for me

18   to understand how you could consider that you asked for a

19   preliminary injunction telling them to destroy the information,

20   and then you're complaining that they somehow acted improperly

21   what you asked for them in an injunction, are requiring them to

22   do.

23          MR. FREEMAN:  We don't know that they did that, your

24   Honor.

25          THE COURT:  I understand that.  You are telling me

26   that they violated the temporary restraining order by doing the

27   very thing that you wanted an injunction requiring them to do.

28   That does not make any sense, does it?  Right?

1          MR. FREEMAN:  They have done it, and we will take
2     discovery on that, your Honor.
3          THE COURT:  Okay.  I am deleting the last two
4     paragraphs of the proposed preliminary injunction.
5          Do you have any other objection?
6          MR. DEAN:  Your Honor, basically the order that you
7     issued yesterday.
8          THE COURT:  I did not issue an order.  I issued a
9     tentative ruling.
10          MR. DEAN:  We have no problem with that.  We have
11     already done basically everything.  We only have one question
12     to that.
13          THE COURT:  Okay.
14          MR. DEAN:  It has to do with a bond for $7,500.
15          THE COURT:  Why do you think that amount is not
16     appropriate?
17          MR. DEAN:  I don't understand who is supposed to --
18          THE COURT:  They are.
19          MR. DEAN:  Okay.  Thank you.
20          THE COURT:  Counsel for plaintiff, if you could file
21     that downstairs.
22          MR. FREEMAN:  Thank you, your Honor.
23          THE COURT:  Do we have any other business today?
24          MR. FREEMAN:  We don't.
25          THE COURT:  Thank you, folks.
26          MR. FREEMAN:  Thank you.
27               (Proceedings concluded.)
28

SUPERIOR COURT - STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

KAISER FOUNDATION,                          )
                                            )
                    Plaintiff,              )
        vs.                                 )
                                            )   Case No. INC1207224
STEPHAN CHRISTOPHER DEAN, et al.,           )
                                            )
                    Defendant.              )
 _____           )

REPORTER'S TRANSCRIPT OF HEARING ON PRELIMINARY INJUNCTION

Before the Honorable Harold W. Hopp

January 10, 2013

APPEARANCES:

FOR THE PLAINTIFF:          IN PROPRIA PERSONA


FOR THE DEFENDANT:          MARION'S INN, LLP
                            BY:  THOMAS M. FREEMAN,
                            1611 Telegraph Avenue
                            Suite 707
                            Oakland, California  94612


REPORTED BY:                JEANNE L. CROW, CSR 5096

<u>REPORTER'S CERTIFICATE</u>

KAISER FOUNDATION                           )
                         Plaintiff,         )   Case No. INC1207224
                                            )
            vs.                             )
                                            )
                                            )
STEPHAN CHRISTOPHER DEAN, et al.,           )
                                            )
                         Defendants.        )
_____     )


     I, JEANNE L. CROW, Certified Shorthand Reporter No.
5096, hereby certify:

     On January 10, 2013, in the county of Riverside, state
of California, I took in stenotype a true and correct report
of the proceedings had in the above-entitled case, pages 1-9,
and that the foregoing is a true and accurate transcription of
my stenotype notes, and is the whole thereof.

Dated Indio, California, January 10th, 2013.




_____
JEANNE L. CROW, CSR NO. 5096




                    JEANNE L. CROW, CSR #5096