Stephan C. Dean and Liza Dean
37187 Bankside Drive #2
Cathedral City, CA 92234
323-314-9692
Surefile@msn.com

In Pro Per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHAN DEAN and LIZA DEAN, Individually and DBA SUREFILE FILING SYSTEMS,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and Does 1-50 Inclusive,<br><br>Defendants. | Case No.: 5:22-cv-00278-MCS-KK<br><br>**STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN DISPUTE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with Plaintiff and Counter-claimant's Opposition to Defendants and Counter Claimant's Motion; Memorandum of Points and Authorities; Declaration of Thoms Stefanelli; Declaration of Stephan and Liza Dean; Request for Judicial Notice]<br><br>Hearing:<br>Date: May 8, 2023<br>Time: 9:00 a.m.<br>Courtroom: 7C |

Pursuant to Local Rule 56-2, Plaintiffs and Counter-Defendants Stephan Dean and Liza Dean dba Surefile Filing Systems (collectively, "the Deans") hereby submit the following Statement of Genuine Issues of Material Fact in Dispute in Opposition to the Motion for Summary Judgment.

The facts below correspond to the facts and supporting evidence presented in the Statement of Uncontroverted Facts submitted by Counterclaimants (collectively "Kaiser") and are augmented at the end by additional material facts and supporting evidence showing additional genuine issues of disputed material fact.

1

| | Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|---|
| 1. | Kaiser is a non-profit public benefit corporation that provides health care services to its members through Kaiser Foundation Hospitals (a nonprofit public benefit corporation) and eight independent medical groups.<br><br>Supporting Evidence<br><br>Order on Kaiser's Motion for Summary Judgment, Dkt. 81 ("MSJ Order") at 2; Dkt. 22 (Kaiser's Counterclaims), ¶ 11; Dkt. 26 (the Deans' Answer), ¶ 11. | Undisputed |
| 2. | Between 2008 and 2010, Kaiser entered into agreements with the Deans under which the Deans scanned and stored Kaiser's patients' private medical records.<br><br>Supporting Evidence<br><br>MSJ Order at 2; Dkt. 1-1 (the Dean's Compl), ¶ 6; Dkt. 22 (Kaiser's Counterclaims), ¶ 17; Dkt. 26 (the Deans' Answer), ¶ 17; Burke Decl. ¶ 2, Exhs. A, B | Undisputed |
| 3. | Under the parties' 2009 Business Associate Agreement, Kaiser permitted the Deans to use the patients' medical records solely in connection with the "scanning services" they were performing.<br><br>Supporting Evidence<br><br>Burke Decl. ¶ 3, Exh. C, ¶ 2, p. 7. | Disputed. The 2009 Business Associate Agreement is superseded by the March 2011 Settlement Agreement. The Court has ruled this Agreement is fully integrated. The March 2011 Settlement Agreement requires the Deans to preserve the patient's medical information. |

| Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|
| | Supporting Evidence March 2011 Settlement Agreement, ¶ 18. Exh A Dkt 81 (Ruling Summary Judgement), pg. 8 |
| 4. Under the parties' 2009 Business Associate Agreement, upon termination of the business relationship between Kaiser and the Deans, the Deans are required to "return or destroy" all patient information and "shall retain no copies of such" information. Supporting Evidence Burke Decl. ¶ 3. Exh. C. ¶ 2. p. 4. | Disputed. The 2009 Business Associate Agreement is superseded by the March 2011 Settlement Agreement. The Court has ruled this Agreement is fully integrated. The March 2011 Settlement Agreement requires the Deans to preserve the patient's medical information. Supporting Evidence March 2011 Settlement Agreement. ¶ 18. Exh A Dkt 81 (Ruling Summary Judgement), pg. 8 |
| 5. After Kaiser turned over thousands of patient records to the Deans to scan and store, the parties' relationship soured Supporting Evidence MSJ Order at 2: Burke Decl. ¶ 4. Exh. D: Dkt. 1-1 (the Deans' Complaint), ¶¶ 6–9 | Undisputed |
| 6. In 2011, the parties entered into a settlement agreement to resolve their then-dispute (the "Settlement Agreement"). | Disputed. The Settlement Agreement resolved all claims. |

