1  Stephan Dean
   Liza Dean
2  37187 Bankside Drive, #2
   Cathedral City, CA  92234
3  Telephone: (323) 314-9692

4  Plaintiffs and Counterdefendants in pro se

5

6                    UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8                                          )
9  STEPHAN DEAN AND LIZA DEAN              )  Case  No: 5:22-CV-00278-MCS-KK
   INDIVIDUALLY  AND DBA SUREFILE          )
10 FILING SYSTEM;                          )
                                           )  **DECLARATION OF THOMAS**
11              Plaintiffs,                 )  **STEFANELLI, ESQ.**
                                           )
12      vs.                                )
                                           )
13 KAISER FOUNDATION HEALTH PLAN,          )
   INC.; KAISER FOUNDATION HOSPITALS;      )
14 DOES 1-50 INCLUSIVE                     )
                                           )
15              Defendants                 )
                                           )
16                                          )
17 _____)

18

19      I, Thomas Stefanelli, Esq., declare and state as follows:

20 1.        I am an attorney licensed to practice before all of the Courts of the State of California.

21 I have personal knowledge of the matters and facts contained within this declaration and if called

22 upon as a witness I could and would competently testify to said matters and facts.

23 2.        I am the attorney who was assisting Stephan Dean, Liza Dean and Surefile Filing

24 System in a dispute against Kaiser Foundation Health Plan, Inc./Kaiser Foundation Hospitals

25 back in or about 2010/2011.  Specifically, Stephan Dean, Liza Dean and Surefile Filing System

26 were threatening Kaiser Foundation Health Plan, Inc./Kaiser Foundation Hospitals with litigation

27

28

                              **-1-**
                              **DECLARATION OF THOMAS STEFANELLI**

related to Kaiser's failure to pay for services rendered by the Deans.  On or about November 29, 2010, I, on behalf of the Stephan Dean, Liza Dean and Surefile Filing System, sent a letter to Holly Burke, Senior Counsel for Kaiser, offering on behalf of my clients to sign a release of all claims against Kaiser in return for a payment from Kaiser in the amount of $110,160.

3.      On or about December 14, 2010 I received from Holly Burke a Settlement Agreement and Release prepared by Kaiser and noted to be "for discussion purposes only".  This proposed Agreement and Release was to be signed by my clients and on behalf of Kaiser Foundation Health Plan Inc. and Kaiser Foundation Hospitals.  It called for the payment of $100,000 from Kaiser to my clients.  It also specified as follows:

> WHEREAS, the parties to this Agreement now desire to settle and compromise any claims they might possess against the other, settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein.
>
> The Settlement Funds shall be in full and final settlement and compromise of any claims they might possess against the other, including without limitation the Dispute and any counterclaims and allegations related to or in connection with the Dispute for all times prior to and after the Effective Date.
>
> Non-Disclosure.  The nature and terms of this Agreement shall not be disclosed by any party hereto or its agents, attorneys, or any other representative, without the prior written consent of all of the other parties; provided, however, that any party may disclose the existence of this Agreement, and the nature and terms thereof, (i) to the attorneys, accountants, and financial and tax advisors of that party, (ii) as required or compelled by law, or (iii) to enforce the provisions of this Agreement.

4.      Throughout the rest of December 2010, I, on behalf of the Deans and Surefile and Holly Burke on behalf of Kaiser continued to attempt to negotiate a settlement.  On behalf of the Deans, I was demanding $110,000 (not the $100,000 mentioned in the original Settlement Agrccmcm dllll Rclca e prepared by Kaiser).  I was also aemanamg a hola harmless clause

-2-

**DECLARATION OF THOMAS STEFANELLI**

requiring Kaiser to indemnify and hold harmless my clients from any third party claims (due to potential HIPAA violations associated with my client having access to medical record information). I was also demanding that Kaiser eliminate a 25% holding on the settlement funds for tax purposes. Holly Burke, in turn, was demanding that the non-disclosure clause be extended to preclude disclosure of not only the nature and terms of the agreement, but also of "services provided". An amended Settlement Agreement and Release was prepared by Kaiser noted again to be for "discussion purposes only" with the offer from Kaiser noted to expire on December 29, 2010.

