Stephan C. Dean and Liza Dean
37187 Bankside Drive #2
Cathedral City, CA  92234
323-314-9692
Surefile@msn.com

In Pro Per

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHAN DEAN and LIZA DEAN, Individually and DBA SUREFILE FILING SYSTEMS, <br><br> Plaintiffs, <br><br> v. <br><br> KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and Does 1-50 Inclusive, <br><br> Defendants. | Case No.: 5:22-cv-00278-MCS <br><br> **DECLARATION OF STEPHAN C DEAN AND LIZA D DEAN, DBA SUREFILE FILING SYSTEMS IN SUPPORT OF RELIEF UNDER FRCP 60(B) REQUEST FOR JUDICIAL NOTICE** <br><br> **Honorable Mark C. Scarsi** <br> **Date:  November 18, 2024** <br> **Time:  9:00 a.m.** <br> **Courtroom: 7C** |

## DECLARATION OF STEPHAN C DEAN AND LIZA D DEAN, DBA SUREFILE FILING SYSTEMS

We, Stephan C Dean and Liza D Dean, DBA Surefile Filing Systems, declare as follows:

1.  We are the plaintiffs in this case and have firsthand knowledge of the following facts, and if called as a witness, could and would testify competently thereto.

2. On October 12, 2012, Kaiser Foundation Health Plan and Kaiser Foundation Hospital filed a civil action in the state of California, Riverside County Superior Court case no. RSC INC 1207224 attached hereto Exhibit 1 is a true and correct copy  request for judicial notice.

3. On July 31, 2013, the court held a hearing on the Deans Motion for Summary judgement based on the courts tentative ruling regarding the parties settlement agreement of March 24, 2011. Attached hereto is a transcript of that hearing Exhibit 2 request for judicial notice.

4. On August 20, 2013, the state issued its final ruling on the Deans Motion for Summary Judgement. Hereto is a true and correct copy of that ruling exhibit 3 request for judicial notice.

5. On September 13, 2013, Kaiser Foundation Health plan and Kaiser Foundation Hospital dismissed with prejudice the entire complaint and the preliminary injunction issued by the court regarding use and disclosure of PHI was vacated by the court.

We declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on October 4, 2024

_/S/Stephan C Dean and Liza D Dean_____

Stephan C Dean and Liza D Dean

# EXHIBIT 1

THOMAS M. FREEMAN, Cal. Bar No. [illegible]
SARAH EDWARDS, Cal. Bar No. 265579
MARIONE [illegible] LLP
1611 Telegraph Ave., Suite 707
Oakland, CA 94612
Telephone: (510) 601-0[illegible]
Facsimile: (510) 451-[illegible]
Email: [illegible]
Email: [illegible]

Attorneys for Plaintiffs
KAISER FOUNDATION [illegible]
KAISER FOUNDATION HOSPITALS

SUPERIOR COURT OF [illegible] STATE

COUNTY OF [illegible] [illegible] COUNTY

KAISER FOUNDATION [illegible]            CASE NO. [illegible] 126 7 2 2 [illegible]

Plaintiff,                               COMPLAINT FOR INJUNCTION AND DAMAGES

v.                                       1. BREACH OF CONTRACT

STEPHAN CHRIS [illegible]                2. CLAIM AND DELIVERY
DBA SURE FILE FILING SYSTEMS, and
DOES 1-10, inclusive,                    3. CONVERSION/TRESPASS TO CHATTEL

Defendants.                              4. UNFAIR BUSINESS PRACTICES
                                            (Bus. & Prof. Code § 17200 et seq.)

1   Plaintiffs Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively
2   "KAISER" or "plaintiffs") complain against defendants Stephan Christopher Dean, Liza Dean, and
3   Surefile Filing Systems (collectively "DEAN" or "defendants") as follows:

### GENERAL ALLEGATIONS

5   1.    Plaintiff Kaiser Foundation Health Plan, Inc. ("KFHP") is a non-profit California
6   corporation and health maintenance organization ("HMO") regulated as a health care service plan
7   under the Knox-Keene Health Care Service Plan Act, Health & Safety Code § 1340 et seq. Its
8   principal place of business is in Oakland, Alameda County, California. KFHP contracts with
9   employer groups, individuals, and others to arrange for health care to its members through the Kaiser
10  Permanente network of health-care providers, including Kaiser Foundation Hospitals ("KFH") for
11  facilities and Southern California Permanente Medical Group ("SCPMG") for professional services
12  in Southern California.

13  2.    Plaintiff Kaiser Foundation Hospitals ("KFH") is a California non-profit corporation
14  that is licensed to own and operate hospitals and other medical centers in California. Its principal
15  place of business is in Oakland, Alameda County, California. Plaintiffs KFH and KFHP will be
16  referred to here collectively as "KAISER" or "Plaintiffs".

17  3.    KAISER is informed and believes, and on that basis alleges, that defendants Stephan
18  Christopher Dean and Liza Dean ("the Deans") are residents of Indio, Riverside County, and that the
19  Deans have in the past and continue to do business as Surefile Filing Systems ("Surefile"), a sole
20  proprietorship. The Deans and Surefire are referred to here collectively as "DEAN" or "defendants."

21  4.    KAISER is not presently aware of the true names and capacities of the defendants
22  named in this complaint by the fictitious names of Does 1-10. KAISER will seek leave to amend
23  this complaint upon ascertaining the true names and capacities of those defendants.

24  5.    Plaintiffs allege on information and belief that each defendant is jointly liable for each
25  of the wrongful acts and omissions alleged herein because each defendant acted as the principal,
26  agent, joint venturer, co-conspirator, or alter ego of each of the other defendants.

27  6.    Defendants and KFH entered into an agreement in 2008 under which Defendants
28  agreed, among other things, to remove, prepare, organize, index, deactivate, transport, store, and

---

1

COMPLAINT

1   retrieve upon request medical records for the Kaiser Permanente Moreno Valley medical center. In

2   order to perform services for KAISER, defendants agreed to comply with the terms of the Business

3   Associate Agreement ("BAA") used by KAISER with all vendors.

4          7.     Patient medical records, and communications about such records that include

5   confidential "protected health information" ("Protected Information", as that term is defined under

6   the Standards for Privacy of Individually Identifiable Health Information, codified at 45 Code of

7   Federal Regulations ("CFR") parts 160 and 164, Subparts A and E, are afforded substantial

8   protections under the Health Insurance Portability and Accountability Act of 1996, P.L. 104-191

9   ("HIPAA") and state law including the California Confidentiality of Medical Records Act, Cal. Civ. Code § 56

10  et seq. KAISER seeks to respect and maintain those protections for its members and patients through

11  its contracts and BAA with vendors, including defendants.

12         8.     Effective as of June 15, 2009, OFA and KHIP entered into a written Business

13  Associate Agreement ("BAA") in which defendants agreed to allow KHIP access to any of

14  plaintiffs' records they maintain for KAISER, and, to otherwise, comply with the obligations of

15  HIPAA. Under the terms of the BAA defendants specifically agreed that "upon termination of the

16  business relationship between the parties and HIPAA's termination, [defendants] shall, at [KHIPs]

17  direction, return or destroy all Protected Information that [defendants] or its agents or subcontractors

18  still maintain in any form, and shall retain no copies of such Protected Information. Upon [KHIPS]

19  request, [defendants] shall certify in writing that such return or destruction has occurred."

20         9.     Defendants and KHIP entered into a current confidential Scanning Service Agreement

21  effective as of November 1, 2009 ("Moreno Valley Agreement"). Defendants agreed, among other

22  things, to remove, prepare, deactivate, transport, store, and retrieve upon request medical records for

23  the Kaiser Permanente, Moreno Valley, medical center. Defendants further agreed to comply with the

24  existing BAA with KHIP.

25         10.    Defendants and KHIP entered into a confidential Service Agreement - Medical Record

26  Storage and Deactivation effective as of September 12, 2014 ("West Los Angeles Agreement").

27  Defendants agreed, among other things, to remove, prepare, deactivate, transport, store, and retrieve

28  upon request medical records for the Kaiser Permanente West Los Angeles medical center.

2
COMPLAINT

1   Defendants further agreed to comply with the existing BAA with KFHP.

2       11.    KAISER patients and members have medical needs to access their medical records,

3   and KAISER needs the medical records from time to time for purposes of litigation or

4   administrative proceedings.  Patients have a legal right under HIPAA to access their protected

5   health information. (45 C.F.R. § 164.524.)  KAISER also needs to assure that the medical records

6   with Protected Information and confidential communications with Protected Information, including

7   email exchanged between defendants and plaintiffs, are properly maintained, including by requiring

8   defendants by contract to safeguard the records from unauthorized disclosure pursuant to the terms

9   of a BAA and other agreements, verify their financial ability to protect the records and to maintain

10  insurance, and return or destroy all Protected Information at the request of KAISER.

11      12.    All medical records provided to defendants and confidential communications with

12  Protected Information exchanged between representatives of KAISER and defendants, including

13  email about the records, are the sole property of KAISER and held for the benefit of KAISER

14  members and patients under the terms of the Moreno Valley Agreement, the West Los Angeles

15  Agreement and the BAA signed by defendants.  Defendants have no interest in those medical

16  records or the confidential communications with KAISER about the records, and under the terms of

17  the BAA signed by defendants, defendants have no right to refuse access to those records and any

18  confidential communications with Protected Information or to refuse requests from KAISER to

19  return or destroy those records and confidential communications with Protected Information,

20  including email, or to refuse to certify to KAISER that all Protected Information has been returned

21  or destroyed.

22      13.    In or around 2010, a dispute arose between KAISER and DEAN regarding DEAN'S

23  performance of the Moreno Valley Agreement and West Los Angeles Agreement.  Beginning in the

24  spring of 2010, defendants interfered with plaintiffs' access to its patients' medical records and

25  failed to verify that they had insurance or the financial ability to protect the records.  Defendants

26  refused to allow plaintiffs access to its medical records, interfered with or refused to comply with

27  patients' medical records requests, interfered with or refused to comply with subpoenas for medical

28  records, refused to verify insurance coverage, and refused to verify its financial ability to perform

---

3
COMPLAINT

its contractual obligations. Defendants also refused to turn over the medical records to KAISER upon its requests.

14. As a result of defendants' wrongful conduct, on or about July 6, 2010, plaintiffs notified defendants that defendants were in breach of their agreements that defendants should (i) comply with patient requests for medical records, (ii) permit KAISER access to their warehouse to inspect the records, (iii) verify their insurance and financial ability to perform, and (iv) arrange for transfer of the records, premises and/or other plaintiffs elected to terminate the West Los Angeles Agreement for convenience.

15. As a result of the foregoing dispute, KFH and defendants negotiated a transfer agreement ("Sure File Transfer Agreement") to effect the transfer of possession from defendants to KFH of all of the medical records and confidential Protected Information of KAISER patients and members. The Sure File Transfer Agreement was signed by Stephen Dean on or about July 23, 2010, and terminated the on-going business relationship between defendants and KAISER. Pursuant to the terms of the Sure File Transfer Agreement, DEAN specifically agreed to take appropriate steps to preserve all confidential information contained in those records as required by the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 *et seq.*, the federal Health Insurance Portability and Accountability Act ("HIPAA") and the parties' BAA.