3

| Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|
| Supporting Evidence<br>MSJ Order at 2; Burke Decl. ¶ 4, Exh. D; Dkt. 1-1 (the Deans' Complaint), ¶ 9, Exh. 1. | both prior to the effective date and after, including unknown claims.<br>Supporting Evidence<br>Settlement Agreement, ¶ 3; Dkt. 81, p 8 (MSJ Ruling) |
| 7. The Settlement Agreement sets forth the discrete services the Deans performed in connection with the scanning and storage of Kaiser patient medical records, and describes that a dispute arose over the amount of payment owed for those services.<br>Supporting Evidence<br>MSJ Order at 2–3; Burke Decl. ¶ 4, Exh. D; Dkt. 1-1 (the Deans' Complaint), ¶ 9, Exh. 1. | Undisputed. A dispute did arise over payment of services rendered.<br>Disputed. The then dispute, at Kaiser's behest, included the Dean's use of the Kaiser trademarks.<br>Supporting Evidence<br>Stefanelli Decl. Dkt. 94, ¶ 10, Exh A. |
| 8. Kaiser paid the Deans a total of $110,000 for any obligation incurred, and the parties mutually released each other for all claims arising out of that dispute.<br>Supporting Evidence<br>MSJ Order at 2; Burke Decl. ¶ 4, Exh. D; Dkt. 1-1 (the Deans' Complaint), ¶ 9 & Exh. 1, ¶¶ 1, 3. | Undisputed. Kaiser did pay the Deans $110,000.<br>Disputed. The parties mutually released all claims, including, future trademark claims as well as any violations of HIPAA or the CMIA<br>Supporting Evidence<br>Stefanelli Decl. Dkt. 94, pg 9; Settlement Agreement, ¶ 3 |
| 9. Through the Settlement Agreement, the Deans agreed to | Undisputed |

4

Case No. 5:22-cv-00278-MCS-KK

| | Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|---|
| | keep the patient information in the records confidential.<br><br>Supporting Evidence<br><br>MSJ Order at 2; Burke Decl. ¶ 4, Exh. D; Dkt. 1-1 (the Deans' Complaint), ¶ 9, Exh. 1, ¶ 13. | |
| 10. | The Settlement Agreement requires the Deans to "take appropriate steps to preserve all confidential information in the medical records handled by Dean during the course of providing Services as required by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq. [("CMIA")], Health Insurance Portability and Accountability Act [("HIPAA")], and the parties' Business Associate Agreement of June 24, 2009."<br><br>Supporting Evidence<br><br>MSJ Order at 2; Burke Decl. ¶ 4, Exh. D; Dkt. 1-1 (the Deans' Complaint), ¶ 9 & Exh. 1, ¶ 13. | Undisputed |
| 11. | The Settlement Agreement has an integration clause. Among other things, that clause states that the Settlement Agreement "states the entire agreement among the parties," that it "supersedes the [parties'] prior agreements, negotiations or understandings," and that the Deans "acknowledge[d] and agree[d] that no other party, nor agent, nor attorney of any of the parties made any promise, representation or warranty, express or implied, not set forth in this Agreement."<br><br>Supporting Evidence<br><br>MSJ Order at 2–3; Burke Decl. ¶ 4, Exh. D; Dkt. 1-1 (the Deans' Complaint), ¶ 9, Exh. 1 ¶ 18. | Undisputed |

| | **Moving Party's Alleged Uncontroverted Facts** | <u>Response</u> |
|---|---|---|
| 12. | The Settlement Agreement did not end the Deans' threats to disclose patient data or their attempts to extract more money from Kaiser. The Deans have spent more than a decade relentlessly attempting to illegally profit off the patient data they improperly kept when their contracts with Kaiser ended.<br><u>Supporting Evidence</u><br>Burke Decl. ¶ 5. | Disputed.<br><u>Supporting Evidence</u><br>Dean Decl. |
| 13. | At the hearing where Kaiser agreed to dismiss a prior case with the Deans, the Deans specifically represented to the state court that they did "not have any patient information belonging to any Kaiser patient at all," and if they found any electronic records with patient information they would "destroy it, delete it."<br><u>Supporting Evidence</u><br>Burke Decl. ¶ 6, Exh. E; Request for Judicial Notice, Exh. A. | Undisputed. The Deans as lay people agreed to return paper records, which was done in July 2010, and delete if they found anything they had not already deleted on 12/31/2012. Kaiser was well aware of the Deans inability to proper delete and destroy the patient information. |
| 14. | On or around August 24, 2021, the Deans registered the domain name and operated a website thereon advertising the sale of medical records of Kaiser Permanente's members and patients.<br><u>Supporting Evidence</u><br>MSJ Order at 3; Dkt. 22 (Kaiser's Counterclaims), ¶ 19; Dkt. 26 (the Deans' Answer), ¶ 19. | Undisputed. The Deans registered a domain name and operated a website.<br>Disputed. The Deans **did not** offer to sell medical records of Kaiser members and patients. The "Supporting Evidence" says **nothing** of sale of medical records. |