5.      On or about December 27, 2010 I received an amended Settlement Agreement and Release from Holly Burke from Kaiser, which was again noted to be "for discussion purposes only". The agreement called for a payment from Kaiser to my clients in the amount of $110,000, included the hold harmless clause and removed any 25% withholding for tax purposes. The new proposed agreement continued, however, to require non-disclosure by my clients not only of the nature and terms of the agreement but also of "services provided". This offer from Kaiser was again noted to expire on December 29, 2010. My clients were agreeable to the settlement at that point as written, including the fact that it was a full and complete settlement of all claims that the parties might possess against each other. The only clause that my clients did not agree to at that time was the addition made by Kaiser to the non-disclosure clause precluding my clients from disclosing "services rendered".

6.      The deadline to accept Kaiser's offer (December 29, 2010) came and went. On or about January 7, 2011 I reached out to Holly Burke advising of my clients' desire to continue settlement negotiations but specifically advised that if Kaiser wanted the additional term of the non-disclosure agreement, then additional compensation beyond the $110,000 was required.

**DECLARATION OF THOMAS STEFANELLI**

7.          On or about January 8, 2011 Holly Burke got back to me.  Her email included the following:

> As you can imagine, I'm a bit disappointed we couldn't close this off last year. I fear that Mr. Dean is backing himself into a corner with little upside.
>
> As you are aware, my client's offer to do a complete settlement in consideration for a payment of $110,000 has expired. Sounds to me like your client never really intended to do a complete release. I had tried to be very clear that the only basis for resuming discussions with Mr. Dean last year was based on Mr. Dean's agreement to release all claims. I was quite surprised that Mr. Dean felt he had some surviving claims.

8.    My clients and I were rather confused by this email.  As indicated above, my clients were agreeable to the proposed settlement agreement whereby the parties would release any and all claims against each other in return for a payment by Kaiser to my clients of $110,000.  It was only Kaiser's insistence that the non-disclosure clause be extended beyond non-disclosure of the nature and terms of the agreement to include non-disclosure of "services provided" that was holding up the settlement.

9.    On or about January 10, 2011 I responded to Holly Burke as follows:

> My client remains interested in settling his claims, in total, for $110,000.  His objection to going through with the settlement was in relation to confidentiality language you added to the release. One might argue that a confidentiality clause is becoming a clause routinely included in Settlement Agreements. The usual confidentiality clause relates, however, only to the terms of the settlement. I have never heard of a confidentiality clause being extended to include all dealings between the parties.
>
> My client has made his living for many years working for Kaiser. He is not prepared to agree to a confidentiality clause that precludes him from referring to that work history, without substantial compensation. In these economic times, it will be difficult for him to find new work. It will be almost impossible if he is precluded from giving a work history because of a

-4-

**DECLARATION OF THOMAS STEFANELLI**

1   confidentiality clause that extends beyond the terms of the
2   settlement.

3   10.    On or about January 10, 2011 Holly Burke responded to my email noted above.  Now

4   produced and shown to me and marked as Exhibit "A" to this my declaration is a true copy of the

5   email that I received.  As can be seen, Holly Burke indicated that my clients had, in previous

6   contracts with Kaiser Permanente, agreed not to publicize his work for KP.  As can be seen, she

7   quoted language from those/that previous agreement(s).  She specifically quoted as follows:

8

9   Publicity.  Supplier will not, without the prior written consent of
10  Kaiser Permanente, use in advertising, publicity, on the internet or
    otherwise the names, trade names, service marks, trade dress or
11  logo of Kaiser Permanente, the Kaiser Permanente Medical Care
    Program or any affiliates of these entities or refer to the existence
12  of this Agreement in any press releases, advertising, web sites or
    material distributed or made available to prospective customers or
13  other third parties.

14

15  11.    The proposed Settlement Agreement and Release prepared by Kaiser related to this

16  ongoing dispute included the following: "Entire Agreement.  This Agreement states the entire

17  agreement among the parties who have executed this Agreement and supersedes their prior

18  agreements, negotiations or understandings." In light of the fact that by the very terms of this

19  new proposed Settlement Agreement and Release, prior Agreements with Kaiser would be

20  superseded, it was my and my clients understanding that Kaiser was adding new language to the

21  proposed non-disclosure clause to prevent my clients from: "use in advertising, publicity, on the

22  internet or otherwise the names, trade names, service marks, trade dress or logo of Kaiser

23  Permanente, the Kaiser Permanente Medical Care Program or any affiliates of these entities or

24  refer to the existence of this Agreement in any press releases, advertising, web sites or material

25  distributed or made available to prospective customers or other third parties".