16. Following the execution of the Sure File Transfer Agreement, in March 2011 the defendants and plaintiffs negotiated a confidential settlement agreement to resolve all the outstanding issues between them. Plaintiffs will make the confidential settlement agreement available to the Court, if necessary, under seal.

17. Pursuant to the agreements between plaintiffs and defendants described above, defendants were obligated to maintain the confidential Protected Information of KAISER members and patients in confidence; defendants were obligated not to transmit or communicate to any other party the confidential Protected Information of KAISER members and patients; defendants were obligated to return to plaintiffs or destroy all the confidential Protected Information of KAISER members and patients; and defendants were obligated upon request to certify to plaintiffs the return or destroy all confidential Protected Information in any form of KAISER members and patients.

18.    Since the execution of the confidential settlement agreement in March 2011, defendants have notified KAISER that they are in possession of email or other records of KAISER that they allege contain Protected Information. Defendants have also publicized through the press the fact theat they retain possession of Protected Information of KAISER patients and members. Defendants have done so for the sole purpose of trying to extract additional payments from KAISER. Despite requests from KFHP that defendants return or destroy the Protected Information and certify the return and destruction of the Protected Information, or provide access to the Protected Information so that plaintiffs may recover or destroy the Protected Information, defendants have refused to return or destroy the Protected Information, defendants have refused to certify to KAISER the return or destruction of the Protected Information. Defendants have refused to provide access to the Protected Information so that plaintiffs may recover or destroy the Protected Information. Defendants have also refused to follow instructions from KAISER to remove and destroy any Protected Information in an electronic format.

19.    In breach of their agreements with KAISER, defendants also have engaged in conduct that demonstrates their intention or willingness to risk a security breach and the unauthorized disclosure of the confidential Protected Information if plaintiffs refuse to accede to their unwarranted demands for payment of additional compensation to obtain the return of, destruction of or access to the confidential Protected Information improperly retained by defendants. For example, after representing to plaintiffs that email with confidential Protected Information was stored on the hard drives of computers in the garage of their home Stephan Dean and Liza Dean  risked the theft or removal of the computers and the unauthorized disclosure of the confidential Protected Information by leaving the door to their garage open.

20.    The unauthorized disclosure by defendants of confidential Protected Information of KAISER patients and members remaining in the possession of defendants would result in financial harm to plaintiffs and irreparable harm to their reputation and also result in potential harm to the members and patients of KAISER.

# FIRST CAUSE OF ACTION
## BREACH OF WRITTEN CONTRACT
### (Against Each Defendant)

21.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 20 above.

22.    The BAA specifies that defendants may only use or disclose confidential Protected Information "to perform functions, activities, or services for, or on behalf of, [Plaintiffs]." Because the contractual relationship between defendants and plaintiffs have been concluded and terminated defendants have no further authorized use of the Protected Information "to perform functions, activities, or services for, or on behalf of, [Plaintiffs]." Furthermore, the BAA specifies that by maintaining or using Protected Information for their own purposes, defendants violated the BAA

23.    Defendants have breached their contractual obligations under the BAA by, among other things, (i) retaining confidential Protected Information of KAISER patients or members on their computers, hard drives, servers, or in their email accounts, or otherwise; (ii) refusing to return, or destroy or allow plaintiffs access to their computers, hard drives, servers, or email accounts, to remove or destroy all the confidential Protected Information of KAISER patients or members, including but not limited to confidential unencrypted email communications between defendants and Plaintiffs that include confidential Protected Information of KAISER members and patients, or to confirm the removal of all Protected Information of KAISER patients or members, from defendants' computers, hard drives, servers or email accounts; (iii) refusing to certify to KFHP the return or destruction of all the confidential Protected Information of KAISER patients or members; (iv) to risk the unauthorized disclosure of confidential Protected Information of KAISER members and patients in defendants' possession, custody or control by their failure to maintain the confidential Protected Information in a secure place and manner; and (v) threatening to use and transmit confidential Protected Information in the medical records and/or confidential email communications between defendants and Plaintiffs that include confidential Protected Information of KAISER members, to contact KAISER members or patients.

24.    Defendants have also breached the Moreno Valley Agreement and the West Los Angeles Agreement by recording and retaining confidential Protected Information in violation of

---

6

COMPLAINT

1  the terms of the BAA which are incorporated into and made a part of the Moreno Valley Agreement

2  and the West Los Angeles Agreement.

3       25.    Plaintiffs have performed all obligations due to defendants, except such obligations

4  as are excused or waived.

5       26.    As a proximate result of defendants' conduct, plaintiffs have sustained damage or

6  loss in an amount to be proved at trial. Furthermore, unless enjoined defendants' continued

7  possession of the Protected Information threatens further harm to KAISER, as well potentially the

8  privacy interests of KAISER'S members and patients. Plaintiffs lack an adequate remedy at law

9  and will suffer irreparable harm unless defendants are enjoined from their continued use and

10 possession of the Protected Information of KAISER'S members and patients and to engage in the

11 aforesaid trespasses and interference with plaintiffs' property. An action for damages is inadequate

12 because it is extremely difficult to place a monetary value on this continuing invasion of plaintiffs'

13 property rights and the continued possession of the Protected Information by defendants. Even if

14 the harm could be measured in monetary terms, plaintiffs would be required to incur the

15 inconvenience and expense of multiple legal actions to collect damages resulting from defendants'

16 actions as they continue to occur in the future. Plaintiffs are accordingly entitled to both

17 preliminary and permanent injunctions enjoining defendants from further possession and use of

18 plaintiffs' property.

19      27.    Therefore plaintiffs seek preliminary and permanent injunctions enjoining defendants

20 and their employees and anyone acting on their behalf (i) from retaining any "Document," as

21 defined by Californian Evidence Code Section 250, specifically including but not limited to,

22 KAISER medical records and charts and email, with confidential Protected Information relating to

23 any member or patient of KAISER; (ii) from using any confidential Protected Information in any

24 "Document," as defined by Californian Evidence Code Section 250, provided to defendants by

25 KAISER; and (iii) from disclosing to any third-party any Protected Information from any

26 "Document," as defined by Californian Evidence Code Section 250, provided to defendants by

27 KAISER

28      28.    Plaintiffs also seek preliminary and permanent injunctions requiring defendants and

---

7

COMPLAINT

1   their employees and anyone acting on their behalf (i) to refrain from using any confidential

2   Protected Information from any "Document," as defined by Californian Evidence Code Section 250,

3   provided to defendants and confidential Protected Information in any email exchanged between

4   defendants and plaintiffs to contact KAISER members or patients, (ii) to refrain from disclosing to

5   any third-party any Protected Information from any "Document," as defined by Californian

6   Evidence Code Section 250, provided to defendants and confidential email exchanged between

7   defendants and plaintiffs; (iii) to return, delete or destroy any "Document," as defined by

8   Californian Evidence Code Section 250, specifically including , but not limited to email with

9   confidential Protected Information of KAISER members and patients that defendants maintain or to

10  which they have access or care custody or control; (iv) to certify in writing under penalty of perjury

11  that defendants have returned, deleted or  or destroyed all of the records and email with confidential

12  Protected Information of KAISER members and patients that defendants maintain or to which they

13  have access or care, custody or control; (v) to provide access to all defendants' computers, servers,

14  hard drives and email accounts for inspection by a forensic consultant appointed by the Court at

15  plaintiffs' expense to confirm the removal, deletion or destruction of all of the records and

16  confidential email with Protected Information of KAISER members and patients; and (vi) to

17  promptly notify counsel for plaintiffs of the discovery of any additional Protected Information of

18  KAISER members and patients that defendants maintain or to which they have access or care,

19  custody or control; following completion of (i) - (v) above, and thereafter to comply with the

20  requirements of (i) - (v) above.

21

22                          SECOND CAUSE OF ACTION
                              CLAIM AND DELIVERY
23                            (Against Each Defendant)

24          29.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 28

25  above.

26          30.     Despite receipt of a demand for return or destruction of the confidential Protected

27  Information concerning KAISER members and patients, defendants have refused, and continue to

28  refuse to return or destroy the Protected Information to plaintiffs and provide certification of the

---

8
COMPLAINT

1  return or destruction of the Protected Information to plaintiffs.

2      31.    Defendants have no right to refuse to return or destroy the confidential Protected

3  Information concerning KAISER members and patients and provide certification of the return or

4  destruction of the Protected Information to plaintiffs, the owners of the records with the Protected

5  Information.

6      32.    Plaintiffs are entitled to a writ of possession to recover their personal property.

7

8                          **THIRD CAUSE OF ACTION**
                       **CONVERSION/TRESPASS TO CHATTEL**
9                           (Against Each Defendant)

10      33.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 32

11  above.

12      34.    Despite receipt of a demand for the return or destruction of the confidential Protected

13  Information concerning KAISER members and patients, defendants have refused, and continue to

14  refuse, to return or destroy the records and any email with confidential Protected Information and

15  certify to plaintiffs the return or destruction of the confidential Protected Information concerning

16  KAISER members and patients.

17      35.    By so doing, defendants have converted and trespassed on plaintiffs' rights in the

18  records and any email with confidential Protected Information derived from the records of and email

19  of plaintiffs without legal right or justification.

20      36.    Plaintiffs are entitled to an injunction as prayed below and to damages in an amount

21  to be proved at trial.

22

23                          **FOURTH CAUSE OF ACTION**
                       **VIOLATION OF UNFAIR COMPETITION LAW**
24                          (Against Each Defendant)

25      37.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 36

26  above.

27      38.    California Business & Professions Code § 17200 et seq. (the "UCL") prohibit unfair

28  competition. In this context, "unfair competition shall mean and include  any unlawful, unfair or

---

9

COMPLAINT

1  fraudulent business act or practice .... " Cal. Bus. & Prof. Code § 17200.

2       39.    The "unlawful" prong of the UCL permits a plaintiff to obtain relief from anything

3  that can properly be called a business practice and that at the same time is forbidden by law,

4  regardless of whether the underlying law provides for a private right of action.

5       40.    Defendants, by their conduct and practices alleged herein, have committed and

6  continue to commit violations of the Health Insurance Portability Act of 1996, P.L. 104-191

7  ("HIPAA") and the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq. Defendants

8  are therefore in violation of the "unlawful" prong of the UCL.

9       41.    The "unfair" prong of the UCL is intentionally broad, thus allowing courts

10  maximum discretion to prohibit new schemes to defraud. Outside of the competitor context, courts

11  have enunciated differing tests for unfairness under the UCL. One test is that the harm to the victim

12  outweighs the justification of the alleged wrongdoer. A different test is that the defendant's acts

13  offend a public policy that is tethered to some statutory provision. Still another test is that the

14  defendant's acts constitute sharp practices

15       42.    Defendants, by their conduct and practices alleged herein, have engaged and

16  continue to engage in conduct and practices that cause considerable harm and  injury in fact to

17  plaintiffs, and defendants have no justification whatsoever other than reducing defendants' attempt

18  to extort additional compensation from defendants, which is neither a reasonable nor legitimate

19  justification. Defendants' conduct and practices offend a public policy of providing confidentiality

20  and protection to the confidential personal health information of health plan members and medical

21  patients, which policy is tethered to the Health Insurance Portability Act of 1996, P.L. 104-191

22  ("HIPAA"), the Confidentiality of Medical Records Act, Cal. Civ. Code § 56 et seq., and the

23  California Constitution. Defendants' modus operandi constitutes a sharp practice because defendants

24  understand that KAISER desires to protect the confidentiality of Protected Information of KAISER

25  members and medical patients and avoid the unauthorized disclosure of such Protected Information.