| | **Moving Party's Alleged Uncontroverted Facts** | **Response** |
|---|---|---|
| 15. | The website on advertised "access to thousands of current and past Kaiser Permanente members and patients." <br> **Supporting Evidence** <br> MSJ Order at 3; Dkt. 22 (Kaiser's Counterclaims), ¶ 20, Exh. D; Dkt. 26 (the Deans' Answer), ¶ 20. | Undisputed |
| 16. | The website on stated: "We can provide you with lists that contain": "Patients' name"; "Medical record number"; "Date of birth"; and "Date of when the patient was admitted into a specific facility." <br> **Supporting Evidence** <br> MSJ Order at 3; Dkt. 22 (Kaiser's Counterclaims), ¶ 20, Exh. D; Dkt. 26 (the Deans' Answer), ¶ 20. | Undisputed |
| 17. | The website on stated: "[o]ur company can provide a great deal of information for attorneys, doctors, pharmaceutical companies and insurance brokers by providing access to this exclusive Kaiser Permanente market." <br> **Supporting Evidence** <br> MSJ Order at 3; Dkt. 22 (Kaiser's Counterclaims), ¶ 20, Exh. D; Dkt. 26 (the Deans' Answer), ¶ 20. | Undisputed |
| 18. | The website on listed Kaiser's phone number and genuine website domain name to "opt out." <br> **Supporting Evidence** <br> MSJ Order at 3; Dkt. 22 (Kaiser's Counterclaims), ¶ 20, Exh. D; Dkt. 26 (the Deans' Answer), ¶ 20. | Undisputed |
| 19. | The website included a submission form for prospective customers to communicate with the Deans. <br> **Supporting Evidence** | Undisputed |

| | Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|---|
| | Dkt. 22 (Kaiser's Counterclaims), ¶ 20, Exh. D; Dkt. 26 (the Deans' Answer), ¶ 20. | |
| 20. | To further the purported legitimacy of the Deans' actions, the website also included a favorable client review by a client named "Cesar J.," who described the "wonderful experience" and "options" that the Deans' business provided to him.<br><br>Supporting Evidence<br><br>Dkt. 22 (Kaiser's Counterclaims), ¶ 20, Exh. D; Dkt. 26 (the Deans' Answer), ¶ 20. | Undisputed. |
| 21. | When Kaiser demanded that the Deans take down their website, the Deans sought $1,000,000 or more from Kaiser for a sale of the Deans' "computers" and "business," telling Kaiser that "[t]he six-figure ship left port several years ago."<br><br>Supporting Evidence<br><br>Burke Decl. ¶ 7. | Undisputed |
| 22. | The Internet Corporation for Assigned Names and Numbers' ("ICANN") Uniform DomainName Dispute-Resolution Policy ("UDRP") provides a streamlined and relatively inexpensive mechanism to have a domain name registration cancelled or transferred.<br><br>Supporting Evidence<br><br>Burke Decl. ¶ 8; Declaration of Catherine Maxson ("Maxson Decl.") ¶ 3. | Undisputed |
| 23. | On October 15, 2021, Kaiser filed a complaint with the National Arbitration Forum ("NAF") for transfer of the | Undisputed |