26

27

28

-5-

**DECLARATION OF THOMAS STEFANELLI**

12.     On or about January 11, 2011 I received another email from Holly Burke which confirmed in my mind and the minds of my clients our understanding of the reason why Kaiser was insisting on the extension of the non-disclosure clause to include "services provided". The new email from Holly Burke reads in pertinent part as follows:

> As I mentioned in my email last night, I believe the Publicity clause in the executed contract with Su.refile restricts Surefile from using the KP name or logo without KP consent (see email below). KP does not intend to modify this requirement. If Surefile wants to use KP's name, Mr. Dean should contact Jules Parent in KP's Procurement & Supply organization, to obtain prior written consent. Mr. Dean has Jules' contact info.

Now produced and shown to me and marked as Exhibit "B" to this my declaration is a true copy of the January 11, 2011 email I received from Holly Burke.

13.     On January 12, 2011 I received another email from Holly Burke of Kaiser. It reads in pertinent part as follows:

> Please note that the no publicity clause applies across the board to all of our vendors. I believe it is enforceable as Kaiser Permanente is a protected mark. I believe KP is firmly entitled to prevent a party from using this mark and logo for commercial purposes.

Now produced and shown to me and marked as Exhibit "C" to this my declaration is a true copy of the January 12, 2011 email.

14.     On January 14, 2011 I received another email from Holly Burke at Kaiser. Now produced and shown to me and marked as Exhibit "D" to this my declaration is a true copy of said email. As can be seen, it became very apparent through her emails that Kaiser was very concerned about the ability of my client to use the Kaiser name in any fashion. The email reads in pertinent part as follows:

-6-
**DECLARATION OF THOMAS STEFANELLI**

I had some ideas this morning while at the gym. Just a thought - what if we modified the confidentiality clause with respect to "services" so that Dean would be precluded from disclosing confidential or proprietary info about the services, including the name of Kaiser Permanente. In effect, this would give Dean the right to talk to future prospective customers about its background providing the storage services without disclosing confidential aspects of this service or KP's name?

15.     On January 14, 2011 I received yet another email from Holly Burke from Kaiser. Again she explained that her purpose in amending the disclosure clause was to preclude my clients from using the Kaiser name. Now produced and shown to me and marked as Exhibit "E" to this my declaration is a true copy of said email.

16.     On January 14, 2011 I notified Holly Burke by email that a settlement offer of $110,000 was inadequate if Kaiser insisted on the additional term added to the non-disclosure clause. I notified that my clients were willing to accept that additional term but wanted additional compensation from Kaiser.

17.     On March 8, 2011 I sent an email to Holly Burke indicating that my clients would, in return for a payment of $110,000, sign a Settlement Agreement and Release waiving all claims and a non-disclosure clause precluding them from discussing the terms and conditions of the Agreement. If Kaiser continued to insist upon the non-disclosure clause going further, my clients would agree to sign a Settlement Agreement and Release in return for a payment of $200,000.

18.     Holly Burke from Kaiser got back to me on March 8, 2011 asking for confirmation of our two offers. Now produced and shown to me and marked as Exhibit "F" to this my declaration is a true copy of her email.

19.     On or about March 24, 2011 Kaiser elected to go with the payment of $110,000 with the Settlement Agreement only precluding disclosure of the nature and terms of the Agreement. The

-7-

**DECLARATION OF THOMAS STEFANELLI**

1  Settlement Agreement was signed by the parties and it is the Settlement Agreement and Release

2  that has been considered by this court in prior hearings in this action.

3        I declare under penalty of perjury under the laws of the State of California that the

4  foregoing is true and correct.

5

6        Dated this 20th day of March, 2023 in Palm Sp • s, California.

7

8                                                     Thomas Stefanelli, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-

**DECLARATION OF THOMAS STEFANELLI**

EXHIBIT "A"

MAIL      NEWS      FINANCE      SPORTS      ENTERT"-INMENT      LIFE      SEARCH      SHOPPING      ⋮    f    |    PL.US      Joarade NO'(I

Find messages, documents, photos or peo    Advanced ∨                                                    Home

Compose                    Back    <    ◆        ⊔⊔ Archive   h    Move    ⅲ Delete    O Spam        .... ,,    X    🗐 🗎 🗏 ❓ ⚙

Inbox               5.8K
Unread                                              Subject Re: Action: Claim of Surefilelink
Starred
Drafts              444
Sent                            Hi Tom,
r.chive
Spam                            I will discuss your proposal with *my* clients.
Trash
⌄ Less                          As an aside, I think the possibility for Surefile and **Mr.** Dean to find new
                                work at KP to be relatively slim at this point. I believe his actions to
Views        Hide               withhold delivery of the patient records lacked a customer service
                                approach ...... I also think that your client might want to check his existing
‼ Photos                        contract with KP to determine if he has any rights to publicize his work for
⬭ Documents                     KP. I have copied and pasted the relevant language below. I would think
⋱⁛ Emails to myself             your client may be holding on for something that can't be achieved and
    Subscriptions               passing up something of value.I will get back to you.