26  Defendants are therefore in violation of the "unfair" prong of the UCL.

27       44.    Plaintiffs have suffered injury in fact and have incurred unnecessary expenses,

28  including legal fees, as a result of defendants' violations of the UCL.

45.    Plaintiffs reasonably believe that defendants' wrongful practices alleged herein are ongoing and continue to be a threat to plaintiffs.

46.    Plaintiffs are therefore entitled to restitution and disgorgement in amounts to be proved at trial, as well as injunctive relief to obtain the return, or deletion or destruction of the confidential protected information of KAISER members or medical patients and other relief as pleaded in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE plaintiffs pray for judgment against defendants as follows:

a.    For damages in an amount according to proof;

b.    For prejudgment interest as allowed by law;

c.    For specific performance of defendants' obligations under the Business Associate Agreement effective June 15, 2009 to return or destroy all Protected Information, retain no copies of any Protected Information, and upon plaintiffs' request to certify in writing that such return or destruction has occurred;

d.    For preliminary and permanent injunctions enjoining defendants and their employees and anyone acting on their behalf (i) from retaining any "Document," as defined by Californian Evidence Code Section 250, specifically including but not limited to, KAISER medical records and charts and email, with confidential Protected Information relating to any member or patient of KAISER; (ii) from using any confidential Protected Information in any "Document," as defined by Californian Evidence Code Section 250, provided to defendants by KAISER; and (iii) from disclosing to any third-party any Protected Information from any "Document," as defined by Californian Evidence Code Section 250, provided to defendants by KAISER

e.    For preliminary and permanent injunctions requiring defendants and their employees and anyone acting on their behalf (i) to refrain from using any confidential Protected Information from any "Document," as defined by Californian Evidence Code Section 250, provided to defendants and confidential Protected Information in any email exchanged between defendants and plaintiffs to contact KAISER members or patients; (ii) to refrain from disclosing to any third-party any Protected Information from any "Document," as defined by Californian

<div align="center">11<br/>COMPLAINT</div>

1   Evidence Code Section 250, provided to defendants and confidential email exchanged between
2   defendants and plaintiffs; (iii) to return, delete or destroy any "Document," as defined by
3   Californian Evidence Code Section 250, specifically including , but not limited to email with
4   confidential Protected Information of KAISER members and patients that defendants maintain or to
5   which they have access or care custody or control; (iv) to certify in writing under penalty of perjury
6   that defendants have returned, deleted or or destroyed all of the records and email with confidential
7   Protected Information of KAISER members and patients that defendants maintain or to which they
8   have access or care, custody or control; (v) to provide access to all defendants' computers, servers,
9   hard drives and email accounts for inspection by a forensic consultant appointed by the Court at
10  plaintiffs' expense to confirm the removal, deletion or destruction of all of the records and
11  confidential email with Protected Information of KAISER members and patients; and (vi) to
12  promptly notify counsel for plaintiffs of the discovery of any additional Protected Information of
13  KAISER members and patients that defendants maintain or to which they have access or care,
14  custody or control; following completion of (i) - (v) above, and thereafter to comply with the
15  requirements of (i) - (v) above.
16          f.      For a writ of possession transferring all the Documents with
17  confidential Protected Information of any KAISER member or patient in the possession, custody or
18  control of defendants to plaintiffs;
19          g.      For KAISER's cost of suit; and
20          h.      For such other and further relief as the Court should find to be just
21  and proper.
22      Respectfully submitted,
23  Dated: October 11, 2012
24                                          MARION'S INN LLP
                                            THOMAS M. FREEMAN
25                                          SARAH EDWARDS
26                                          By
27                                                  Sarah Edwards
28                                          Attorneys for Plaintiffs Kaiser Foundation Hospitals
                                            and Kaiser Foundation Health Plan, Inc.

# EXHIBIT 2

SUPERIOR COURT - STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

KAISER FOUNDATION HEALTH PLAN, INC.,  )
and KAISER FOUNDATION HOSPITALS,      )
                                      )
                      Plaintiffs,     )
                                      )
          vs.                         ) Case No. INC1207224
                                      )
STEPHAN CHRISTOPHER DEAN, LIZA        )
DEAN, DBA SUREFILE FILING SYSTEMS,    )
and DOES 1-10, Inclusive,             )
                                      )
                      Defendants.     )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

HEARING RE MOTION FOR SUMMARY JUDGMENT

BEFORE THE HONORABLE DAVID M. CHAPMAN

July 31, 2013

APPEARANCES:

For the Plaintiffs:        THOMAS M. FREEMAN
                           MARION'S INN LLP
                           1611 Telegraph Avenue, Suite 707
                           Oakland, California  94612-2145

For the Defendants:        STEPHAN CHRISTOPHER DEAN
                           LIZA DEAN
                           In Propria Persona
                           44700 Ronald Street
                           Indio, California  92201

Reported By:               TERRI L. DICKNEIDER, CSR NO. 5031

**CERTIFIED COPY**

1          PALM SPRINGS, CALIFORNIA; JULY 31, 2013

2          BEFORE THE HONORABLE DAVID M. CHAPMAN

3          THE COURT:  Next, calling the matter of Kaiser

4  Foundation versus Dean.  Thank you for your patience this

5  morning, Counsel.

6          MR. FREEMAN:  Thank you for hearing us, Your Honor.

7          THE COURT:  My pleasure.  Could we have your

8  appearances for the record?

9          MR. FREEMAN:  Thomas Freeman for plaintiff, Kaiser

10 Foundation Health Plan, and opposing party.

11         MR. DEAN:  Good morning, Your Honor.  Stephan Dean,

12 defendant.

13         MS. DEAN:  Good morning, Your Honor.  Liza Dean,

14 defendant.

15         THE COURT:  Won't you please make yourselves

16 comfortable.  Please have a seat.

17         This matter is here for a motion for summary judgment.

18 The court issued its tentative ruling yesterday.  That was

19 posted.  Mr. Freeman, on behalf of Kaiser, has requested oral

20 argument.

21         And, as you can see, I spent a good deal of time

22 wrestling with these issues, and I must tell you that this was

23 not an easy call.  And a large part of the court's tentative

24 ruling -- and I underscore that that is only a tentative

25 ruling -- was based upon the four corners of plaintiffs'

26 complaint, particularly in -- I believe it was paragraph 16 of

27 the complaint, in which there were allegations raised

28 specifically providing that following the execution of the

1   Surefile Transfer Agreement in March of 2011, the defendants and

2   plaintiffs negotiated a confidential settlement agreement to

3   resolve all of the outstanding issues between them.  And there

4   was an offer at that time for -- from the plaintiffs to make

5   that settlement agreement available to the court, although the

6   court has read and reviewed that settlement agreement in that it

7   was an exhibit to the moving papers.

8          So with that foundation, Mr. Freeman, you are free to

9   make any comments or arguments that you would like.

10          MR. FREEMAN:  Yes, Your Honor.  The -- I appreciate the

11  court taking the time to review the plaintiffs' motion and the

12  papers submitted in opposition, and it's clear from the

13  tentative that the court did spend a considerable amount of time

14  looking at the matter.  However, I want to raise three issues

15  regarding the tentative, Your Honor, to address some facts which

16  the court may have overlooked or perhaps misconstrued, because

17  the relationship between the parties and the -- that led up to

18  the settlement agreement, and certainly the intent of Kaiser in

19  executing that settlement agreement, need to be clearly

20  understood.

21          Second --

22          THE COURT:  Okay.  I want to make sure I get the

23  issues.  One is the intent.

24          MR. FREEMAN:  Correct.

25          THE COURT:  Okay.

26          MR. FREEMAN:  And I'm going to -- I'm going to return

27  to the facts leading up to the execution of that agreement and

28  why we believe it should not be construed in the manner urged by

1  defendants and reflected in the tentative.

2          The second issue that I want to at least raise, because

3  it is not specifically addressed in the tentative, is that there

4  are in the plaintiffs' complaint four causes of action.  The

5  first is for breach of contract.  There are three other causes

6  of action.

7          THE COURT:  May I stop you right there?

8          MR. FREEMAN:  Yes.

9          THE COURT:  Was it your intent in your breach of

10  contract action to allege and/or plead a cause of action

11  claiming that there was a breach of the settlement agreement as

12  opposed to a breach of the business associate agreement?

13          MR. FREEMAN:  No.

14          THE COURT:  Thank you.

15          MR. FREEMAN:  Amongst the other causes of action

16  alleged, there are two common counts which are not addressed

17  with any specificity by the plaintiffs' moving papers, other

18  than their argument that all causes of action are subsumed by

19  the settlement agreement.  I'll address that in more detail in a

20  moment.

21          The third cause -- the third issue that I want to

22  raise, which is one that is -- is in fact raised by the

23  tentative, is a request by plaintiff for leave to amend its

24  complaint to allege alternative theories of mistake of fact or

25  concealment of material facts which induced Kaiser to enter into

26  the settlement agreement.  If in fact -- and I'll address that.

27  I hope to turn you around --

28          THE COURT:  That's a fallback position.

1          MR. FREEMAN:  That is the fallback position.  But as

2     the court -- the court cited in its tentative the *Laabs*

3     decision, at 163 Cal.App.4th 1242.  And at page 1248 of that

4     decision, the court cites the *Kirby versus Albert D. Seeno*

5     *Construction Company* case, which makes the point and the holding

6     in -- in the *Kirby* case is that on a motion for summary

7     judgment, if the plaintiff wishes to expand the issues

8     presented, we may and must at this hearing request leave to

9     amend.

10         THE COURT:  Okay.

11         MR. FREEMAN:  So I don't want there to be any ambiguity

12    about the fact that we -- if the court stands by its

13    interpretation of the settlement agreement as subsuming the

14    allegations alleged, we seek leave to amend to allege either

15    mistake of fact or concealment of material facts, a fraud claim.

16         THE COURT:  But not leave to amend on an allegation of

17    a breach of the settlement agreement?

18         MR. FREEMAN:  Well, it may be with respect to the

19    settlement agreement, Your Honor.

20         THE COURT:  Okay.

21         MR. FREEMAN:  And I'll circle back to that in a moment,

22    because as -- if you look at the declaration of Ms. Burke, she

23    really recites both the facts as Kaiser understood them in

24    entering into the settlement agreement because she is the party

25    who negotiated it with -- with the Deans' counsel --

26         THE COURT:  Would you bear with me?

27         MR. FREEMAN:  Sure.

28         THE COURT:  Please forgive me.  I want to go get

1    another -- I thought I brought them out with me.  But I have got

2    another note regarding Ms. Burke's declaration.  If you will

3    bear with me, I'll be right back.