| | **Moving Party's Alleged Uncontroverted Facts** | **Response** |
|---|---|---|
| | domain name pursuant to the UDRP.<br><br>Supporting Evidence<br><br>MSJ Order at 3; Dkt. 22 (Kaiser's Counterclaims), ¶ 22; Dkt. 26 (the Deans' Answer), ¶ 22. | |
| 24. | In December 2021, after full briefing on the matter, a three-person arbitration panel granted Kaiser's complaint and ordered that be transferred to Kaiser.<br><br>Supporting Evidence<br><br>MSJ Order at 3; Dkt. 22 (Kaiser's Counterclaims), ¶ 23, Exh. F; Dkt. 26 (the Deans' Answer), ¶ 23. | Disputed. The panel did not get a full briefing. Parole evidence. Declaration of Thomas Stefanneli, was not a part of the briefing. This declaration shows that trademarks were part of the release in the Settlement Agreement.<br><br>Supporting Evidence<br><br>Stefanelli Decl, Exh C |
| 25. | The Deans assert that they registered with the Attorney General of California as a data broker, and that in connection with their business as a data broker, the Deans planned and still do plan to sell the data remaining on their computer relating to Kaiser patients.<br><br>Supporting Evidence<br><br>Dkt. 1-1 (the Deans' Complaint), ¶ 17. | Undisputed |
| 26. | The Deans assert that they registered the domain name "in order to conduct" their business of selling Kaiser's patients' medical data.<br><br>Supporting Evidence<br><br>Dkt. 1-1 (the Deans' Complaint), ¶ 18. | Disputed. The evidence shows "specified data", not patients' medical data. |

| **Moving Party's Alleged Uncontroverted Facts** | **Response** |
|---|---|
| 27. Kaiser challenged the Deans' domain name registration under the UDRP to prevent the Deans' sale of its members' healthcare information.<br><br>Supporting Evidence<br><br>Dkt. 1-1 (the Deans' Complaint), ¶ 37 (asserting that Kaiser brought the UDRP action to prevent the Deans from conducting their business as a data broker); Burke Decl. ¶ 9. | Disputed. Kaiser challenged the domain name registration under the UDRP, not to stop the sale of patient information, but to prevent use of their trademark and name on the website <khpealthconnectusa.com>.<br><br>Supporting Evidence<br><br>Maxson Decl. ¶ 4 |
| 28. Kaiser's action of having the Deans' domain name transferred under the UDRP was separate from and predated its pursuit of counterclaims in this action.<br><br>Supporting Evidence<br><br>Burke Decl. ¶ 11. | Undisputed |
| 29. Kaiser incurred more than $9,000 in fees and costs in pursuing its UDRP action.<br><br>Supporting Evidence<br><br>Burke Decl. ¶ 12, Exh. G; Maxson Decl. ¶ 7, Exh. A. | Undisputed |
| 30. The Deans launched a website on the domain name <patientlist.org> with the same content as that included on <kphealthconnectusa.com>.<br><br>Supporting Evidence<br><br>MSJ Order at 4; Dkt. 22 (Kaiser's Counterclaims), ¶ 24; Dkt. 26 (the Deans' Answer), ¶ 24. | Undisputed |
| 31. The website on <patientlist.org> advertised access to Kaiser's patient names, medical record numbers, birth dates, and treatment dates and locations. | Undisputed.<br>Disputed. Treatment dates are not advertised. |

10

Case No. 5:22-cv-00278-MCS-KK

| | Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|---|
| | Supporting Evidence<br>MSJ Order at 4; Dkt. 22 (Kaiser's Counterclaims), ¶ 24; Dkt. 26 (the Deans' Answer), ¶ 24. | |
| 32. | The footer of the website on directed consumers to "contact Kaiser Permanente member services at (800)-464-4000 or visit KP.org" if they wish to opt out of the sale.<br>Supporting Evidence<br>MSJ Order at 4; Dkt. 22 (Kaiser's Counterclaims), ¶ 24; Dkt. 26 (the Deans' Answer), ¶ 24. | Undisputed |
| 33. | In connection with their offer to sell patient data through their websites, the Deans also registered with the State of California as a data broker on the California Data Broker Registry.<br>Supporting Evidence<br>Dkt. 1-1 (the Deans' Complaint), ¶ 37; Declaration of John Burns ("Burns Decl.") ¶ 3, Exh. B; Burke Decl. ¶ 14, Exh. I. | Undisputed. |
| 34. | The Deans asserted in their complaint that "[i]n connection with his business as a data broker, DEAN planned and still does plan to sell the data remaining on his computer relating to KAISER patients."<br>Supporting Evidence<br>Dkt. 1-1 (the Deans' Complaint), ¶ 17. | Undisputed. |
| 35. | The Deans have selected "KP Healthconnect" as their name in their incomplete registration to act as a data broker in California, and the Deans listed the domain name as their data broker business website. | Undisputed. |