◯ Shopping                      Cheers.
                                Holly
ⓐ Receipts
+ Travel                        ┌─────────────────────────────────────────────┐
                                │ p. ◂ - Agreemenl # PS.10438                   │
Folders      Show               │                                               │
                                │ **6.l0Publicty**. Supplier **wlll not**, without the prior │
                                │ **written consent of Kaiser Permanente**, use **in** │
                                │ advertising, publicity, **on** the internet or otherwise │
                                │ the names, trade names, service marks, trade dress │
                                │ or logo of Kaiser Permanente, the Kaiser      │
                                │ Permanente Medical Care Program *or* any affiliates │
                                │ of these entities or refer to the existence of this │
                                │ Agreement in any press releases, advertising, web │
                                │ sites *or* materials distributed or made available to │
                                │ prospective customers or other third parties.  │
                                │                                               │
                                │ ,........ o... .;u.,vnt1 l (r\f..i;..Jf.i. , ;tr-1 │
                                │ Vffi""9~JIl6JI|l                               │
                                └─────────────────────────────────────────────┘

EXHIBIT "B"

3/20/23, 5:09 PM
(5,755 unread) - lawstef7771@yahoo.com - Yahoo Mail
Case 5:22-cv-00278-MCS-kk    Document 128-2    Filed 10/11/24    Page 12 of 20    Page ID #:2434

MAIL    NEWS    fINANCI:    SPORTS    ENTERTAINMENT    SEARCH    SHOPPING    . ょ . Ⅰ . P1,US   uourade Now

Find messages, documents, photos or peo    Advanced  v    Home

Comuose-    Back    (    +    M Archive  h    Move    jjj Delete    O Spam    •    X    m • m    o    o

| Inbox | 5.8K |
| --- | --- |
| Unread | |
| Starred | |
| Drafts | |
| Sent | |
| Archive | |
| Spam | |
| Trash | |
| ** Less | |

| Views | Hide |
| --- | --- |
| !!! Photos | |
| ● Documents | |
| ∴ , Emails to myself | |
| ii:. Subscriptions | |
| II Shopping | |
| EI Receipts | |
| + Travel | |

Folders    Show

Tom

-- On **Tue, 1/11/11, Holly.B.Burke@kp.org** *<Holly.B.Burke@kp.org>* wrote:

From: Holly.B.Burke@kp.org  <Holly.B.Burke@kp.org>
Subject: Action: Claim of Surefile
To: 1awstef7771@yahoo.com
Date: Tuesday, January 11, 2011, 11:46 AM

Hi Tom,

I'm back with you. OK. My client is getting a bit frustrated and losing confidence that we can do a final settlement. KP thinks that the offer of $110,000 made last year was very generous. KP has calculated the value of the total services that Surefile has claimed are yet to be paid at $58,384.12 based on industry rates for these types of services. My client is willing to extend the time period for the previous offer of $110,000 until Friday, Jan. 14th at 1:30 pm PT. I believe my client is very serious that Friday is the deadline.

I have revised the Settlement and Release Agreement to incorporate the following changes: (a) definition of "third parties" as requested by Mr. Dean; and (b) change of the Effective Date to Jan. 14, 2011. I have kept the $110,000 amount in the agreement. In addition, I have highlighted text in the confidentiality clause that may give your client comfort that he is permitted to make disclosures that are "required or compelled by law".

As I mentioned in my email last night, I believe the Publicity clause in the executed contract with Surefile restricts Surefile from using the KP name or logo without KP consent (see email below). KP does not intend to modify this requirement. If Surefile wants to use KP's name, Mr. Dean should contact Jules Parent in KP's Procurement & Supply organization, lo obtain prior written consent. Mr. Dean has Jules' contact info.

Please let me know your thoughts.