4             MR. FREEMAN:  Sure.

5                           (Pause.)

6             THE COURT:  Thank you.  You may proceed, sir.

7             MR. FREEMAN:  Okay.  The -- I think if -- if I turn to

8    Ms. Burke's declaration, I can provide the factual background

9    and predicate to what Kaiser believes is a reasonable

10   interpretation of the settlement agreement consistent with the

11   allegations in plaintiffs' complaint.  The Deans had a

12   relationship with Kaiser whereby they provided services for a

13   number of years, beginning directly in 19- -- in 2008.  Some of

14   the services provided by the Deans were documented by written

15   agreements.  Other -- including invoices for payment.  Some of

16   the services were documented by services agreements, more

17   complete agreements, which both parties executed.  Some of the

18   services were not reflected in written agreements.  The Deans

19   rendered the services.

20            What is important to understand is that the services

21   that the Deans rendered beginning in late 2008, continuing into

22   2009, first and foremost involved the transfer of physical

23   medical record folder files from the Moreno Valley Community

24   Hospital, which Kaiser had acquired.  Those records at the time

25   Kaiser acquired the hospital were stored in a trailer out in

26   back of the hospital, in a very insecure situation.  Kaiser

27   didn't have the ability or facilities to store those records.

28   They needed to catalog the records before they were taken

1    offline by Moreno Valley Hospital.  And so the Deans were

2    retained to catalog those records, and they initially did that

3    work on site, but then transported the records to their facility

4    in Indio, where basically they cataloged the records with the

5    name of the patient, the medical record number, date of birth,

6    date of service, sometimes the Social Security number, although

7    that was rare.  So -- and then it was contemplated those records

8    would be returned to Kaiser; however, there was delay in doing

9    that.

10           The Deans continued to provide other services to

11   Kaiser, including the West L.A. deactivation project in early --

12   late 2009, early 2010.  And those were records, again, which

13   were being cataloged so that the physical files could be put

14   into permanent storage.

15           During the course of providing those services, the

16   Deans delivered to Kaiser CDs with the cataloging of those

17   records.  Some of the records were taken off -- taken off site

18   from the Deans and returned to Kaiser and put into storage.

19   Others remained there in storage in their warehouse.

20           After the completion of the deactivation project for

21   West L.A, there was a dispute that arose between the Deans and

22   Kaiser over the compensation that the Deans were entitled to.

23   That dispute culminated in the summer of 2010 in Kaiser formally

24   terminating its agreements with the Deans, the West L.A.

25   agreement and a November 2009 agreement, and the preparation of

26   the transfer agreement.  The intent of the transfer agreement,

27   which Ms. Burke describes in her declaration and which she

28   helped shepherd through, was intended to facilitate the return

1  to Kaiser of these medical record folders which were in this
2  warehouse in Indio.
3          There was no understanding at that time on Kaiser's
4  part that the Deans, in addition to those records, had on their
5  computers records of e-mails exchanged between an employee at
6  Kaiser and the Deans regarding any of those medical records.  We
7  now know, we now have learned since the execution of the
8  settlement agreement, that during the time the Deans had these
9  medical records in their custody, they periodically received
10 requests from Kaiser for the return of the files.
11         Kaiser knew that was happening because Kaiser would
12 receive a subpoena from somebody saying, "Hey, we need the
13 medical records of John Smith."  Kaiser would look in its files,
14 it wouldn't have it, they would call up the Deans, "Hey, we need
15 the folder for John Smith in response to the subpoena," and the
16 file would be returned to Kaiser, or somebody from Kaiser would
17 pick it up; or a patient would come in for treatment, and the
18 medical record folder would have to be retrieved.
19         So those -- periodically there were these requests
20 transmitted to the Deans for the return of these medical record
21 folders.  However, what was unknown to Kaiser and only came to
22 light in August of 2011, when Mr. Dean provided me with copies
23 of three e-mails, was the fact that at least one employee -- I
24 don't know if there are more.  The Deans have since told us they
25 have destroyed all the PHIs, so they don't have any record, but
26 we know there were at least three e-mails that were sent to the
27 Deans by a Kaiser employee that listed confidential personal
28 health information, unencrypted.

1          That was done contrary to Kaiser's policies and

2    procedures, contrary to the training that Kaiser employees

3    received, and there would have been no reason for Kaiser to know

4    or believe that such a communication had in fact occurred, nor

5    that the Deans had retained those e-mails with the personal

6    health information, which included dates of birth, Social

7    Security numbers, medical record numbers, at the time either the

8    transfer agreement was entered into in June or July of 2011, nor

9    at the time of the settlement agreement.

10         So what I -- and that's -- there is no dispute about

11   that from the Deans in terms of their disclosure of it, Kaiser's

12   knowledge of it.  It was never communicated.  The transfer

13   agreement by its terms refers only to the return of the medical

14   records.

15         And -- and in addition to that, and this leads to the

16   settlement agreement, at the time that the transfer agreement

17   was undertaken, Kaiser agreed to make a down payment, so to

18   speak, to the Deans for the services that they have rendered.

19   But it was specifically acknowledged in the transfer agreement,

20   in paragraph 4, that Dean reserves the right to pursue Kaiser

21   for cost of storage, maintenance, and delivery of the Moreno

22   Valley, Riverside County, records.

23         So it was understood there would be a further

24   negotiation and reconciliation of that claim.  That's what the

25   settlement agreement was intended to do.

26         THE COURT:  But it's not what it says.

27         MR. FREEMAN:  Well, it is, in that -- and this is where

28   I would, I guess, take issue with the court's interpretation --

1          THE COURT:  Did it define the dispute?

2          MR. FREEMAN:  It does.

3          THE COURT:  And would you read that to the court, and

4     for the record, as to how it defines the dispute.

5          MR. FREEMAN:  So in the recitals, it says:  "Whereas,

6     Surefile asserts that it has yet to be fully compensated for

7     services performed and costs incurred in providing services to

8     KP, and has alleged other claims against KP -- "

9          THE COURT:  Stop right there.  "Other claims against

10    KP."  Do they identify what those other claims are?

11         MR. FREEMAN:  They do not define them in the settlement

12    agreement.

13         THE COURT:  And in addition to the dispute that you

14    identified in that language, the settlement agreement goes on to

15    purport to settle any and all claims that one has against the

16    other, both past, present, and future.  In fact, known and

17    unknown claims.

18         MR. FREEMAN:  It does.  And -- and I'll concede that

19    perhaps some of that language is not as precise, which we would

20    now hope it would have been.  But in references to the release,

21    well, in -- in -- in references to the dispute, in the agreement

22    portion of the settlement agreement, in paragraphs B and C, all

23    of the references are with respect to the dispute.  And

24    paragraph B, for example, says:  "The settlement funds shall be

25    in full and final settlement and compromise of any claims they

26    might possess against the other, including without limitation

27    the dispute and any counterclaims and allegations related to or

28    in connection with the dispute at all times prior to and after

1  the effective date."

2      Paragraph C also says:  "Except as otherwise provided

3  herein, KP and Surefile agree that no additional money shall be

4  due from any party, for any reason whatsoever, for any

5  obligation incurred by any party to any other party in

6  connection with the dispute."  "The dispute" being Deans' claims

7  for compensation as reflected in the transfer agreement.

8      THE COURT:  And if the language within that release

9  only said "the dispute," then I think that gives you more solid

10  foundation for your argument.  But the settlement agreement then

11  goes on much more than just settling the dispute.  It purports

12  to not only settle the dispute, but "any and all claims," past,

13  present or future, known or unknown.  And there is a waiver of

14  the Civil Code section.  Is there not?

15      MR. FREEMAN:  There -- there is a -- a waiver of 1542.

16  However, in the settlement paragraph, settlement and release

17  paragraph number 3, again, all of the references to the release

18  are keyed off of liabilities and obligations, liabilities and

19  obligations arising out of or relating to the dispute.

20      THE COURT:  Then why do you --

21      MR. FREEMAN:  That point is made four times in that

22  paragraph, where it says "with respect to the dispute," "that

23  relate to the dispute," "relating to the dispute."

24      THE COURT:  Then why do you include language in your

25  release -- if you did not intend to release all other claims,

26  why is that language within the release?  If you only intended

27  to settle, to use your words, "the dispute," why did you include

28  in your release a release of all other claims, known or unknown?

1  Why is that language there if it doesn't purport to do exactly

2  what it says?

3      MR. FREEMAN:  Because it was within the contemplation

4  of the parties at the time that the claims that were being

5  released all related to Deans' claims for compensation for

6  services rendered with respect to his handling of records for

7  Kaiser.

8      THE COURT:  But you concede, do you not, that your

9  release that you drafted does not purport to limit the release

10 in exchange for just "the dispute," as you have defined it,

11 relating to compensation.  That's not what the document says.

12     MR. FREEMAN:  It does include those other words.

13     THE COURT:  It does.  And so -- but there is a

14 paragraph in the release that has to do with the business

15 association agreement, and I believe you might want to check

16 around paragraph 7, where it talks about preserving the

17 confidentiality.  And it makes specific reference to the

18 business association agreement, does it not?

19     MR. FREEMAN:  It does.  In paragraph 13.

20     THE COURT:  Paragraph 13.  And what does it say about

21 the business association agreement in paragraph 13 of the

22 release agreement?  Because in your opposition to this motion,

23 you assert that the business association agreement survived this

24 settlement agreement of all other claims, known and unknown.

25 Correct?

26     MR. FREEMAN:  Correct.

27     THE COURT:  Now, in reading that paragraph, what does

28 it say about specifically the business association agreement?

1   Does it say all terms and conditions of the business association

2   agreement are preserved and survive this purported settlement,

3   or does it attempt to carve out only a portion of the business

4   association agreement as it related to the subject of

5   confidentiality?

6            MR. FREEMAN:  Well, I will tell you that Ms. Burke

7   understood that the settlement agreement did not and was not

8   intended to supersede the BAA.

9            THE COURT:  I read her declaration, but what does your

10  settlement agreement say --

11           MR. FREEMAN:  The --

12           THE COURT:  -- as it relates to the BAA?

13           MR. FREEMAN:  Paragraph 13, I'll read the whole thing.

14           THE COURT:  Thank you.  Slowly for my -- for my court

15  reporter, please.

16           MR. FREEMAN:  Sure.  And if I read it too fast at any

17  point, she should stop me.

18           THE REPORTER:  Thank you.

19           MR. FREEMAN:  Paragraph 13, which is headed

20  "Non-disclosure," states:  "The nature and terms of this

21  agreement shall not be disclosed by any party hereto or its

22  agents, attorneys, or other representative, without the prior

23  written consent of the other parties, semicolon, provided,

24  however, that any party may disclose the existence of this

25  agreement, and the nature and terms thereof, subparagraph little

26  i, to the attorneys, accountants, and financial and tax advisors

27  of that party, sub double little i, as required or compelled by

28  law, or sub three little i, to enforce the provisions of this

1   agreement.  Period.  KP and Dean will continue to take
2   appropriate steps to preserve all confidential information in
3   the medical records handled by Dean during the course of
4   providing services as required by the Confidentiality of Medical
5   Records Act, Cal. Civil Code section 56, et seq., the federal
6   Health Insurance Portability and Accountability Act, paren,
7   HIPAA, H-I-P-A-A, close paren, and the parties' business
8   associate agreement of June 24, 2009."