| | **Moving Party's Alleged Uncontroverted Facts** | <u>Response</u> |
|---|---|---|
| 36. | The Deans' incomplete registration to act as a data broker in California instructs consumers to "[c]ontact Kaiser member services 1(800)-464- 4000 or visit KP.Org" to opt out of the data sale, demand deletion of information posted online, or learn about data collecting practices.<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 3, Exh. B; Burke Decl. ¶ 14, Exh. I. | Undisputed. |
| 37. | Upon learning of the Deans' data broker registration, Kaiser immediately contacted the Deans' then-counsel and informed him that the Deans have no "right to sell or disclose any patient data that he obtained by virtue of providing services to Kaiser."<br><br>Supporting Evidence<br><br>Declaration of John Krave ("Krave Decl.") ¶ 3, Exh. A. | Undisputed |
| 38. | Kaiser also contacted the California Attorney General's Office to inform the office of the Deans' improper data broker registration and to make clear that the Deans were "not authorized . . . to sell or disclose any Kaiser Permanente data."<br><br>Supporting Evidence<br><br>Krave Decl. ¶ 5, Exh. B. | Undisputed |
| 39 | On February 16, 2022, the Deans' counsel explicitly threatened to sell patient information, stating the Deans "have a customer who will purchase information of 100 West LA Kaiser patients on an ongoing basis." | Disputed. There was no "threat" made. This is purely Mr. Burns' opinion and speculation. |

| | Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|---|
| | Supporting Evidence<br>Burns Decl. ¶ 2, Exh. A. | |
| 40. | The Deans have never identified the customer referenced in the February 16, 2022 email.<br>Supporting Evidence<br>Burns Decl. ¶ 2. | Undisputed |
| 41. | On August 9, 2022, a California resident named Ross Dreyer emailed the Deans through the email address the Deans used in their data broker registration. Pursuant to the CCPA, Mr. Dreyer demanded that the Deans: (i) not sell his information; and (ii) delete all information that the Deans have about him. The Deans responded that they would not honor Mr. Dreyer's request.<br>Supporting Evidence<br>Burns Decl. ¶ 4; Declaration of Ross Dreyer ("Dreyer Decl.") ¶ 3, Exh. A. | Undisputed |
| 42. | Upon learning of the Deans' communications with Mr. Dreyer—and in particular the Deans' refusal to stop selling Mr. Dreyer's information—Kaiser's counsel contacted the office within the California Attorney General's Office responsible for administering the California Data Broker Registry and asked it to take down the Deans' data broker registration.<br>Supporting Evidence<br>Burns Decl. ¶ 4; Burke Decl. ¶ 16. | Undisputed. |
| 43. | Kaiser requested that the California Attorney General's Office take down the Deans' data broker registration to try | Undisputed |

| Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|
| to prevent the Deans' sale of Kaiser's members' healthcare information.<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 4; Burke Decl. ¶ 17. | |
| 44. Kaiser's counsel contacted the Attorney General's Office to remedy and mitigate the consequences of the Deans' breach of the Settlement Agreement by offering for sale Kaiser's patients' medical data.<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 4; Burke Decl. ¶ 17. | Disputed. The Deans did not breach the Settlement Agreement by offering to sale patients' data. There are no limitations on the Deans use of the data.<br><br>Supporting Evidence<br><br>Exh A, (Settlement Agreement) ¶ 18 |
| 45. Kaiser's counsel's communications with the Attorney General's Office was not in pursuit of this action.<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 4; Burke Decl. ¶ 17. | Undisputed. |
| 46. Kaiser's counsel contacted the Attorney General's Office to obtain the immediate removal of the Deans' data broker registration from the California Data Broker Registry.<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 4; Burke Decl. ¶ 17. | Undisputed. |
| 47. After Kaiser's counsel contacted the California Attorney General's Office about the Deans' data broker registration, the Attorney General's Office removed the Deans' business from the California Data Broker Registry.<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 4; Burke Decl. ¶ 17. | Disputed. The Attorney General's Office did not remove the Deans business because of Kaiser's request. Rather, it was removed because the Deans did not pay registration fee for 2022. |