Cheers,
Holly



Hotels, restaurants & attractions

GREATER PALM SPRINGS

TOURISM
FOUNDATION

✈ LEARN MORE

EXHIBIT "C"



HOME    MAIL    HEWS    FINANCE    SPORTS    ENTERTAINMENT    LIFE    SEARCH    SHOPPING    •" , r  PLUS    Upqradt Now

Find messages, documents, photos or peo    Advanced    ∨                    Home

Comnose          Back    <    •    |||  Archive    ↗ Move    ☷ Delete    ○ Spam    ....... X

Inbox            5.8K                                                      *
Unread                          Re: Re: Action: Claim of Surefile EXHIBIT 8              Yahoo/Inbox
Starred
                          **My InfoStephan Dean** <surefile@msn.com>    i:i    Fri, Mar 17 at 9:07 AM
Drafts                    **To:** Thomas Stefanelli                                  *
Sent
Archive                   **From:** Thomas Stefanelli <1awstef7771@yahoo.com>
Spam                      **Sent:** Friday, January 14, 20118:44 AM
Trash                     **To:** steven dean <surefile@msn.com>
,.., Less                 **Subject:** Fw: Re: Action: Claim of Surefile

Views      Hide           -- On Thu, 1/13/11, Holly.B.Burke@kp.org <Holly.B.Burke@kp.org> wrote:
m Photos
  Documents                   From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
'.', Emails to myself         Subject: Re: Action: Claim of Surefile
                              To: lawstef7771@yahoo.com
1:;; Subscriptions            Date: Thursday, January 13, 2011, 2:47 PM
|| Shopping                   Tom,
m Receipts                    Sounds good. I was up to my armpits yesterday with work and sent the quick
+ Travel                      availability times. I will call try and call later this afternoon.
                              I had some ideas this morning while at the gym. Just a thought - what if we modified
Folders    Show               the confidentiality clause with respect to "services" so that Dean would be precluded
                              from disclosing confidential or proprietary info about the services, including the name
                              of Kaiser Permanente. In effect, this would give Dean the right to talk to future
                              prospective customers about its background providing the storage services without
                              disclosing confidential aspects of this service or KP's name?

                              Just a thought.

                              What about third party definition? Did that work?

                              Talk later?

                              Cheers,
                              nlb,

WINTER CHECKLIST
✓ Hot Cocoa
☐ Wiper Blades
☐ Winter Tires

AlllRlt«s·

SHOP NOW

EXHIBIT "D"

3/20/23, 5:13 PM                          (5,755 unread) - lawstef7771@yahoo.com - Yahoo Mail

HOI·'llE        MAil      IllEWS        FINANCE        SPORTS      ENTERTAINI/'/ENT        LIFE        SEARCH        SIIOPPING        · · I · PLUS      Upgrade Now

Find messages, documents, photos or peo      Advanced  ∨                                      Home

Comoosl1·          Back        (    ♦    M  Archive    b    Move    iii  Delete    0  Spam    … .., X

Inbox          5.8K
Unread                    From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
Starred                   Subject: Re: Action: Claim of Surefile
Drafts         -14·1      To:lawstef7771@yahoo.com
Sent                      Date: Wednesday, January 12, 2011, 6:59 PM
Archive
Spam                      Tom,
Trash
..._ Less                 I would suggest a phone call. I'm available to chat tomorrow from 8:30 am -
                          9 am or from 10 - 11 am.
Views          Hide
                          Please note that the no publicity clause applies across the board to all of
r!'.! Photos              our vendors. I believe it is enforceable as Kaiser Permanente is a protected
 Documents                mark. I believe KP is firmly entitled to prevent a party from using this mark
·, , , Emails to myself   and logo for commercial purposes.
 Subscriptions
|| Shopping               Cheers,
EI Receipts               Holly
-+ Travel

Folders        Show       KAJSER PERMANENTE.

                          HOLLY BURKE
                          SE/IIOR COUNSEL
                          LEGAL DEPARTMENT

                          .ta00.l:tARRISOti.S..
                          18""FLOOR
                          OAKLAND, CA 94612

                          OFFICE - (510) 625 - 5679·ï.ï.W,ï 8-428-5679
                          FAX - (510) 625-2882
                          EMAIL   HQu·..B.Bt.p1Sfi(PvP.O%·

                          NOTICE TORECIPIENT: If youare not the intended recipient of this e-mail, youare prohibited
                          from sharing, copying,or otheiwise usingor disclosing itscontents.  If youhave received this e-
                          mailln error, please notifythe sender immediately by reply e-mail and permanently delete this e-
                          mailand any attachments without reading, forwarding or saving them.  Thank you.