9           THE COURT:  Okay.  So, now, my question to you:  In the
10  settlement agreement, contrary to Ms. Burke's understanding as
11  set forth in her declaration, is it your position that the
12  language that you have just quoted in fact allows full and
13  complete enforcement of the BAA, or does that portion of the
14  settlement agreement carve out only a portion of the obligations
15  under the BAA, to wit, protect the confidentiality of those
16  records?

17          And the reason that becomes important is, under the
18  BAA, specifically paragraph 2.8 of the business association
19  agreement, there is an obligation on behalf of the Deans to make
20  the protected information in the designated records available to
21  KP for inspection within ten days.  The question for the court,
22  then, is:  Does paragraph 2.8 of the BAA survive the global
23  settlement agreement?  And, if so, then the Deans have an
24  obligation upon ten days -- or they have the obligation to make
25  available for inspection within ten days the protected health
26  information.

27          So my question to you is:  Do you believe that
28  paragraph in the settlement agreement, in fact, exempts and

1    provides that the entire BAA survives, or is it only a portion

2    of the BAA that survives relating to the confidentiality of the

3    protected health information?

4         MR. FREEMAN:  Paragraph 13, I believe, Your Honor,

5    based on the terms that we are talking about here, I think

6    certainly reflects an intent for this specific provision of

7    access in the BAA to survive.  No question.

8         THE COURT:  The -- no question, the issue as -- at

9    least in this court's opinion, that paragraph of the settlement

10   agreement absolutely provides that the confidentiality aspects

11   of the business associate agreement survives the settlement

12   agreement.  And so my question for you -- and, more importantly,

13   it may not be you, but was it Ms. Burke who drafted the

14   settlement agreement? -- if it was her intent that the entire

15   business association agreement, all terms and conditions and

16   obligations thereunder, be exempt from the settlement agreement,

17   why didn't she say so?

18        It would have been very easy for her to say in that

19   settlement agreement not that just the confidentiality under the

20   BAA would survive, although she doesn't use the word "survive,"

21   but I -- I adopt your argument that it was her intent.  Why

22   wouldn't she have said not only the confidentiality sections of

23   the BAA survive, but all obligations contained within the BAA

24   and that entire agreement survives what purports to be the

25   global settlement in which she said, "I am giving up, the Deans

26   are giving up, and both sides are mutually agreeing that all

27   claims, past, present, future, known or unknown, except

28   paragraph 13, is being settled in exchange for that $100,000" or

1   whatever that figure was that was part of the settlement

2   agreement?

3           MR. FREEMAN:  The answer is because she was acting

4   under a mistake of fact.  She understood that at the time this

5   agreement was entered into, the settlement agreement, that the

6   Deans had in fact, pursuant to the transfer agreement, returned

7   to Kaiser all of the records that they had in their possession.

8   There was no inkling on anybody's part at Kaiser that the Deans

9   were still in possession of electronic medical records.

10          THE COURT:  And what -- what impact do you think

11  Mr. Dean's letter has on that position, when he said

12  essentially, "I agree that the settlement agreement only had to

13  do with compensation and nothing else"?

14          MR. FREEMAN:  I think it's an admission that -- that he

15  didn't -- that he had withheld that information, that the BAA

16  was still applicable and that he was obligated by it to provide

17  that information to Kaiser.  If Kaiser had been aware at the

18  time of the settlement agreement or after the transfer

19  agreement, if it had learned from Mr. Dean, as it did a year

20  later, "Hey, I have got medical -- I have got these e-mails, and

21  I want you to pay me more money for them before I give them

22  back," if that issue had been raised, there is no question that

23  Ms. Burke would not have released the Deans from the BAA.

24          Under the terms of the BAA, it's clearly -- it was

25  clearly intent -- clearly the intent of the parties that that --

26  that the obligations of the Deans under the BAA would survive,

27  even the termination of their business relationship.  In

28  paragraph 4.4 of the BAA, it says the obligations of the

1    business associate, that is the Deans, under this article 4,

2    shall survive the termination of the business relationship

3    between the parties and/or the BAA.

4            Under the BAA, in paragraph 4.3, "Effects of

5    Termination:  Upon termination of the business relationship,

6    business associates shall, at Kaiser's direction, return or

7    destroy all protected information that the business association

8    or its agents still maintain in any form and shall retain no

9    copies of such business -- of such protected information."

10           THE COURT:  I agree.  If you were here, if this was

11   a -- if this was a lawsuit about whether they breached the BAA,

12   I think so far there is evidence that has been submitted, both

13   in support of and in opposition to the Deans' motion for summary

14   judgment, that suggests that they may have breached that

15   agreement by maintaining information that they did not have a

16   right to continue to possess.  But that's not what we are here

17   about today.

18           The question becomes:  Did Kaiser give up all of those

19   rights that they otherwise may have had to assert a breach of

20   the BAA by entering into a settlement agreement which purports

21   to give up all claims, past, present, and future, with the

22   exception of what is carved out under paragraph 13 of the

23   settlement agreement?

24           And the next question that is unanswered is:  Does

25   Kaiser have a right to assert, does Kaiser have a right to

26   assert, under paragraph 13 of the settlement agreement, a

27   violation of HIPAA on behalf of their clients?  Or former

28   patients.  Not clients, but patients.

1          MR. FREEMAN:  Well, that certainly is what Kaiser is

2    trying to do here.  That's the whole genesis of this dispute,

3    is --

4          THE COURT:  But that wasn't an allegation within your

5    complaint.  Was it?

6          MR. FREEMAN:  It was not.  But it can be easily

7    remedied if we are given leave to amend.

8          THE COURT:  Okay, but I --

9          MR. FREEMAN:  And we request that.

10         THE COURT:  But I don't want to usurp the three issues

11   that you wanted to address, and one is intent.

12         MR. FREEMAN:  Right.  But let me just make one other

13   point on that.  And it is to point out that I think there is --

14   that the Deans themselves have admitted that their obligations

15   under the BAA survived.  In Mr. Dean's letter to me of

16   August 8th, 2011, which is exhibit L, he says, "This letter is

17   to confirm that your files, in compliance with the three

18   agreements mentioned in your letter" -- that is my letter to

19   him -- "the BAA dated June 24th, 2009, the transfer agreement of

20   July 2010, and the settlement agreement dated March 24, 2011."

21         So we --

22         THE COURT:  I'm sorry.  I apologize.

23         MR. FREEMAN:  No, that's all right.

24         THE COURT:  I'm trying to get this thing so I can read

25   it.  Go right ahead.

26         MR. FREEMAN:  My point is that Mr. Dean, we would

27   contend, understood that he was obligated under the -- that the

28   BAA survive.  That it was not, as he now argues, terminated by

1  the settlement agreement.

2          MR. DEAN:  Your Honor, I -- I have heard him.  We have

3  something to say.

4          THE COURT:  You will get a chance in a minute.

5          MR. DEAN:  Oh, I'm sorry.  Sure.

6          THE COURT:  Please continue.

7          MR. FREEMAN:  Let me just briefly finish, then, Your

8  Honor, because I think I have actually made my other two points.

9          The -- the common counts for claim and delivery and

10 conversion and trespass with respect to the records, we -- we

11 think arose after the agreement, after Kaiser learned that Dean

12 retained possession of the electronic medical records.  The

13 e-mails that had the PHI, that -- there is no question those

14 records were Kaiser's property.  Kaiser was entitled to the

15 return of them, separate and apart from the BAA, separate and

16 apart from any of the other agreements Kaiser had.  The

17 essential point is that the Deans had no right to retain those

18 records.  And when Kaiser asked that they be returned, the Deans

19 refused without payment of additional compensation for those

20 records.

21          And then the third point, Your Honor, is if the court,

22 as we have discussed, is going to adopt its tentative relative

23 to the interpretation of the settlement agreement and its

24 effect, then we would request leave to amend the complaint to

25 seek enforcement of the terms of the settlement agreement and

26 specifically the obligations under the BAA for the Deans to

27 provide access to those records and their breach of that

28 provision by their failure to do so, as well as alternative

1    theories based on mistake of fact and concealment of material

2    facts at the time the settlement agreement was entered into.

3          THE COURT:  Thank you.  Kaiser's -- Kaiser's request

4    for judicial notice and opposition to the defendant's motion for

5    summary judgment is granted.  And we are going to take a morning

6    break.  We will stand in recess of 15 minutes, and then the

7    Deans will have a chance to respond.

8          MR. FREEMAN:  Thank you, Your Honor.

9                      (Recess.)

10         THE COURT:  Back on the record in the matter of Kaiser

11   versus Dean.

12         Mr. Dean, you may proceed, sir.

13         MR. DEAN:  Yes, Your Honor.  Thank you for taking the

14   time to look into this.  We really appreciate it.

15         We agree with your tentative ruling.  Mr. Freeman has

16   brought out a point that allegedly Kaiser's counsel at that

17   time, Holly Burke, claims that she was unaware that we still

18   were retaining PHI in our custody or control.  At the time that

19   this agreement was drafted, I was represented by counsel, Tom

20   Stefanelli.  Mr. Stefanelli clearly told me that this agreement

21   released all claims and causes of action, not just related to

22   the dispute, but to any claims involving our business

23   relationship as defined in the recitals of the settlement

24   agreement.

25         THE COURT:  Why did you send a written notification

26   after the date of the settlement in which you asserted that the

27   settlement only resolved issues regarding compensation?

28         MR. DEAN:  Because there were other issues that were

1    involved.  One was the reporting of the HIPAA violations, and

2    the state violations of confidentiality.  And I contacted Holly

3    Burke in August of 2011, and that's what I called her about.  I

4    also at that time, a little over two years ago now, contacted

5    the California Department of Public Health and notified them of

6    the situation that we had this PHI and that we were keeping it

7    as evidence, and they were well aware of that and the reasons

8    why we had it.  There was no doubt that we had the stuff.

9          I -- I feel that this agreement that we have, this

10   settlement agreement, was very clear that it only pertained to

11   us not -- one, not disclosing it to unauthorized third parties;

12   and, two, to protect it.  But the protections in this agreement

13   are more than just the BAA.  If you look at paragraph 13, it

14   required us to also --

15         THE COURT:  Let me -- excuse me.  I apologize.  I want

16   to make sure -- I want to get to paragraph 13, if you can just

17   bear with me.

18         MR. DEAN:  Yes.

19         THE COURT:  Okay.  I'm there.

20         MR. DEAN:  Okay.  Here, I'm just going to read from the

21   part and -- part of this paragraph 13.  Under "Non-disclosure,"

22   it starts at the word "KP."  It says:  "KP and Dean will

23   continue" -- and they left the word "to" out of there, but I'm

24   sure that's what everybody meant -- "to take appropriate

25   steps" -- first of all, "to preserve," which my definition of

26   that is to maintain or retain.  And then it says, "all

27   confidential information in the medical records" -- now, that

28   was referring to patient health information -- "handled by Dean

1    in the course of providing services" -- now, the "services" is

2    described in the recitals, of all the things that we were doing

3    with the medical records and the patient information, and all

4    that was part of our business relationship as described in the

5    recitals.