| Moving Party's Alleged Uncontroverted Facts | | Response |
|---|---|---|
| | | which was due January of 2023. |
| 48. | Kaiser incurred several hundred dollars in costs and fees in attempting to remedy and mitigate the Deans' threatened sale of Kaiser's patient data by having the Deans' data broker registration removed from the California Data Broker Registry.<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 5, Exh. C; Burke Decl. ¶ 17, Exh. J. | Undisputed. |
| 49. | On November 22, 2022, the Court granted partial summary judgment in Kaiser's favor on Kaiser's causes of action against the Deans. On Kaiser's trademark and unfair competition claims, the Court found that Kaiser is entitled to a permanent injunction and reserved judgment as to damages. On Kaiser's breach of contract claim, the Court held that the Deans breached the Settlement Agreement by offering for sale Kaiser's patients' medical data.<br><br>Supporting Evidence<br><br>MSJ Order at 13–21. | Undisputed |
| 50. | Despite the Court's summary judgment order, the Deans contend that they will continue to use Kaiser's trademarks and sell Kaiser's patient data once this case has ended.<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 6, Exhs. E, F | Disputed. The Deans will abide by the 2011 Settlement Agreement. As well as any direction from this court. |
| 51. | On February 13, 2023, the Deans sent an email to Kaiser's counsel stating that "[p]atient data is a hot commodity."<br><br>Supporting Evidence<br><br>Burns Decl. ¶ 6, Exhs. E, F. | Undisputed |

Case No. 5:22-cv-00278-MCS-KK

| Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|
| 52. The Deans assert in discovery that they are permitted under HIPAA to sell "a person's first and last name." <br> **Supporting Evidence** <br> Burns Decl. ¶ 6, Exh. F. Responses to RFAs 1–9. | Undisputed. |
| 53. The Deans assert in discovery that they have the right to possess and sell Kaiser's patients' information. <br> **Supporting Evidence** <br> Burns Decl. ¶ 6, Exh. F. Responses to RFAs 1–9. | Undisputed. |
| 54. After granting Kaiser's motion to strike, the Court ordered the Deans to pay $50,804.89 in attorneys' fees incurred by Kaiser in connection with the motion. <br> **Supporting Evidence** <br> Dkts. 31, 33, 34. | Undisputed |
| 55. The Deans have not paid the attorneys' fees that the Court ordered them to pay, and now assert that they are "financially unable" to pay the Court's attorneys' fee award order or "any substantial portion of it." <br> **Supporting Evidence** <br> Dkt. 50 at 3, 8. | Undisputed |
| 56. HIPAA and CMIA include strict prohibitions on the use, sale, or other disclosure of healthcare information, and HIPAA and CMIA violations are punishable by civil penalties. A covered entity cannot accurately forecast whether a penalty might be imposed for a business associate's violation or the amount of the potential penalty until the violation occurs. <br> **Supporting Evidence** | Undisputed. |

Case No. 5:22-cv-00278-MCS-KK

| | Moving Party's Alleged Uncontroverted Facts | Response |
|---|---|---|
| | Burke Decl. ¶ 18. | |
| 57. | HIPAA imposes several obligations on covered entities when a violation occurs. A covered entity cannot accurately forecast the costs it might incur in responding to a business associate's violation until it occurs.<br><br>Supporting Evidence<br><br>Burke Decl. ¶ 18 | Undisputed. |
| 58. | HIPAA empowers the Department of Justice to pursue a number of criminal penalties against persons who knowingly use, obtain, or disclose identifiable health information in violation of HIPAA. By threatening the sale of Kaiser's patients' information through their data broker business, the Deans are threatening to commit a crime. In addition, the Deans have given the false impression that Kaiser has authorized their illegal acts. This potentially damages Kaiser's reputation and goodwill. Kaiser cannot accurately forecast the damages attributable to reputational harm and loss of goodwill until the violation occurs, at the earliest.<br><br>Supporting Evidence<br><br>Burke Decl. ¶ 19. | Undisputed. The Department of Justice may pursue criminal penalties.<br><br>Disputed. The selling of certain patient information through a data broker is not a crime.<br><br>Supporting Evidence<br><br>Attorney General website. CCPA |

## CONCLUSIONS OF LAW

This court has deemed the Settlement Agreement fully integrated and a party or the Court cannot add a term. Because of the Courts ruling any damages Kaiser may claim, they are precluding from asserting. Therefore, even if a breach has occurred, damages cannot be inserted.

Based on this Kaiser's cross-complaint should be dismissed with prejudice.

Respectfully submitted April 11, 2023.

_/s/_____

Stephan Dean


_/s/_____

Liza Dean