                          Thomas Stefanelli              To Holly B Burke/PO/KAIPERM@KAIPERM

EXHIBIT "E"

3/20/23, 5:29 PM                                    (5,754 unread)-1awstef7771@yahoo.com - Yahoo Mail

MA.IL          FINA.NCE      SPOR, S       ENTERTAINMENT      LIFE     SEARCH     SHOPPING        ;     ⊦ hUS     Upgrade New

Find messages, documents, photos or peo     Advanced  v                                              Heme

Comoose          f- Back      (    •    |‖ Archive   ‖ Move   ‖ Delete   O Spam   ······ X   m 1111 ‖! f) -0

| Inbox | 5.8K |
|---|---|
| Unread | |

-- On Fri, **1/14/11, Holly.B.Burke@kp.org** *<Hol/y.B.Burke@kp.org>* wrote:

From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
Subject: Action: Claim of Surefile
To:lawstef7771@yahoo.com
Date: Friday, January 14, 2011, 9:54AM

Tom,

I thought I would get you this revision before hearing your response to my email last night. I will be in some long meetings today. Since the settlement offer expires today, I thought it might be helpful to revise the draft settlement to incorporate this proposed change. I'm hoping that this response to your client's concerns will be well received.

I have revised the Settlement Agreement to reflect my attempt to respond to Surefile's request that it have flexibility to talk to prospective customers about its experience in providing offsite storage and deactivation services. With the revised language - Surefile could disclose to prospective customers its services experience - although Surefile would be restricted from using Kaiser Permanente's name or disclosing confidential or proprietary info regarding KP that it obtained in the course **of providing the services. I hope this responds and addresses Surefile's concerns.**

Let me know if this might work. I have attached a signature ready pdf in the event this v.8 is acceptable.

Cheers,
Holly

**KAISER PERMANENTE**®  ●

**HOLLY BURKE**
SENIOR COUNSEL
LEGAL DEPAR'TMENT

180O.HAP.RISOttSr,
18¹ᵗFLOOR
OAKL.ANO, CA 94612

OmcE- (510) 625 - 5679:::U : 8-428-5679
FAX - (510) 625-2882
EMAIL -

‖!] AmerHrade'

Discover online commission- free ETFs in our ETF Market Center

Learn more
+ Important .Information

EXHIBIT "F"

YOIVIE    MAIL    NEWS    FINANCE:.    SPORTS    ENTERTAINMENT    UFE    SEARCH    SHOPPINC    Yahoo PLUS    Upgrade Now

Find messages, documents, photos or peo    Advanced   ∨

Home

Back    <    +    ii  Archive  b    Move    ii  Delete    O  Spam    … .,.. X

**Inbox**          5.8K

Unread

Starred

Drafts

Sent

Archive

Spam

Trash

--- Less

**Views**          Hide

   Photos

a  Documents

··  Emails to myself

Subscriptions

Shopping

Receipts

Travel

**Folders**        Show

Tom

--- On **Tue, 3/8/11, Holly.B.Burke@kp.org** *<Holly.B.Burke@J<p.org>* wrote:

> From: Holly.B.Burke@kp.org <Holly.B.Burke@kp.org>
> Subject: Action: Claim of Surefile - Need Confirmation of Existing Situation
> To: lawstef7771@yahoo.com
> Date: Tuesday, March 8, 2011, 6:06 PM
>
> Hi Torn,
>
> I'm really sorry lo hear about your Dad.
>
> Thanks for getting back to me. I wanted to get confirmation on the current Dean offer. I want to minimize any confusion at this important point.
>
> I wondered if you could confirm my understanding. As I understand the new offer, we **have two options.**
>
> 1. Option 1: $110K to settle with the previous language re: confidentiality. Please see Option 1 document, which is Version 9 (without additional confidentiality and publicity restrictions). I want to confirm if the document as marked was the acceptable version to go with Option 1. We would need to update the dates in this version.
>
> 2. Option 2: $200k with updated language re confidentiality, publicity and disparagement. Please see Option 2 document, which is Version g that I sent to you in mid-Jan. We would need to update the$ amounts and dates in this version.
>
> **Option 1 Document:**
>
> **Option 2 Document:**
>
>
> Can youlet me know if this is correct?
>
> Thanks much,
> Holly