6        Then it continues on to say "as required by."  Now,

7    first, "Confidentiality of Medical Records Act, Civil Code 56,"

8    Civil Code 56 is -- really deals with who you can disclose

9    patient information to without a written authorization.  It's

10    very, very concise.  Then it goes on to say "the Federal Health

11    Insurance Portability and Accountability Act."  That's HIPAA.

12    HIPAA also defines who you can disclose it to, but also the

13    protections that are required and how you are supposed to

14    preserve it.

15        Then, the third thing is "the parties' business

16    associate agreement."  Now, counsel has said "business associate

17    agreement," "business associate agreement."  They keep referring

18    to that.  There is more to this than that.  This clearly shows

19    that the -- the reason why this is in here is that we were to

20    continue to protect it and preserve it and keep it confidential.

21        Our feeling is this agreement, we are married.  And

22    it's binding.  And we both agree, per the March 2011 settlement

23    agreement, paragraph 18, it says:  "This agreement states the

24    entire agreement among the parties who have executed this

25    agreement and supersedes their prior agreements, negotiations or

26    understandings."  So our feeling was that this controls.  The

27    BAA was incorporated into the agreement as well as the CMIA and

28    HIPAA, to require us to protect it and not disclose it unless it

1    was disclosed to an authorized third party or we had a patient's

2    written authorization.

3        The settlement agreement, the first page of it, under

4    "Recitals," this is very important, it says:  "Whereas, Surefile

5    and KP failed to fully memorialize their business relationship

6    relating to the services in a written agreement."  This

7    settlement and release agreement was what we were to follow.  It

8    is the agreement that we are bound by now, and we have followed

9    the instructions of the agreement.

10        We were represented by counsel, as well as Kaiser's own

11   in-house counsel, Holly Burke, drafted this agreement.  These

12   were two licensed attorneys that knew exactly what they were

13   doing.  I was told very clearly that this agreement is what

14   binds us together, and the literal words of the agreement

15   require us to preserve the information that we retain or got

16   during services.  We were to follow the status quo from when we

17   have signed the transfer agreement in 2010.  And that's exactly

18   what the words say.

19        I'm done, sir.

20        THE COURT:  Thanks.  I have a question for you.  You

21   filed a declaration indicating that you had destroyed all of the

22   personal information.  Correct?

23        MR. DEAN:  Yes, Your Honor.

24        THE COURT:  What is it that you are preserving, then?

25        MR. DEAN:  Now?

26        THE COURT:  Yes.

27        MR. DEAN:  Nothing.  That's -- I don't have anything.

28        THE COURT:  Okay.  Let's -- okay.

1    MR. DEAN:  I'm sorry.

2    THE COURT:  Mr. Freeman.  What is it that you want from

3  these folks?

4    MR. FREEMAN:  We want an entry of a permanent

5  injunction that would prevent them from maintaining or using any

6  personal health information.  If they have nothing, then the

7  permanent injunction would just assure that nothing was ever

8  used.

9    THE COURT:  Wasn't there an injunction that was issued

10  in this case by my predecessor, and is that still in effect?

11    MR. FREEMAN:  It is.

12    THE COURT:  And was it ever converted from a

13  preliminary injunction to a permanent injunction?

14    MR. FREEMAN:  It was not.

15    THE COURT:  But it still continues in force and effect

16  today?

17    MR. FREEMAN:  It does.  And just to be clear on that

18  point, Your Honor, because this has been a source of discussion

19  between the Deans and Kaiser since January of this year, when

20  the preliminary injunction was entered, just to back up, the

21  Deans told Kaiser they had the electronic records with personal

22  health information.  They refused to return them.  We negotiated

23  over -- to attempt to get access to those so that they could be

24  deleted from their computers, they could be deleted from their

25  e-mail accounts, et cetera.

26    THE COURT:  Since that discussion, did his declaration

27  follow that, saying that it had all been destroyed, or was his

28  declaration before?

```
1           MR. FREEMAN:  It did.

2           THE COURT:  Okay.  Let me just stop.

3           MR. FREEMAN:  And --

4           THE COURT:  Okay.  Let me just stop you, sir.

5           Sir, do you have any electronic information whatsoever

6  of any Kaiser patient?

7           MR. DEAN:  No.  Your Honor, no.  Your Honor, they want

8  to shake us and hang us upside down.  We don't have anything.

9           THE COURT:  Okay.  Mr. Dean, let me do it one at a

10  time.  Do you have any electronic data whatsoever that has any

11  reference to any Kaiser patient?

12           MR. DEAN:  No.

13           THE COURT:  Next, do you have any hard copies of any

14  written records which in any way relate or refer to any Kaiser

15  patient?

16           MR. DEAN:  No.

17           THE COURT:  Are you preserving any data whatsoever that

18  has anything to do with any Kaiser patient in any form

19  whatsoever, whether hard copy, electronic, or otherwise?

20           MR. DEAN:  No.

21           THE COURT:  Okay.  Ms. Dean, do you agree?  Would your

22  answers be the same?

23           MS. DEAN:  Yes, they would be absolutely the same.

24           THE COURT:  All right.  You may continue.  I

25  interrupted you.

26           MR. FREEMAN:  So -- so at the time this complaint was

27  filed in October of 2012, we knew the Deans had possession of

28  the PHI based on what they had provided to us.  They had refused
```

1  a request to return it.  They had refused to allow us to access

2  their devices or e-mail accounts to delete it.

3       We filed the complaint.  We got the TRO.  We -- between

4  the time the TRO was entered and the time of the hearing on the

5  preliminary injunction in January of 2010, the Deans submitted

6  declarations saying, "We have deleted everything.  We have

7  deleted all the PHI."  Notwithstanding that, the court entered

8  the preliminary injunction.

9       Subsequent to the entry of the preliminary injunction,

10 we received from the Deans in May of this year three medical

11 record folders and a CD that contained a list of hundreds, maybe

12 thousands, of medical records that they had cataloged.  They,

13 upon -- they notified me of that.  I asked them to return it.

14 They did return it.  And we got rid of it.

15      The reason -- the reason we seek the entry of a

16 permanent injunction is simply to assure that in the event that

17 the Deans discover PHI on their computers, on their phones, in

18 their e-mail accounts, if muddling around in their warehouse

19 they find additional records, they are under an obligation to

20 return that to us without us having to worry about whether those

21 records will be disclosed, used, or any other way --

22      THE COURT:  All right.  Let me stop you.

23      This is not -- you have an opportunity to be heard, and

24 so I'm not asking for a commitment if you have any objection

25 whatsoever, but I do have a question for you.  And the question

26 would be:  Do you have an objection to the preliminary

27 injunction that has previously been ordered simply becoming a

28 permanent order such that should you find any such documents you

1   inadvertently didn't find or see or return earlier, you have an

2   affirmative obligation to return them?  Do you have an objection

3   to the preliminary injunction becoming a permanent injunction?

4            MR. DEAN:  Yes, we do, Your Honor.

5            THE COURT:  Okay.  All right.

6            Anything further?

7            MR. FREEMAN:  Your Honor, just given the discussion

8   that we have had here today, if the court intends to adopt its

9   tentative, we would, as I have previously discussed, request

10  leave to amend based on the *Kirby versus -- Kirby* decision and

11  the case of *Mediterranean Construction Company versus State Farm*

12  *Fire & Casualty Company*.

13           THE COURT:  Okay.  Let's discuss that for a minute.  I

14  know that's your fallback position.  And my question to you is:

15  Why wouldn't paragraph 3 of the settlement agreement preclude

16  you from being successful on an amended complaint, specifically

17  as follows:  Under paragraph 3 of the settlement agreement, it

18  indicates about a third -- about a halfway down that paragraph,

19  it starts with -- let's just pick up from the word "thereof,"

20  comma, "and/or each of the aforesaid, collectively referred to

21  herein as 'affiliates,' from all claims, actions, causes of

22  action of any nature and for all liabilities and obligations of

23  every kind and character arising out of or relating to the

24  dispute and any and all claims that were or could have been

25  asserted relating to and/or arising from any of the foregoing,

26  regardless of whether such claims, actions or causes of action

27  have arisen prior to the effective date or arise after the

28  effective date."

1          How is it that any purported amended complaint that

2    could allege would wind up not being covered by this language

3    that Ms. Burke drafted in the settlement agreement?  And the

4    reason I ask you that is the court is not obligated to grant

5    your motion to amend the pleadings if you cannot legally plead a

6    cause of action that otherwise is not defeated by this

7    settlement agreement under paragraph 3, although I understand

8    the court's obligation to liberally allow pleadings or amendment

9    to the pleadings.  But I just want to ask you.  I don't want you

10   to go through an exercise in futility.  How do you plead around

11   that?

12          MR. FREEMAN:  Based on fraud.

13          THE COURT:  How?

14          MR. FREEMAN:  Your Honor, as I have tried to explain,

15   the parties, at least Kaiser, understood what it had negotiated

16   at the time it entered into the transfer agreement was the

17   return of all of the medical records that the Deans had in their

18   possession.  They were unaware of the Deans' concealment of the

19   fact that they retained electronic records of Kaiser that had

20   personal health information.

21          THE COURT:  Okay.  But then we -- then you are

22   triggered by a fully integrated document.  Are you going to

23   introduce parol evidence to try and defeat paragraph 18, which

24   fully integrates into this settlement agreement all prior

25   agreements, negotiations or understandings?

26          MR. FREEMAN:  Yes.  Your Honor, what it comes down to

27   is the fact that Ms. Burke negotiated this agreement

28   understanding that the dispute that was being resolved was the

1  compensation for the Deans' services.

2      THE COURT: Despite language to the contrary. So she's

3  going to submit a declaration to the court saying that "I

4  drafted this release agreement, I chose the words within this

5  release agreement, I made it all-encompassing, but, oh, by the

6  way, I did not intend it to be a fully and completely integrated

7  release agreement, releasing all known and unknown claims" and

8  then specifically making reference to 1534? She's going to say

9  that? I mean, she essentially already has.

10      MR. FREEMAN: She has said that, Your Honor. And the

11  fact of the matter is that the Deans obviously intentionally

12  withheld that information. The ink literally on this agreement

13  wasn't dry before Mr. Dean turned around and said, "Hey, I have

14  got more records, and I want $60,000 to return them."

15      THE COURT: You have not persuaded me that my tentative

16  ruling should be overturned. I think the language within the

17  settlement agreement establishes as a matter of law that there

18  was a release of all of the claims that are alleged in the

19  plaintiffs' complaint. And so the tentative order of the court

20  shall become the order as it relates to the motion for summary

21  judgment, and the plaintiff is required to give notice.

22      However, I will grant your oral motion to amend the

23  complaint. Now, I am doing so only because I think that under

24  the cases that say that I am to liberally construe a party's

25  right to amend the complaint, that I am going to do so. But I

26  must tell you that it is a close call because paragraph 3 of

27  this complaint may well, unless you can give me authority to the

28  contrary, defeat those other causes of action.

1    I am not ruling on this at this time because I have

2    candidly not done the research, nor have I seen the points and

3    authorities.  But -- so what do you propose the order to be?

4    The motion for summary judgment on these causes of action are

5    granted, consistent with the tentative ruling.  And you are

6    permitted leave to amend.  The order is you file your amended

7    complaint within 30 days from today.

8        Anything on behalf of the Deans?

9        MR. DEAN:  Yes, Your Honor.  We -- you had said to do a

10   proposed order, basically what you said.  But we have also asked

11   in the order that the motion for -- that the preliminary

12   injunction be vacated because we don't have anything.

13   Therefore, there is no -- I guess as a matter of law, how can

14   you tell me to protect something I don't have?  We have had

15   depositions with Mr. Freeman; two of them.  We have told him

16   we -- we had a declaration.

17       And, Your Honor, this situation where I found three

18   records and a disc, I thought he would pat me on the back, thank

19   you, because, Your Honor, the preliminary injunction tells me to

20   return, delete or destroy.  I could have just destroyed it and

21   said nothing.  There is no conspiracy here.  They want my

22   property.  They want my computers.  I want my friend's '68

23   Camaro in his garage, but he won't take a thousand dollars for

24   it.

25       We have an agreement that we are bound together.  If he

26   wants to keep this litigation -- we are not lawyers, but we are

27   getting a little tired of it because we haven't done anything

28   wrong.  We have abided by the agreement.  It's very evident.

1   They are just bullies, and they are using their money to force
2   us to take -- we have lost a half a million dollars.  We have
3   lost our life savings over this fiasco because we said it was
4   wrong to maintain all those patient records without a written
5   agreement and insurance.  They finally gave us one based on the
6   fact that my wife was Hispanic, and that's a fact, in the
7   documents.
8           THE COURT:  You know, I always encourage the parties --
9   you know, sometimes competitive spirits can be aroused on both
10  sides, and I always encourage parties in a good-faith,
11  professional approach to see if they can't resolve their
12  differences.  And so although I am compelled, Mr. Freeman, to, I
13  think, give you leave to amend, I would encourage you to look
14  closely at this settlement agreement and whether or not you can
15  legitimately bring a cause of action for fraud.
16          I mean, inadvertent discovery of records and then
17  giving those to you doesn't seem to suggest a fraudulent intent,
18  but again I'm not ruling on that or I'm not passing judgment on
19  that, and I'm not making any factual determination because I
20  don't know what happened.
21          MR. FREEMAN:  That wasn't the basis for our lawsuit
22  either, Your Honor.
23          THE COURT:  All right.
24          MR. FREEMAN:  The basis for our lawsuit was the
25  withholding of the electronic records, which Mr. Dean in
26  correspondence threatened to disclose, threatened -- went to the
27  press, made disclosures of the fact -- "Hey, I have got this on
28  my computer sitting in my garage.  I'm leaving my garage door

1  open.  Aren't you lucky that nobody stole my computers and got

2  this PHI."

3      THE COURT:  And since then, under penalty of perjury,

4  which is a felony in the state of California, he has represented

5  that all such records have in fact been destroyed and he doesn't

6  possess any.  Now, on the one hand, those comments to you

7  certainly have some inferences that I understand your position

8  and your interpretation.  Since then, having received a

9  declaration under penalty of perjury, both Mr. and Mrs. Dean are

10  running a substantial and significant risk regarding the signing

11  of such a declaration if it's untrue.

12      But be that as it may, unless there is something

13  further, I think I have given this serious and thorough

14  consideration.  And I very much appreciate both Kaiser's

15  position and the Deans' position, and I'm hopeful that you folks

16  can resolve it, otherwise I will for you.

17      MR. FREEMAN:  One final housekeeping matter, Your

18  Honor.  The trial date in this matter is set for September 9th,

19  and I assume that's vacated.

20      THE COURT:  That trial date is vacated.

21      MR. FREEMAN:  I would also ask the court to indulge me

22  in a brief off-the-record discussion once we have concluded the

23  hearing.

24      THE COURT:  Sure.  Is that okay with the Deans?

25      MR. DEAN:  He wants to ex parte, they call it, right?

26      THE COURT:  No.  No.  He wants an off-the-record

27  discussion.  And I don't know if that's to your benefit or not,

28  but I would not have such a discussion outside your presence.

1      MR. DEAN:  Well, Your Honor, one thing before -- I'm
2  glad to accommodate that.  I guess you are the one that does.
3  Would you please sign this?  This is what you asked me as far as
4  your tentative ruling and also --
5      THE COURT:  I will look at it, but let me tell you --
6  and I'm -- I want to commend you, sir.  I think you have done a
7  fine job, not being a lawyer.
8      MR. DEAN:  Thank you.
9      THE COURT:  No, I can't sign this because I'm not
10  vacating the preliminary injunction as of today's date.  Also, I
11  have asked counsel on behalf of Kaiser to prepare the formal
12  order.  And because I want to make certain that it is absolutely
13  consistent with the tentative and it addresses his oral motion
14  to amend the pleadings, I'm going to ask him to prepare that.
15  He will send you a copy.  If you have any objections to his
16  proposed order, simply file that objection with the court.  I'm
17  sure it will be absolutely consistent with the tentative,
18  though.  Okay?
19      MR. DEAN:  Thank you, Your Honor.
20      MS. DEAN:  Thank you.
21      THE COURT:  Okay.  We are now off the record.
22      MR. FREEMAN:  Thank you, Your Honor.
23              (Discussion off the record.)
24      THE COURT:  Let's go back on the record.  We have had a
25  short discussion off the record concerning the possibility of
26  engaging in a mandatory settlement conference.  Counsel on
27  behalf of Kaiser and Mr. and Mrs. Dean have indicated that they
28  would like this court to participate and will waive any issues

1  regarding my disqualification as the trial judge.

2          Counsel on behalf of Kaiser will prepare the

3  appropriate stipulation and waiver.  And I conduct settlement

4  conferences on a Friday.  I am gone the next two weeks.  Please

5  tell me when would be the earliest and most convenient date for

6  the parties.

7          MR. FREEMAN:  Your Honor, I am available after

8  August 26th.  So --

9          THE COURT:  How is August 30th?

10         MR. FREEMAN:  That's fine for me.

11         THE COURT:  How is August 30th for you folks?

12         MR. DEAN:  Just so -- I need to just have a few things

13  clarified, Your Honor.  First of all, the motion that we have

14  filed today, motion for summary judgment, has been granted.  But

15  you have ruled that you are allowing them to amend their

16  complaint.

17         THE COURT:  Yes.

18         MR. DEAN:  Okay.  So basically Mr. Freeman has asked

19  that we have a mandatory settlement conference, which I believe

20  is required by law.

21         THE COURT:  It's not.

22         MR. DEAN:  Oh.

23         THE COURT:  It's not required.

24         MR. DEAN:  Oh, okay.

25         THE COURT:  The word "mandatory" means that your

26  appearance is mandatory.

27         MR. DEAN:  Oh.

28         THE COURT:  I'm not required to set a settlement

1  conference unless I believe that it would be of benefit to the

2  parties.

3         MR. DEAN:  So my question is, let's say we go to that

4  and then, you know, we just get this offer from Kaiser, which is

5  basically nothing, and we say, "No, we want to go ahead, and

6  let's go to trial."  And we understand you would be the judge,

7  which we are totally fine with.  Is that what you are saying,

8  that we would still have the option, if we can't settle it, to

9  go to trial?

10        THE COURT:  Well, you do except for the following:  I

11 don't think -- there wasn't a cross-complaint filed in this

12 case, is there?  Okay.  So --

13        MR. DEAN:  Well, Your Honor, actually we were going to

14 file one.

15        THE COURT:  But it's too late.

16        MR. DEAN:  Yeah.

17        THE COURT:  You didn't file one.  If the case can't be

18 settled, then the next thing that will happen is they are going

19 to file an amended complaint.  You are going to probably file

20 another motion, and then I'm going to make a determination

21 whether any other causes of action survive this settlement

22 agreement.  Ultimately, if -- and I'm not prejudging it because

23 I haven't seen it yet -- but if I were to make a determination

24 that any new amended complaint does not survive the settlement

25 agreement, then the case is over and you win.

26        MR. DEAN:  And is that, like, done with -- what do you

27 call it? -- without prejudice or --

28        THE COURT:  With prejudice.

1          MR. DEAN:  That means they can file again or no more?

2          THE COURT:  No.  No.  It's over.

3          MR. DEAN:  Okay.

4          THE COURT:  I mean, they can appeal it.  I mean -- and

5    so I can't tell you that it is absolutely over.  As far as this

6    court would be concerned, it would be over.  But then they would

7    have a right to appeal it to the court of appeal, arguing that I

8    made an erroneous ruling by granting this motion.  Okay?

9          MR. DEAN:  Yes.

10         THE COURT:  So if you want to have a settlement

11   conference, I'll give you the time.  Would you like to do this,

12   Mr. Dean?

13         MR. DEAN:  Yes, Your Honor.  And, like, in the

14   meantime, maybe -- maybe Kaiser may decide to, you know --

15         THE COURT:  I'll let you discuss that with them.

16         So the matter will be set for a settlement conference

17   on August 30th, at --

18         THE CLERK:  Ten.

19         THE COURT:  -- at 10:00 a.m.

20         THE CLERK:  Here.

21         THE COURT:  You know, I apologize.  Am I gone the 26th?

22   I am, right?

23         THE CLERK:  That's for the CEO.

24         THE COURT:  Okay.  I think I leave the afternoon of the

25   30th, because I'm gone the following week.  I'm thinking about

26   setting it the 29th.

27         THE CLERK:  You can have them come in at 9:00 or 9:30

28   if you want.

1    THE COURT: Let's set it for nine o'clock on Friday the
2 30th. And so I'm going to allocate -- I'm going to allocate
3 two, two and a half hours. Will that be enough time, in your
4 view?

5    MS. DEAN: Yes, sir.

6    MR. FREEMAN: I think so, Your Honor.

7    THE COURT: Okay. And if it took longer than that, I
8 would want to set it on a different date. I'm leaving -- I
9 think I leave that afternoon. Okay?

10    MR. FREEMAN: To be safe, can we pick a different date?

11    THE COURT: Sure. Let's pick September 13th at
12 10:00 a.m. Okay?

13    Thanks, folks.

14    MR. DEAN: Thank you, Your Honor.

15    MR. FREEMAN: One other housekeeping matter. Let me,
16 if I could, Your Honor, just check my calendar that date.

17    I have a case management conference I'm required to
18 attend that date, Your Honor.

19    THE COURT: Where?

20    MR. FREEMAN: L.A. Superior Court.

21    THE COURT: Can you appear by CourtCall in L.A.?

22    MR. FREEMAN: I guess I could, yeah.

23    THE COURT: Okay. Otherwise I have got to go to
24 September 20th, and now we are getting it so far --

25    MR. FREEMAN: Yeah. I appreciate that, Your Honor. I
26 will attend by CourtCall.

27    THE COURT: Okay. The matter is set for the 13th of
28 September. Thank you for coming in. Have a good day.

1          MR. FREEMAN:  One other point.

2          THE COURT:  Yeah.

3          MR. FREEMAN:  Since we are going to have this

4   conference, and our motion to amend is required to be filed

5   within 30 days, can we extend that until after our attempts to

6   resolve this?

7          THE COURT:  Your amended complaint will be due on or

8   before September 20th.  That's the week after the settlement

9   conference.

10          MR. FREEMAN:  That's fine, Your Honor.  Thank you.

11          THE COURT:  Okay?

12          Thank you, Mr. and Mrs. Dean.

13          MR. DEAN:  Thank you.

14          MS. DEAN:  Thank you.

15          THE COURT:  Thank you, Mr. Freeman.

16          Have a good day.

17          MR. FREEMAN:  Thank you.

18          THE COURT:  The court is in recess.

19                  (Proceedings concluded.)

20

21

22

23

24

25

26

27

28

REPORTER'S CERTIFICATE

KAISER FOUNDATION HEALTH PLAN, INC.,    )
and KAISER FOUNDATION HOSPITALS,        )
                                        )
                    Plaintiffs,         )
                                        )
              vs.                       ) Case No. INC1207224
                                        )
STEPHAN CHRISTOPHER DEAN, LIZA          )
DEAN, DBA SUREFILE FILING SYSTEMS,      )
and DOES 1-10, Inclusive,               )
                                        )
                    Defendants.         )
_____)

        I, Terri L. Dickneider, Certified Shorthand Reporter

No. 5031, hereby certify:

        On July 31, 2013, in the county of Riverside, state of

California, I took in stenotype a true and correct report of the

testimony given and proceedings had in the above-entitled case,

pages 1-37, and that the foregoing is a true and accurate

transcription of my stenotype notes and is the whole thereof.


DATED:  Indio, California; August 4, 2013.




                        _Terri L. Dickneider_____

                        TERRI L. DICKNEIDER, CSR No. 5031


TERRI L. DICKNEIDER, CSR

# EXHIBIT 3

1    THOMAS M. FREEMAN, Cal. Bar No. 109309
     SARAH EDWARDS, Cal. Bar No. 268679
2    MARION'S INN LLP
     1611 Telegraph Avenue, Suite 707
3    Oakland, California 94612-2145
     Telephone: (510) 451-6770
4    Facsimile: (510) 451-1711
     Email: tmf@marionsinn.com
5    Email: se@marionsinn.com

6    Attorneys for Plaintiffs Kaiser Foundation
     Health Plan, Inc. and Kaiser Foundation Hospitals
7

8

     **FILED**
     SUPERIOR COURT OF CALIFORNIA
     COUNTY OF RIVERSIDE

     AUG 2 0 2013

     K. CHANK

9              SUPERIOR COURT OF CALIFORNIA

10            COUNTY OF RIVERSIDE - PALM SPRINGS

11

12    KAISER FOUNDATION HEALTH PLAN, INC. )
     and KAISER FOUNDATION HOSPITALS, )
13                                    )
                Plaintiffs, )
14                                    )
           v.                        )
15                                    )
     STEPHAN CHRISTOPHER DEAN, LIZA )
16    DEAN, DBA SUREFILE FILING SYSTEMS, )
     and DOES 1-10, inclusive, )
17                                    )
                Defendants. )
18                                    )

No. INC 1207224

Assigned to Hon. David M. Chapman

Dept. PS-2

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Complaint filed: October 12, 2012
Trial Date: TBA

19

20

21       Defendants' Stephan Dean and Liza Dean dba SureFile filing Systems motion for

22    summary judgment came on for hearing on July 31, 2013. Defendants appeared *in propia*

23    *persona* and Thomas M. Freeman, Marion's Inn LLP, appeared on behalf of plaintiffs' and

24    responding parties Kaiser foundation Health Plan, Inc. and Kaiser Foundation Hospitals.

25       After review and consideration of the papers submitted by the parties and argument of the

26    parties the Court finds and rules as follows:

27       This complaint for (1) breach 01 contract, (2) claim and delivery, (3) conversion and (4)

28    unfair business practices is based upon allegations that plaintiffs, Kaiser Foundation Health Plan

1   (KFHP) and Kaiser Foundation Hospital (Kaiser), and defendants entered into several associated

2   agreements (Business Associate Agreement ("BAA") Moreno Valley Agreement (MVA), West

3   Los Angeles Agreement (WLAA)) in which defendants agreed to scan, organize and store

4   medical records and protected patient information for Kaiser's patients and to allow KFHP

5   access to any records maintained for Kaiser; that in 2010 a dispute arose between Kaiser and

6   defendants regarding defendants' performance of the MVA and WLAA after defendants

7   allegedly interfered with plaintiffs' access to its records and failed to verify that they had

8   adequate insurance or the financial ability to pay to protect the records; that in on 07/06/10

9   plaintiffs notified defendants that they were in breach; that as a result of this dispute, on

10  07/23/10, KFHP and defendants entered into a Sure File Transfer Agreement (SFTA) in which

11  the parties agreed to terminate their business relationship and to affect the transfer of possession

12  of the records and patient information to plaintiffs; that in 03/11 plaintiffs and defendants

13  "negotiated a confidential settlement agreement to resolve all the outstanding issues between

14  them"; that since the execution of the settlement agreement defendants have notified Kaiser that

15  they are in possession of records of Kaiser which defendants claim contain protected patient

16  information; and that defendants breached the BAA, MVA, WLAA and SFTA by retaining

17  patient records, refusing to return or destroy or allow plaintiffs access to those records, refusing

18  to certify that the return or destruction of those records, risking the unauthorized disclosure of

19  those records and threatening to use those records.

20      GROUNDS FOR MOTION: The motion is based upon the grounds that there is no

21  triable issue of fact that this action is barred by the settlement agreement and release.

22      Plaintiffs allege that the parties "negotiated a confidential settlement agreement to resolve

23  all the outstanding issues between them." Comp. ¶ 16. That settlement agreement states "the

24  parties ... now desire to settle and compromise any claims they might possess against the other,

25  settle the Dispute and otherwise resolve any outstanding issues as more fully set forth herein."

26  Comp. ¶ 16.

27      There is no triable issue of fact that the parties settled all disputes arising out of the

28  subject agreements. The settlement agreement states "the parties...now desire to settle and

2

1   compromise any claims they might possess against the other, settle the dispute and otherwise

2   resolve any outstanding issues as more fully set forth herein." Camp. ¶ 16. Despite the broad

3   scope of the settlement, plaintiffs argue that the settlement agreement applies only to claims for

4   non-payment made by defendants. In support of this argument defendants' counsel testifies that

5   the BAA remained in effect after the settlement agreement was executed as is shown by

6   paragraph 13 of the settlement agreement, which states in pertinent part that the parties "will

7   continue to take appropriate steps to preserve all confidential information in the medical records

8   handled by Dean during the course of providing Services as required by...the parties

9   Business Associates Agreement... " See Freeman Decl., ¶ 7.

10       Alternatively, plaintiffs argue that they were mistaken in that they never contemplated

11   that defendants had retained any records and that because defendants did retain records, the

12   settlement agreement was procured by fraud. It is noted that plaintiffs  have not brought an

13   action fraud or to enforce the settlement agreement.

14       On its face the settlement agreement is not confined to claims of non-payment made by

15   plaintiffs. Any argument that the BAA remained in effect is contradicted by the pleadings.

16       As a result of the foregoing dispute, KFH and defendants negotiated a transfer agreement

17   ("Sure File Transfer Agreement") to effect the transfer of possession from defendants to KFH of

18   all of the medical records and confidential Protected Information of KAISER patients and

19   members. The Sure File Transfer Agreement was signed by Stephan Dean on or about July 23,

20   2010, and *terminated the ongoing business relationship between defendants* and KAISER.

21   Pursuant to the terms of the Sure File Transfer Agreement, DEAN specifically agreed to take

22   appropriate steps to preserve all confidential information maintained in those records as required

23   by the Confidentiality of Medical Records Act, Cal. Civil Code section 56 et seq., the federal

24   Health Insurance Portability and Accountability Act ("HIPAA") and the parties' BAA.

25       Following the execution of the Sure File Transfer Agreement, in March 2011 the

26   defendants and plaintiffs negotiated a confidentia l settlement agreement to resolve all the

27   outstanding issues between them ... ¶¶ 15.16.

28   ///

3

1        Plaintiffs now argue (1) that the settlement agreement applies only to claims for

2   nonpayment made by defendants; (2) that plaintiffs were mistaken in that never contemplated

3   that defendants had retained any records and (3) that because defendants did retain records, the

4   settlement agreement was procured by fraud.

5        These arguments fail because the settlement agreement makes clear that it is not

6   confined to claims of non-payment made by plaintiffs.

7        Either party may rely on admissions of fact contained in the opposing party's pleadings as

8   evidence. "An admission in the pleadings is not treated procedurally as evidence; i.e., the

9   pleading need not (and should not) be offered in evidence, but may be commented on in

10  argument and relied on as part of the case. And it is fundamentally different from evidence. It is

11  a waiver of proof of a fact by conceding its truth, and it has the effect of removing the matter

12  from the issues. Under the doctrine of 'conclusiveness of pleadings: a pleader is bound by well

13  pleaded material allegations or by failure to deny well pleaded material allegations." 4 Wilkin,

14  *Cal. Procedure* (5th ed. 2008) Plead, § 452 *Valerio v. Andrew Youngquist Const.* (2002) 103

15  Cal.App.4th 1264, 1271.

16       The complaint alleges in great detail the history of their contracts with defendants, the

17  resulting dispute re their lack of access to and defendants wrongful retention of medical records

18  and the resolution of that dispute through a settlement agreement. Those allegations are

19  supported by the various agreements entered into between the parties, culminating in the

20  termination of their business and the intended final transfer of document and protected patient

21  information through the SFTA and resolution of all disputes through the settlement agreement.

22       As to the claims that the settlement agreement may have been entered into through

23  mistake or fraud, neither is alleged. The pleadings serve as the "outer measure of materiality" in

24  a summary judgment motion, and the motion may not be granted or denied on issues not raised

25  by the pleadings. *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258; *Nieto v. Blue*

26  *Shield of Calif. Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 73–"the pleadings determine

27  the scope of relevant issues on a summary judgment motion." If plaintiffs wanted to avoid the

28  application of the settlement agreement, they need to plead that theory.

4

1    ACCORDINGLY, IT IS HEREBY ORDERED that Defendants' Motion is GRANTED.

2    IT IS FURTHER ORDERED that Defendants' oral request at the hearing to lift the

3    Preliminary Injunction issued by this Court on January 10, 2013 is DENIED. The Preliminary

4    Injunction shall remain in effect pending further order of this Court.

5    IT IS FURTHER ORDERED that Plaintiffs' oral request at the hearing for leave to file

6    an amended complaint is GRANTED. Plaintiffs' shall have until September 20, 2013 to file an

7    amended pleading.

8

9    Dated: August 20, 2013

10

11                                            Hon. David M. Chapman
                                              Judge of the Superior Court

12    Approved as to form:

13

14    _____

15         Stephan C. Dean

16

17    _____

18         Liza Dean

19

20

21

22

23

24

25

26

27

28

5

KFHP000193